# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RFE/RL, INC.
1250 Connecticut Avenue NW, Suite 450
Washington, DC 20036,

          *Plaintiff*,

v.

KARI LAKE, in her official capacity as Senior
Advisor to the Acting CEO of the United States
Agency for Global Media
Wilbur J. Cohen Federal Building
330 Independence Avenue SW
Washington, DC 20237;

VICTOR MORALES, in his official capacity as
Acting Chief Executive Officer of the United
States Agency for Global Media
Wilbur J. Cohen Federal Building
330 Independence Avenue SW
Washington, DC 20237;

UNITED STATES AGENCY FOR GLOBAL
MEDIA
Wilbur J. Cohen Federal Building
330 Independence Avenue SW
Washington, DC 20237,

          *Defendants*.

Civ. No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

**EMERGENCY TEMPORARY
RESTRAINING ORDER SOUGHT**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      This case challenges a federal agency's refusal to abide by Congress's power of the

purse.  In unmistakable terms, Congress has appropriated funds specifically for RFE/RL, Inc.

(commonly known as Radio Free Europe/Radio Liberty or "RFE/RL"), and expressly directed the

United States Agency for Global Media to make those funds available to RFE/RL in the form of

annual grants. That agency is now refusing to disburse the appropriated funds on the basis that it is ending its "non-statutory" functions. But funding Radio Free Europe/Radio Liberty *is* a statutory function of the United States Agency for Global Media. Whether to disburse funds as directed by appropriations laws, and whether to make those funds available through grants as directed by the International Broadcasting Act, is not an optional choice for the agency to make. It is the law. Urgent relief is needed to compel the agency to follow the law.

2.     For decades, Congress has appropriated funding for Plaintiff RFE/RL in recognition of the critical role that RFE/RL plays in providing accurate, uncensored news in countries where a free press is threatened. The executive agency distributing these funds—now called the United States Agency for Global Media ("USAGM")—has, until now, always complied with its statutory mandate to "make annual grants for the purpose of carrying out" RFE/RL's historic role. 22 U.S.C. § 6207(f). RFE/RL relies almost entirely on these congressionally appropriated funds to sustain its journalistic work, with over a thousand journalists and staff working in 27 languages to bring news coverage to 23 countries in Europe and Asia.

3.     Despite this statutory mandate and Congress's specific appropriation, USAGM has informed RFE/RL that it will not disburse to RFE/RL its congressionally appropriated funds for March 1, 2025, through September 30, 2025. On March 15, 2025, President Trump signed into law an act that extended through the rest of this fiscal year Congress's direct appropriation of funds to RFE/RL. Yet that very same day, Defendant Kari Lake, a Senior Advisor to the Acting Chief Executive Officer of USAGM, purported to terminate RFE/RL's grant agreement on the basis of a March 14 Executive Order directing USAGM to eliminate "all non-statutorily required activities and functions," and declaring that funding RFE/RL "no longer effectuates agency priorities." There is therefore no question that USAGM has made a final decision not to disburse

congressionally appropriated funds to RFE/RL.  But the foundation for that agency action is a false premise, because funding RFE/RL is one of USAGM's core *statutory* functions.  The agency is doing nothing short of defying Congress.

4.      In light of these developments, RFE/RL has no choice but to bring this lawsuit and seek urgent relief.  Without access to its congressionally appropriated funds, RFE/RL will soon be forced to cease to exist in its current form, abandoning journalists and staff who have associated with RFE/RL at significant personal risk and jeopardizing its hard-won reputation for providing reliable, uncensored news in countries where press freedom is weak.

## PARTIES

5.      Plaintiff RFE/RL is a private, not-for-profit 501(c)(3) organization incorporated in Delaware.  RFE/RL's mission is to promote democratic values by providing accurate, uncensored news and open debate in countries where a free press is threatened and disinformation is pervasive. RFE/RL has its corporate headquarters in Washington, D.C., with its journalistic headquarters in Prague, Czech Republic, close to the markets it serves.

6.      Defendant United States Agency for Global Media is a federal agency that makes and administers grants supporting the United States' international broadcasting efforts worldwide.

7.      Defendant Victor Morales is Acting Chief Executive Officer of USAGM.  He is sued in his official capacity.   The CEO of USAGM supervises all activities relating to broadcasting, including by making and supervising grants for broadcasting and related activities. *See generally* 22 U.S.C. § 6204(a).

