UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| RFE/RL, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media;<br><br>VICTOR MORALES, in his official capacity as acting Chief Executive Officer of the United States Agency for Global Media; and<br><br>UNITED STATES AGENCY FOR GLOBAL MEDIA,<br><br>*Defendants*. | Case No. 1:25-cv-799-RCL |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF INTERVENING SUPREME COURT DECISION

The Supreme Court's recent decision granting an emergency application to vacate a temporary restraining order in *Department of Education v. California*, 604 U.S. __, 2025 WL 1008354 (Apr. 4, 2025) (per curiam) ("*California*") does not support Defendants' argument that this Court lacks jurisdiction over RFE/RL's claims.

To start, *California* did not rule definitively on the jurisdictional issue presented in that case, but rather found only that the government was "likely" to prevail on it. *See id.* at *1. More importantly, *California* is readily distinguishable from this case for the same fundamental reason that the *Catholic Bishops* case is distinguishable: the basis for RFE/RL's claims are statutes and the Constitution, *not* the grant agreement itself. *See* Pl.'s Reply in Supp. of Mot. for TRO at 6–9, ECF 11 (distinguishing *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 2025 WL 763738

(D.D.C. Mar. 11, 2025), *appeal docketed*, No. 25-5066 (D.C. Cir. Mar. 14, 2025)).  In *California*, the Supreme Court reaffirmed that an APA action is "'not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," but also that the APA's immunity waiver "does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered" in the case before it.  2025 WL 1008354, at *1 (first quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988), then quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  Thus, all the Supreme Court suggested was that under the particular circumstances before it, the government was likely to succeed on its jurisdictional argument because the plaintiffs sought to use the APA "to enforce a contractual obligation." *Id.* (citation omitted).

The limits of that decision are underscored by the way the government itself framed the issue to the Supreme Court.  The government repeatedly stressed that the *only* source of the *California* plaintiffs' rights was the grant agreements themselves.  For example, the government emphasized that the plaintiffs "allege that the government terminated the grants and withheld funds improperly and in violation of the grant instruments' terms and conditions.  They would have no claim at all without having alleged a breach of the grant agreements by the government." App. to Vacate, *California*, 2025 WL 945313, at *14 (U.S. Mar. 26, 2025) (internal citation omitted).[1] Thus, the government argued, "[t]he ultimate source of the grantees' asserted right to payment is *the grant awards, not the grantmaking statutes* or … regulations that respondents claim the government violated." *Id.* at *16 (emphasis added).  In its reply brief, the government underscored the same point: "respondents portray themselves as bringing APA claims, not contractual ones,

---

[1] *Available at*
https://www.supremecourt.gov/DocketPDF/24/24A910/353030/20250326114427721_24A%20Ed%20v.%20CA%20appl.pdf

because they invoke the statutes authorizing the . . . grant programs and Department regulations concerning grant terminations. Tellingly, however, respondents decline to say why those statutory or regulatory provisions provide the 'source of the rights' they assert." Reply in Supp. of App. to Vacate, *California*, 2025 WL 1013155, at *8 (U.S. Mar. 31, 2025) (citation omitted).[2] This backdrop—the government's emphasis on the contract being the only source of the plaintiffs' claimed rights—is critical to understanding the Supreme Court's brief observation in its order that "the APA's limited waiver of immunity does not extend to orders '*to enforce a contractual obligation* to pay money' along the lines" at issue in that case. *California*, 2025 WL 1008354, at *1 (citation omitted) (emphasis added).[3]

Here, in stark contrast, RFE/RL *is* seeking to enforce statutes that create specific obligations for the agency: Congress has directed that USAGM "shall" make "annual grants" available to "RFE/RL, Incorporated" from appropriated funds, 22 U.S.C. § 6207(f), and that a specified amount of funds "shall be allocated" specifically to RFE/RL, *see* Pl.'s Mem. in Supp. of Mot. for TRO and Prelim. Inj. at 7–9, ECF 6-1. RFE/RL is therefore *not* seeking "to enforce a contractual obligation to pay money." *California*, 2025 WL 1008354, at *1 (citation omitted). RFE/RL's claims are instead based on USAGM's *statutory* obligations to fund RFE/RL. *See also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (Tucker Act does not apply to a "claim that is validly based on grounds other than a contractual relationship with the government" (cleaned up)); *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967