8.      Defendant Kari Lake is Senior Advisor to the Acting Chief Executive Officer of the USAGM.  In a letter to RFE/RL dated March 15, 2025, Defendant Lake represented that she is acting pursuant to "Authorities Delegated by Acting CEO."  She is sued in her official capacity.

## JURISDICTION AND VENUE

9.     The Court has jurisdiction over this action under (a) 28 U.S.C. § 1346(a)(2) because agencies of the United States government are named defendants; (b) 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States; and (c) 28 U.S.C. § 1361 because this action seeks to compel officers of the United States to perform their duties.

10.     Venue is proper in this district because RFE/RL resides in this judicial district, a defendant in the action resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  28 U.S.C. § 1391(e).

## FACTS

### A.     Radio Free Europe/Radio Liberty.

11.     RFE/RL is a private, nonpartisan, nonprofit news organization that promotes democratic values through reporting in countries where a free press is either banned by the government or not fully established.  Over the course of its 75-year existence, RFE/RL has developed into one of the most comprehensive news operations in the world, with reporting in 27 languages to 23 countries that reaches more than 47 million people every week.  *See, e.g.*, RFE/RL Fact Sheet, USAGM (Jan. 7, 2025).[1]  RFE/RL has been funded by the U.S. government since its inception.

12.     The U.S. government conceived of Radio Free Europe and Radio Liberty.  Radio Free Europe first started broadcasting to Poland, Czechoslovakia, Hungary, Romania, and Bulgaria in 1950, while Radio Liberty started broadcasting to the Soviet Union in 1953.  Radio Free Europe and Radio Liberty were alternative news sources to the media controlled by the Soviet Union and other communist governments.

---

[1] https://perma.cc/GP6Q-DRU5.

13.    In 1973, Congress passed the International Broadcasting Act, Pub. Law No. 93-129, 87 Stat. 456, in which Congress found that "it is the policy of the United States to promote the right of freedom of opinion and expression" and that "open communication of information and ideas among the peoples of the world contributes to international peace and stability." 87 Stat. at 457. Congress further found that "Radio Free Europe and Radio Liberty" "have demonstrated their effectiveness in furthering the open communication of information and ideas in Eastern Europe and the Union of Soviet Socialist Republics" and that "the continuation of Radio Free Europe and Radio Liberty as independent broadcast media . . . is in the national interest." *Id.*

14.    The International Broadcasting Act authorized USAGM's predecessor, the Board of International Broadcasting, to "make grants to Radio Free Europe and Radio Liberty in order to carry out the purposes" of "freedom of opinion and expression" as stated in section 2 of the International Broadcasting Act. *See* 87 Stat. at 457–58. Radio Free Europe and Radio Liberty combined to form a single corporate entity, RFE/RL, in 1976.

15.    Toward the end of the Cold War, RFE/RL began to expand its operations to respond to threats to democracy and media freedom. For example, after the violent breakup of Yugoslavia, RFE/RL began broadcasting in Serbian, Croatian, and Bosnian to the Yugoslav successor states. In some countries that established democratic governments and free media, RFE/RL concluded that it had fulfilled its mission and ceased broadcasting, such as in Poland in 1997.

16.    Today, RFE/RL reports to 23 countries across Europe and Asia: Afghanistan, Armenia, Azerbaijan, Belarus, Bosnia and Herzegovina, Bulgaria, Georgia, Hungary, Iran, Kazakhstan, Kosovo, Kyrgyzstan, Moldova, Montenegro, North Macedonia, Pakistan, Romania, Russia, Serbia, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan. RFE/RL is able to publish

news in 27 languages because of its decades of sustained effort to recruit journalists and staff with the relevant language skills and cultural knowledge.

17.    RFE/RL has adapted from being a broadcast radio service to embracing a multi-channel approach to news, with a news presence online and across social media platforms.

18.    RFE/RL employs numerous staff around the world.  Many of RFE/RL's journalists are unable to work in their home countries due to threats of violence stemming from their independent journalism.  They therefore operate abroad through work visas supported by their employment at RFE/RL.