---

[2] *Available at* https://www.supremecourt.gov/DocketPDF/24/24A910/354358/20250331085918154_DeptofEd_v_California_Stay_Reply%201.pdf

[3] The limited, fact-specific nature of the Supreme Court's decision in *California* is bolstered by the Court's recent order *denying* relief in another case where the government made similar jurisdictional arguments. *See Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753 (2025); *see also id.* at 756 (Alito, J., dissenting) (raising similar Tucker Act arguments).

F.2d 598, 609 (D.C. Cir. 1992) (jurisdiction "depends not simply on whether a case involves contract issues, but on whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute or the Constitution"), *abrogated in part on other grounds by Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017). Accordingly, the Supreme Court's preliminary jurisdictional observations in *California*—like the district court's decision in *Catholic Bishops*—is inapposite, because RFE/RL sues to enforce rights that are statutory and constitutional, not contractual. In other words, this is *not* a case where a ruling for RFE/RL "would allow any government contractor with a quintessential breach-of-contract claim to plead its way into district court and APA review by requesting an 'injunction' for the government to pay up instead of asserting money damages." Reply in Supp. of App. to Vacate at *10.

Moreover, even if *California* precluded RFE/RL's APA claims from being heard in this Court, it would not preclude RFE/RL's constitutional claims. As noted in RFE/RL's TRO motion, *see* ECF 6-1 at 37, the Court has authority to enjoin constitutional violations by federal officials even absent the APA's cause of action. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (recognizing "[t]he ability to sue to enjoin unconstitutional actions by . . . federal officials"); *see also, e.g.*, *Reuber v. United States*, 750 F.2d 1039, 1061 (D.C. Cir. 1984) ("Federal injunctive relief traditionally is presumed available against federal actors committing constitutional violations."); *Mahoney v. U.S. Capitol Police Bd.*, 2023 WL 2770430, at *6 (D.D.C. Apr. 4, 2023) (allowing claims against individual officers in their official capacities to proceed). *California* did not address that basis for jurisdiction, which provides an independent ground for RFE/RL to obtain injunctive relief.

Finally, Defendants' suggestion that *California* indicates that the balance of harms in this case favors Defendants, *see* ECF 20, at 2–3, is meritless. As the Court stressed in *California*, "Respondents . . . represented in this litigation that they have the financial wherewithal to keep their programs running" without the disputed funds. 2025 WL 1008354, at *1. Here, approximately 99% of RFE/RL's funding comes from its federal appropriation, *see* Capus Decl. ¶ 12, ECF 6-3, and RFE/RL has submitted undisputed evidence that its very existence is threatened by the impoundment of its congressionally appropriated funds, *see* ECF 6-1, at 34–40; ECF 11, at 17–21.

April 8, 2025                                                    Respectfully submitted,

/s/ Marney L. Cheek
Marney L. Cheek (D.C. Bar No. 470596)
David M. Zionts (D.C. Bar No. 995170)
Thomas Brugato (D.C. Bar No. 1013523)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
mcheek@cov.com
dzionts@cov.com
tbrugato@cov.com

*Attorneys for Plaintiff RFE/RL, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia using the court's CM/ECF filing system, which will send notification of such filing via e-mail to all counsel of record.

        Respectfully submitted,

        /s/ Marney L. Cheek
        Marney L. Cheek (D.C. Bar No. 470596)
        COVINGTON & BURLING LLP
        850 Tenth Street NW
        Washington, DC 20001-4956
        (202) 662-6000
        mcheek@cov.com

        *Attorney for Plaintiff RFE/RL, Inc.*