**B.    Congress Funds Radio Free Europe/Radio Liberty by Direct Appropriation and Has Mandated that USAGM Make Grant Funds Available to It.**

19.    RFE/RL is a private grantee that operates under grants from the federal government; it is not itself a federal government entity.  *See, e.g.*, 22 U.S.C. § 6207.

20.    Virtually all of RFE/RL's funding—approximately 99%—comes from its federal appropriation.  The remaining funds come from private donations and other sources.

21.    USAGM is the federal agency tasked with making and supervising grants for broadcasting activities.  *See* 22 U.S.C. § 6204(a)(5).  USAGM also allocates funds appropriated for international broadcasting activities among the various elements of the Agency and its grantees, including RFE/RL.  *See* 22 U.S.C. § 6204(a)(6).  Other grantees of USAGM include Radio Free Asia, Middle East Broadcasting Networks, Inc., and the Open Technology Fund.  *See* 22 U.S.C. § 6201 (finding that "[i]t is in the interest of the United States to support broadcasting to other nations consistent with the requirements of this chapter").

22.    The USAGM CEO has authority "[t]o make and supervise grants and cooperative agreements for broadcasting and related activities."  22 U.S.C. § 6204(a)(5).

23.     USAGM is specifically required by statute to make annual grants to RFE/RL.  The relevant statute provides that "[g]rants authorized under section 6204 of this title for RFE/RL, Incorporated, *shall be available to make annual grants*" for RFE/RL's operations. The United States International Broadcasting Act of 1994 (the "International Broadcasting Act"), Pub. Law No. 103-236, 108 Stat. 382 (1994) (codified as amended at 22 U.S.C. § 6207(f)) (emphasis added). In 2020, USAGM recognized in a court filing that this language "dictate[s] how the CEO *must exercise* his § 6204 grant-making authority when dealing with [RFE/RL]."  Def.'s Opp. to Pls.' Mot. TRO, at 4, *Open Technology Fund v. Pack*, No. 20-cv-1710, ECF 7, 2020 WL 7041426 (D.D.C. filed June 26, 2020) (emphasis added).

24.     In accordance with the Act, RFE/RL and USAGM have each year until now entered into an annual grant agreement.  This process typically begins in September with USAGM preparing a draft grant agreement and sending it to RFE/RL for review.  Once the agreement is final, the USAGM CEO will sign on behalf of USAGM and the RFE/RL President will sign on behalf of RFE/RL.   The grant agreement is then executed, thus obligating RFE/RL's congressionally appropriated funds.

25.     Congress has appropriated funds for RFE/RL every year since the enactment of the International Broadcasting Act in 1973.  Last year, Congress appropriated funds for RFE/RL in the Further Consolidated Appropriations Act of 2024, Pub. Law No. 118-47, div. F, 138 Stat. 460 (2024).  Under the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, Congress appropriated $857,214,000 for USAGM.  In the text of the statute, Congress provided that the "funds appropriated under this heading shall be allocated in accordance with the table included under this heading in the explanatory statement described in section 4."  *Id.* at 735. The table that Congress incorporated by reference in the text of the statute allocated $142,212,000

in funding for "Radio Free Europe/Radio Liberty" for the 2024 fiscal year.[2]  *See* H. Comm. on Appropriations, 118th Cong., Further Consolidated Appropriations Act, 2024, Legislative Text and Explanatory Statement at 1167 (Comm. Print 2024).

26.    Upon the expiration of fiscal year 2024 funding on September 30, 2024, Congress renewed RFE/RL's funding until December 20, 2024, in the Continuing Appropriations Act, 2025, Pub. Law No. 118-83, 138 Stat. 1524 (2024) ("First Continuing Resolution").  Division A of the First Continuing Resolution appropriated "[s]uch amounts as may be necessary, at a rate for operations as provided in the applicable appropriations Acts for fiscal year 2024 and under the authority and conditions provided in such Acts, for continuing projects or activities . . . that are not otherwise specifically provided for in this Act, that were conducted in fiscal year 2024, and for which appropriations, funds, or other authority were made available" in "The Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division F of Public Law 118-47)."  *Id.* at 1524–25.

27.    Congress again renewed RFE/RL's funding in the American Relief Act, 2025, Pub. Law No. 118-158, 138 Stat. 1722 (2024) ("Second Continuing Resolution"), through March 14, 2025.  Division A of the Second Continuing Resolution amended the First Continuing Resolution by replacing the expiration date of December 20, 2024, with March 14, 2025.  The Second Continuing Resolution thus appropriated funding for the period December 21, 2024, through March 14, 2025, under the same conditions, as relevant to RFE/RL, as the First Continuing Resolution.

---

[2] Incorporation by reference is a well-accepted legislative tool in the appropriations context, and the Government Accountability Office has recognized that incorporation by reference renders spending language legally binding.  *See, e.g.*, B-316010, Consolidated Appropriations Act, 2008 – Incorporation by Reference (Feb. 25, 2008).

28.     On March 15, 2025, President Donald J. Trump signed into law Congress's Full-Year Continuing Appropriations and Extensions Act, 2025 ("Third Continuing Resolution"), which, like the previous continuing resolutions, appropriated "[s]uch amounts as may be necessary, at the level specified . . . under the authority and conditions provided in applicable appropriations Act for fiscal year 2024" until September 30, 2025.  *See* H.R. 1968, 119th Cong. § 1101(a) (2025).

29.     In sum, Congress appropriated approximately $23 million for RFE/RL in the First Continuing Resolution for October 1, 2024, to December 20, 2024.  Congress appropriated approximately $41 million to RFE/RL in the Second Continuing Resolution for December 21, 2024, to March 14, 2025.  Congress further appropriated approximately $77 million for RFE/RL in the Third Continuing Resolution for March 15, 2025, to September 30, 2025.

**C.     USAGM Has Denied Radio Free Europe/Radio Liberty Access to Its Congressionally Appropriated Funds.**

30.     As required by the International Broadcasting Act, USAGM obligates funding appropriated by Congress to RFE/RL through a grant agreement.  Following the passage of the First and Second Continuing Resolutions, USAGM executed grant agreements (FAIN: 1060-25-GO-00001) obligating those funds to RFE/RL through February 28, 2025.  USAGM was legally obligated to execute these grant agreements because the agency is statutorily mandated to make "annual grants" available for RFE/RL's operations when Congress appropriates funds for RFE/RL. 22 U.S.C. § 6207(f).

31.     Under the Second Continuing Resolution, Congress appropriated funds for RFE/RL through March 14, 2025.  USAGM did not, however, obligate the March 1–14, 2025, funds— which total approximately $7.5 million—in the grant agreement.  Throughout December 2024, USAGM informed RFE/RL that the reason for not obligating the funds was a policy of not

providing partial-month payments to grantees.  RFE/RL continued to follow up with USAGM regarding the obligation and disbursement of the March 1–14 appropriated funds, but USAGM did not obligate or disburse the funds.

32.     RFE/RL has continued to engage with USAGM to secure formal obligation of its fiscal year 2025 funds through a signed grant agreement.  In late February 2025, RFE/RL and USAGM exchanged drafts of an additional 2025 grant agreement.  After agreeing on some minor edits, on February 27, 2025, USAGM sent a final version of the grant agreement to RFE/RL and requested a "*signed* version of this Master Grant Agreement at your earliest convenience." RFE/RL promptly responded with the signed grant agreement that same day.

33.     On March 14, 2025, President Trump announced the Executive Order "Continuing the Reduction of the Federal Bureaucracy."  The order provided that the "non-statutory components and functions of the following governmental entities shall be eliminated to the maximum extent consistent with the applicable law" and listed the "United States Agency for Global Media" as one of those governmental entities.  The Executive Order did not define what it considered the statutory or non-statutory components and functions of USAGM, and it did not purport to define USAGM's function of obligating appropriated funds for RFE/RL through grants as a non-statutory function.

34.     On March 15, 2025, Kari Lake, Senior Advisor to the Acting CEO of USAGM, sent a letter to RFE/RL purporting to terminate RFE/RL's grant agreement pursuant to authorities delegated to her by the Acting CEO, Defendant Morales.  According to Defendant Lake, USAGM terminated the grant awarded to RFE/RL because it "no longer effectuates agency priorities."

35.     Defendant Lake's letter only further confirmed that USAGM has no intent of obligating or disbursing RFE/RL's congressionally appropriated funds for the remainder of fiscal year 2025.

36.     In RFE/RL's 75-year history, it is not aware of any instance in which USAGM (or its predecessors) has refused to obligate and disburse funds appropriated by Congress in an appropriations statute.  This denial of access to funds mandated by law is unprecedented and will, if not remedied immediately, inflict irreparable harm on RFE/RL and ultimately require RFE/RL to almost completely cease its operations.

37.     On March 17, 2025, RFE/RL submitted an invoice for $7,464,559 to USAGM but has not received the funds.

**D.      Harm Caused by the Unlawful Withholding of Congressionally Appropriated Funds for Radio Free Europe/Radio Liberty.**

38.     As a result of RFE/RL's inability to access its congressionally appropriated funds, RFE/RL is currently facing and will continue to face irreparable harms to its operations and the security of its journalists.  Those harms jeopardize RFE/RL's very existence.

39.     Because of the withholding of its congressionally appropriated funds, RFE/RL has already been forced to significantly scale back its operations.  Without access to those funds, RFE/RL will soon be nearly unable to operate, as it will be forced to (among other things) terminate freelance journalists, terminate its leases and contracts, and lay off staff.  Without its congressionally appropriated funds, RFE/RL will also be forced to stop the vast majority of its journalistic work and will be at risk of ceasing to exist as an organization.

40.     Failing to provide RFE/RL with its congressionally mandated funding will effectively end RFE/RL's operations by requiring it to halt essentially all broadcasting and news operations.  RFE/RL reaches over 47 million people every week.  Stopping news coverage in

countries where there are few other alternative news sources in the local language apart from state-controlled or state-influenced media means that millions of people will be cut off from access to free and independent media coverage of critical events.  This will irrevocably harm RFE/RL's reputation and credibility among those who rely on RFE/RL for news, in addition to jeopardizing RFE/RL's mission.

41.    RFE/RL's loss of funding will also impose unrecoverable financial losses on the organization.  RFE/RL is responsible for multiple leases and obligations on which it will be forced to default without Congress's appropriated funds.  For example, RFE/RL has a payment due on April 1, 2025, on its lease in Prague that it will not be able to pay without access to its congressionally appropriated funds.  Moreover, because USAGM is a co-obligor on RFE/RL's Prague lease, the agency's decision to withhold RFE/RL's funding will financially harm the agency itself.

42.    More broadly, RFE/RL exists to provide independent news coverage that is outside of the control of the governments in the countries where it operates.  Ceasing news coverage, even temporarily, will allow the state-controlled or state-influenced media in these countries to fill the gap with coverage that is skewed towards the particular narratives favorable to the local governments, rather than objective reporting.  This will have an immeasurable impact in reducing democratic access to information and set back the work of independent journalism in these countries.

43.    RFE/RL relies on freelance journalists in other countries to do some of its most critical reporting.  Many of these journalists operate in the field in countries that are hostile to journalistic freedoms.  These journalists therefore face threats to their physical safety, and they have been the object of specific and credible threats to their safety from foreign governments and

organized criminal elements associated with foreign governments.  If RFE/RL's funding is not restored, it will not be able to pay for security services for its journalists, or for security services that protect RFE/RL facilities and staff in a number of countries where RFE/RL journalists have been targeted for attack by terrorist organizations, criminal elements, and governments that are hostile to RFE/RL's reporting.

44.    Given the nature of RFE/RL's work to support journalistic freedom, it is a frequent target of cyber threats and attacks. If RFE/RL does not receive its congressionally appropriated funding, it will be forced to lay off essential personnel responsible for protecting RFE/RL from cyberattacks.  Some of RFE/RL's critical cybersecurity defense tools have monthly licenses that will lapse in thirty days if there is a delay in payment.  Any data breach will risk exposing the personal information of journalists working in authoritarian states, putting their security, and potentially their lives, at risk.

45.    RFE/RL's workforce relies on journalists who have fled from authoritarian regimes in countries such as Russia and Iran.  In many countries where these journalists operate, their residency is based on employment contracts with RFE/RL.  If RFE/RL is not funded, it will be forced to terminate its contracts with freelance journalists and lay off a substantial portion of its employees in April 2025.  RFE/RL journalists whose residency relies on their employment may be forced to return to their home countries.  In many cases, these journalists could be criminally prosecuted, imprisoned, or tortured because of their work for RFE/RL.

46.    Absent judicial relief to ensure the restoration of access to congressionally appropriated funding, RFE/RL's mission and reputation will be harmed irrevocably and long into the future.  Many RFE/RL journalists operate in unstable and/or conflict-torn environments.  It takes time and effort for RFE/RL to build trust and credibility with its journalists.  RFE/RL will

also suffer irreparable harm if forced to close its doors, even for a short period of time, because its credibility will be damaged with journalists it may later hope to employ. Moreover, if RFE/RL is not able to protect its current journalists, it will be very difficult for RFE/RL to persuade journalists to join RFE/RL in the future. The lack of access to congressionally appropriated funding therefore severely undermines RFE/RL's journalistic mission and contribution to freedom of the press around the world.

## CLAIMS FOR RELIEF

### COUNT ONE
### APA, 5 U.S.C. § 706(2)(A)–(C)

47.     All preceding and subsequent paragraphs are incorporated herein by reference.

48.     The Administrative Procedure Act ("APA") provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" "contrary to constitutional right, power, privilege, or immunity[,]" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C.§ 706(2)(A)–(C).

49.     Defendants' impoundment of RFE/RL's congressionally appropriated funding is final agency action reviewable under 5 U.S.C. § 704. "Agency action" includes an agency's "sanction," "denial" of "relief," and "failure to act." 5 U.S.C. § 551(13). "[S]anction" includes the "withholding of relief" or "property." 5 U.S.C. § 551(10)(B), (D). "[R]elief" is defined to include an agency's "grant of money" and an agency's "recognition of a claim [or] right." 5 U.S.C. § 551(11).

50.     Defendants' actions are "final" because USAGM's refusal to obligate and disburse RFE/RL's congressionally appropriated funds for March 1–14, 2025, and March 15, 2025, to September 30, 2025, culminating in Defendant Lake's March 15, 2025, Notice of Grant

Termination Letter, "mark[s] the consummation of the agency's decisionmaking process" and is an action by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  In the Notice, Defendant Lake invoked the March 14, 2025, Executive Order's mandate that USAGM eliminate all non-statutorily required activities and functions, indicating that USAGM has decided it is not statutorily required to make grants with and provide congressionally appropriated funds to RFE/RL. Additionally, as a basis for terminating the grant award, Defendant Lake asserted that grants to RFE/RL "no longer effectuate[] agency priorities."  In conjunction, these determinations by USAGM make clear that the agency has decided to not provide RFE/RL with its congressionally appropriated funding.

51.    Defendants' termination of RFE/RL's grant agreement also constitutes final agency action under the APA.

52.    Defendants' actions are contrary to law and in excess of statutory authority because the International Broadcasting Act and the relevant appropriations laws create a mandatory, non-discretionary duty for Defendants to make available to RFE/RL its congressionally appropriated funds.  22 U.S.C. § 6207(f); Second Continuing Resolution; Third Continuing Resolution.

53.    Defendants' actions are also contrary to the United States Constitution because Defendants are unlawfully impounding funds appropriated by Congress for RFE/RL through the constitutionally prescribed legislative process, in violation of the Separation of Powers, as well as the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

54.    Defendants' actions are arbitrary and capricious because, among other things, Defendants have not articulated a basis—let alone an adequate or reasoned one—for the

impoundment of RFE/RL's congressionally appropriated funds, and they have also entirely failed to consider the substantial reliance interests in RFE/RL's continued funding and operation, including without limitation: the 47 million individuals who receive news from RFE/RL on a weekly basis, some of whom reside in countries where there may be no alternative news sources free from state control or influence; RFE/RL's employees, some of whom will be at risk of physical harm, or of losing their visas and subsequent deportation, if RFE/RL does not receive its congressionally appropriated funding; and the leases and other obligations on which RFE/RL will be forced to default without its funding, including a lease in Prague on which USAGM itself is a co-obligor.

## COUNT TWO
### APA, 5 U.S.C. § 706(1)

55.     All preceding and subsequent paragraphs are incorporated herein by reference.

56.     The APA provides that a reviewing court "shall" "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).

57.     USAGM has a non-discretionary duty to make "annual grants" available to RFE/RL from congressionally appropriated funds.  22 U.S.C. § 6207(f).  In 2020, USAGM acknowledged to this Court that the International Broadcasting Act "dictate[s] how the CEO *must exercise* his § 6204 grant-making authority when dealing with [RFE/RL]."  Def.'s Opp. to Pls.' Mot. TRO, at 4, *Open Technology Fund v. Pack*, No. 20-cv-1710, ECF 7, 2020 WL 7041426 (D.D.C. filed June 26, 2020) (emphasis added).  In the Second and Third Continuing Resolutions, Congress appropriated funds for RFE/RL that USAGM must make available to RFE/RL for use during the statutorily prescribed timeframe.

58.     USAGM has not complied with its non-discretionary duties to make appropriated funds available to RFE/RL through an annual grant agreement.

59.     Defendants' actions are also contrary to the United States Constitution because they are unlawfully impounding funds appropriated by Congress for RFE/RL through the constitutionally prescribed legislative process, in violation of the Separation of Powers, as well as the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

60.     The Court should thus compel Defendants to make accessible RFE/RL's appropriated funds to RFE/RL for March 1–14, 2025, and March 15, 2025, to September 30, 2025.

## COUNT THREE
### Presentment Clause, U.S. Const. art. I, § 7, cl. 2

61.     All preceding and subsequent paragraphs are incorporated herein by reference.

62.     This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

63.     The Presentment Clause provides, in relevant part, "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it[.]" U.S. Const. art. I, § 7, cl. 2.  Under the Presentment Clause, the President lacks authority to modify or amend duly enacted legislation—the President may only "approve all the parts of a Bill, or reject it in toto."  *Clinton v. City of New York*, 524 U.S. 417, 439–40 (1998) (citation omitted).

64.     Congressional appropriations law mandating that funds be provided to RFE/RL for fiscal year 2025 is duly enacted legislation which the President and his officers may not disregard either in full or in part.

65.     Defendants' unlawful impoundment of RFE/RL's congressionally appropriated funds constitutes an unconstitutional modification and *de facto* partial veto of duly enacted appropriations legislation in violation of the Presentment Clause.

## COUNT FOUR
### Appropriations Clause, U.S. Const. art. I, § 9, cl. 7

66.     All preceding and subsequent paragraphs are incorporated herein by reference.

67.     This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund*, 561 U.S. at 491 n.2.

68.     The Appropriations Clause of the Constitution provides, "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. Const. art. I, § 9, cl. 7.  The Clause protects Congress's "exclusive power over the federal purse." *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (*quoting Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992)).  The Executive Branch has no authority to circumvent Congress's appropriations power.  *In re Aiken County*, 725 F.3d 255, 260–61 (D.C. Cir. 2013).

69.     Defendants' impoundment of RFE/RL's congressionally appropriated funds unlawfully infringes on Congress's exclusive power over the federal purse.  The Executive has no constitutional authority to undermine this core legislative function.

## COUNT FIVE
### Spending Clause, U.S. Const. art. I, §  8, cl. 1

70.     All preceding and subsequent paragraphs are incorporated herein by reference.

71.      This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund*, 561 U.S. at 491 n.2.

72.     The Spending Clause of the Constitution provides, "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises

shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. The Spending Clause vests this spending power exclusively with the legislative branch.

73.     Defendants' impoundment of RFE/RL's congressionally appropriated funds unlawfully infringes on Congress's exclusive power over the federal purse. The Executive has no constitutional authority to undermine this core legislative function.

## COUNT SIX
### Take Care Clause, U.S. Const. art. II, § 3

74.     All preceding and subsequent paragraphs are incorporated herein by reference.

75.     This Court has inherent equitable power to enjoin unconstitutional executive conduct. *See Free Enter. Fund*, 561 U.S. at 491 n.2.

76.     Under the Constitution, the executive power vested in the President and, by extension, all subordinate officers to whom he may delegate executive functions, includes the duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

77.     The Take Care Clause commands the executive branch to faithfully execute the laws of the United States.

78.     Defendants' unlawful impoundment of RFE/RL's congressionally appropriated funds is a dereliction of the Executive's constitutional obligation to "take Care that the Laws be faithfully executed," in violation of the Take Care Clause.

## COUNT SEVEN
### Violation of the Separation of Powers

79.     All preceding and subsequent paragraphs are incorporated herein by reference.

80.     This Court has inherent equitable power to enjoin unconstitutional executive conduct. *See Free Enter. Fund*, 561 U.S. at 491 n.2.

81.     Defendants' unlawful impoundment of RFE/RL's congressionally appropriated funds unconstitutionally aggrandizes executive power at the expense of constitutionally protected legislative authority, in violation of the Separation of Powers. *See* U.S. Const. art. II, § 3, *id.* art. I, § 9, cl. 7; *id.* art. I, § 8, cl. 1; *id.* art. I, § 7, cl. 2.

## COUNT EIGHT
### Mandamus Act, 28 U.S.C. § 1361; All Writs Act, 28 U.S.C. § 1651

82.     All preceding and subsequent paragraphs are incorporated herein by reference.

83.     The Mandamus Act, 28 U.S.C. § 1361, vests this Court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

84.     The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction.

85.     USAGM has a non-discretionary duty to make annual grants available to RFE/RL from congressionally appropriated funds.  22 U.S.C. § 6207(f).

86.     It is necessary and appropriate for this Court to issue a writ of mandamus pursuant to 28 U.S.C. §§ 1361 and 1651 and under this Court's equitable authority to compel Defendants to act.

## COUNT NINE
### *Ultra Vires*

87.     Paragraphs 1–47 are incorporated herein by reference.

88.     An agency acts ultra vires when it "plainly acts in excess of its delegated powers." *Fresno Cmty. Hosp. & Med. Ctr. v. Cochran*, 987 F.3d 158, 162 (D.C. Cir. 2021).

89.     Judicial "[r]eview for ultra vires acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts generally have jurisdiction to grant relief." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (internal quotations and citation omitted).

90.     This Court has inherent equitable power to enjoin ultra vires conduct by Defendants. *See Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 743 (D.C. Cir. 2022). No statute, constitutional provision, or other source of law authorizes Defendants to impound RFE/RL's congressionally appropriated funds.  To the contrary, the International Broadcasting Act and the relevant appropriations laws require that Defendants make available annual grants to RFE/RL from congressionally appropriated funds.  22 U.S.C. § 6207(f); Second Continuing Resolution; Third Continuing Resolution.

91.     Defendants' unlawful impound of the RFE/RL's congressionally appropriated funds is *ultra vires*.

## RELIEF REQUESTED

WHEREFORE, RFE/RL respectfully requests that the Court:

A.     Issue a temporary restraining order and preliminary injunction;

B.     Order Defendants to cease their unlawful refusal to obligate RFE/RL's appropriation for March 1–14, 2025, and March 15, 2025, to September 30, 2025;

C.     Declare unlawful and set aside the Defendants' impound of RFE/RL's congressionally appropriated funds and termination of RFE/RL's grant agreement as arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C.

§ 706(2)(A), contrary to constitutional right, power, privilege, or immunity under 5 U.S.C.

§ 706(2)(B), and in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right under 5 U.S.C. § 706(2)(C);

       D.     Declare that the termination of Grant FAIN: 1060-25-GO-00001 is unlawful

and null and void;

       E.     Set aside the termination of Grant FAIN: 1060-25-GO-00001;

       F.     Declare that Defendants are required by law to take all necessary steps to ensure

that the Agency is party to a grant agreement with RFE/RL, Inc. providing all congressionally

appropriated funds through September 30, 2025;

       G.     Declare that Defendants are required by law to obligate and disburse to RFE/RL

the amounts of approximately $7.5 million pursuant to the appropriation covering March 1–

14, 2025, and approximately $70 million covering March 15, 2025, to September 30, 2025;

       H.     Issue a permanent injunction barring Defendants from impounding RFE/RL's

congressionally appropriated funds and requiring Defendants to disburse RFE/RL's

congressionally appropriated funds;

       I.     Award RFE/RL reasonable attorneys' fees and costs; and

       J.     Grant such other relief as the Court deems necessary, just, and proper.

Respectfully submitted,

/s/ *Marney L. Cheek*
Marney L. Cheek (D.C. Bar No. 470596)
David M. Zionts (D.C. Bar No. 995170)
Thomas Brugato (D.C. Bar No. 1013523)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
mcheek@cov.com
dzionts@cov.com
tbrugato@cov.com

*Attorneys for Plaintiff RFE/RL, Inc.*

March 18, 2025