# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| RFE/RL, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media; <br><br> VICTOR MORALES, in his official capacity as acting Chief Executive Officer of the United States Agency for Global Media; and <br><br> UNITED STATES AGENCY FOR GLOBAL MEDIA, <br><br> *Defendants*. | Case No. 1:25-cv-799-RCL |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A FURTHER TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

I.  RFE/RL Is Likely To Succeed in Showing that the New Grant Conditions Are Unlawful. ............................................................................................................................ 3

II. The Remaining Factors Also Favor Granting the Further Temporary Restraining Order. ................................................................................................................................. 9

CONCLUSION ............................................................................................................................... 12

**INTRODUCTION**

This morning, Defendant U.S. Agency for Global Media ("USAGM") demanded, in the form of a new grant agreement, that Radio Free Europe/Radio Liberty ("RFE/RL") submit to a host of new terms and conditions before the agency will disburse RFE/RL's April 2025 funding. The new conditions are flagrantly illegal. For instance, USAGM insisted that RFE/RL give the agency authority to approve or disapprove members of its Board of Directors. Yet just a few years ago, Congress *specifically repealed* USAGM's prior authority to condition grants on allowing USAGM to determine the membership of RFE/RL's Board. Similarly, USAGM imposed a host of unreasonable and even impossible conditions and required RFE/RL to agree that their breach would justify termination of RFE/RL's grant. These poison pills are a barely veiled pretext for denying RFE/RL the grant that Congress said "shall be available" and the funds that Congress said "shall be allocated" to it.

Defendants appear to be operating under the maxim, "if at first you don't succeed, try, try again." But persistence is not a virtue when the goal is to subvert the express commands of Congress. Today's agency action is new, illegal conduct in service of the same illegal objective: to deny RFE/RL the funds that Congress appropriated to it. As a result, RFE/RL is in the same position it faced a month ago: starved of the funds Congress appropriated for it, and on the precipice of no longer being able to fulfill the mission that Congress has deemed to be in the public interest. Since Defendants are unwilling to fulfill their statutory obligations in good faith, a further emergency temporary restraining order ("TRO") is needed to compel Defendants to immediately disburse RFE/RL's April 2025 funding under the same terms and conditions that were previously in effect and governed the funds disbursed in March 2025.

1

Because Defendants have now engaged in new statutory violations to compound their original ones, RFE/RL intends to promptly amend its complaint and file a new preliminary injunction motion. But first, in light of the dire situation that Defendants have created, RFE/RL respectfully requests immediate emergency relief covering the month of April. Regrettably, Defendants' gamesmanship has left RFE/RL no other option.

## BACKGROUND

Given the Court's familiarity with the issues presented in this case, RFE/RL does not summarize the full background, but instead brings the Court up to speed on the breathtaking developments since yesterday's status conference.

This morning, RFE/RL received an email from USAGM, attached as Exhibit A, presenting it with the "**RFE/RL FY-25 Master Grant Agreement**," attached as Exhibit B. The "FY 25 Master Grant Agreement" ("the Grant Agreement") contained numerous provisions that have never been in RFE/RL's previous grants. The agency did not invite any feedback or discussion of the new terms. Instead, the agency demanded that RFE/RL submit its April 2025 funding request together with "a signed version of this Grant Agreement." Ex. A.

On even a quick review, the new terms and conditions are designed to do two main things: set up RFE/RL for failure, and give USAGM complete control over RFE/RL (despite its status as a private, independent 501(c)(3) Delaware corporation).

***Setting Up RFE/RL To Fail.*** The agency is imposing no fewer than twelve conditions requiring RFE/RL to respond or take certain actions in 24 hours, including in some cases within 24 hours of signing the agreement itself. *See, e.g.*, Ex. B at 2, 3, 5, 6, 14, 19, 22, 23, 25. At least some of these requirements are patently impossible to comply with. As just one example, RFE/RL

2

cannot conceivably, within 24 hours of signing the agreement, compile a list of every contact, "formal or informal," in the past 365 days by any of its "directors, employees, officers, contractors, staffers, affiliates and/or board members" with any Executive Branch employee, member of Congress, or congressional staffer. *Id.* at 6. The Agreement also includes a plethora of new "material breach" conditions; for instance, if USAGM demands that RFE/RL "delete language services," RFE/RL must comply "within 24 hours" or its grant will be terminated. *Id.* at 3–4; *see also id.* at 2, 5, 8, 23.

***Negating Independence and Asserting USAGM Control.*** The new terms further take a series of steps to destroy RFE/RL's independence. The USAGM CEO would assume complete control over RFE/RL's Board, demanding approval authority over all current and future board members. Ex. B at 5. And even as USAGM continues to threaten RFE/RL with funding cutoffs, it inexplicably bars RFE/RL from "engag[ing] in fundraising from outside sources." *Id.* at 19.

In light of the urgency of the situation, RFE/RL is filing this motion the same day it received these extraordinary new demands from USAGM as a condition of receiving its congressionally appropriated funds.

## ARGUMENT

**I.    RFE/RL Is Likely To Succeed in Showing that the New Grant Conditions Are Unlawful.**

*Final Agency Action.* The imposition of new grant conditions is "final agency action" reviewable under the APA, because it "mark[s] the consummation of the agency's decisionmaking process," and is a decision "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations omitted). USAGM presented the new conditions as a fait accompli, giving RFE/RL no option but

3

to accept the terms presented in order to access its congressionally appropriated funds.  *See* Ex. A ("Please find the **RFE/RL FY-25 Master Grant Agreement** between the USAGM and RFE/RL attached.").  Courts have previously held that an agency's imposition of a grant condition is final agency action.  *See, e.g.*, *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031 (N.D. Cal. 2018); *Planned Parenthood of N.Y.C., Inc. v. HHS*, 337 F. Supp. 3d 308, 328 (S.D.N.Y. 2018).

***Contrary to Law.***  RFE/RL's APA claim is likely to succeed because USAGM's action exceeds its statutory authority and is not in accordance with law.  5 U.S.C. § 706(2)(A), (B).  RFE/RL is not yet in a position to catalog all of the ways in which the grant conditions are unlawful.  The agency did not reveal these new conditions until today, 41 days after RFE/RL signed a fully negotiated grant agreement for this fiscal year, Compl. ¶ 32, that USAGM subsequently purported to terminate, *id.* at ¶ 34, 25 days after Congress appropriated funds for the full fiscal year, and 15 days after this Court's initial TRO.  The agency has now made the untenable demand that RFE/RL immediately accept the conditions or face the irreparable harm of being denied the funding it needs to operate.  Nonetheless, without prejudice to further objections RFE/RL may advance, some examples make it glaringly obvious that the conditions are unlawful.

For instance, USAGM has added a condition that "all members of the Board of Directors [of RFE/RL] must be approved by the USAGM CEO," including "current board members" who must "obtain approval" by the CEO.  *See* Ex. B at 5.  Yet Congress recently withdrew from USAGM the authority to impose *exactly such a condition*.  The history is telling.  In 2017, Congress for the first time authorized USAGM to "condition, if appropriate, any grant or cooperative agreement to RFE/RL, Inc. [and certain other grantees] . . . on authority to determine membership of [RFE/RL's] boards."  National Defense Authorization Act for Fiscal Year

4

2017("FY2017 NDAA"), Pub. L. 114-328, 130 Stat. 2000, 2550 (2016) (codified at 22 U.S.C. § 6204(20) (2017)). USAGM's exercise of that authority with respect to another grantee sparked significant congressional and media attention, as well as litigation. *See Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 14 (D.D.C. 2020). Congress responded by repealing USAGM's authority to condition grants on USAGM having the authority to determine membership of RFE/RL's board. *See* National Defense Authorization Act for Fiscal Year 2023, Pub. L. 117-263, 136 Stat 2395, 3915 (2022) (amending 22 U.S.C. § 6204(a) by "striking paragraph (20)"). Congress also repealed part of another provision under which RFE/RL's "directors" had "serve[d] at the pleasure of" the USAGM CEO. *Compare* FY2017 NDAA, 130 Stat. at 2554 (codified at 22 U.S.C. § 6209(d) (2017)), *with* 22 U.S.C. § 6209(d). *See also* National Defense Authorization Act for Fiscal Year 2021, Pub. L. 116-283, 134 Stat. 3388, 4021–24 (2021) (removing the USAGM CEO's authority to remove the heads of the grantees). Accordingly, not only is the authority to regulate the board of RFE/RL—a private nonprofit corporation—not included in the statute, it was deliberately and specifically *excluded* by Congress.

"When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (cleaned up). Consistent with this principle, the Supreme Court has held that agencies cannot assert regulatory authority that Congress has "considered and rejected." *West Virginia v. EPA*, 597 U.S. 697, 731 (2022) (quotation omitted); *see also FTC v. Bunte Bros.*, 312 U.S. 349, 352 (1941) (agency's lack of authority "reinforced by the [agency's] unsuccessful attempt . . . to secure from Congress an express grant of [similar] authority"); *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 187 (3d Cir. 1983) (an agency cannot "us[e] its power to regulate grants" to "accomplish matters not

5

included in [the relevant] statute"). It is frankly remarkable that USAGM would impose a condition that Congress so recently rejected.

More broadly, USAGM's imposition of numerous other grant conditions makes the grant, as a practical matter, unavailable to RFE/RL, and thereby contravenes at least three statutory provisions. *First*, the International Broadcasting Act requires USAGM to make grants "available" to RFE/RL, which precludes the agency from imposing conditions so onerous (and even impossible) as to make the grant effectively unavailable. 22 U.S.C. § 6207(f). *Second*, the statute provides that "[t]he grant agreement shall provide *guidelines* for such grants." *Id.* § 6207(g) (emphasis added). Unreasonable and impossible grant conditions go far beyond mere "guidelines." *Third*, the statute mandates that USAGM "shall respect the professional independence and integrity of . . . the grantees of the agency." *Id.* § 6204(b). The unworkable provisions that are designed to thwart RFE/RL from carrying out its mission, and to directly insert USAGM control over RFE/RL's day-to-day functions, are the opposite of respecting RFE/RL's professional independence and integrity.

Based on an initial review, it is apparent that the Grant Agreement is designed to impose conditions that are unworkable in practice and designed to thwart RFE/RL's ability to access its congressionally appropriated funds. Many of the conditions impose requirements that RFE/RL take action within 24 hours and, if it does not, RFE/RL will be deemed in material breach of the agreement, which would justify termination. Other provisions impose similarly unworkable obligations. RFE/RL highlights just a sampling of those provisions below.[1]

---

[1] Attached as Exhibit C to this motion is a redline between RFE/RL's FY 2025 Master Grant Agreement and its FY 2024 Grant Agreement.

- **OMB Ability to Restrict Funds.** The agency imposed new language that appears designed to give OMB the ability to restrict RFE/RL's funds: "The USAGM hereby grants an amount of $67,406,323, *subject to availability of funds through apportionment by the Office of Management and Budget*, . . . ." Ex. B at 2 (new language emphasized). *Congress* has already made the funds available and provided that they "shall be allocated" to RFE/RL.

- **Restrictions Regarding Contracts and Leases.** The Grant Agreement provides that all "leases and spaces purchased by Recipient with grant funds must be immediately assignable to USAGM upon 24 hours notice," and that "[a]Any default or late payment made on any real property or real estate occupied by the Recipient shall be deemed a material breach of this grant agreement." Ex. B at 2. RFE/RL would likely be unable to negotiate leases that are assignable to USAGM upon 24 hours' notice. Moreover, this provision appears designed to place RFE/RL in material breach immediately, insofar as RFE/RL is already at risk of making late payments on real estate due to USAGM's withholding of its congressionally appropriated funds. *See* Capus Decl. ¶ 31 (ECF 6-3); Suppl. Capus Decl. ¶ 7 (ECF 10-1). USAGM appears to be laying the groundwork to terminate the grant because of payments RFE/RL will miss *because of USAGM's unlawful actions*.

- **Demands to Delete Language Services.** The Grant Agreement provides that "[i]nsofar as the Recipient has duplicative programming with USAGM's other entities, the Recipient shall immediately reduce and delete language services upon notice by USAGM within 24 hours of such notice. Any refusal to delete language services within 24 hours of such notice shall be deemed a material breach of this agreement and shall result in the grant being terminated." Ex. B at 4. USAGM demanding essentially same-day deletion of entire divisions without consultation hardly respects RFE/RL's professional integrity and independence. Moreover, this provision is impracticable. RFE/RL and VOA have 14 languages in common. Take Ukrainian as an example: Shutting down the Ukrainian Service would require terminating over 100 employees (who would be entitled to notice pay and severance), in both the Czech Republic and Ukraine, some of whom report from the front lines. RFE/RL cannot possibly shut down such a complex operation in 24 hours.

- **Reporting of Requested Information within 24 Hours.** The Grant Agreement provides that "[a]t the request of the Chief Executive Officer of USAGM (the 'CEO'), the Recipient shall, within 24 hours, provide the CEO sufficient information to make any determinations required by USAGM or otherwise required by the CEO's oversight responsibilities, including to assess revenue earned, as well as the purposes for which such revenue is used. A refusal to provide this information shall be deemed a material breach of the grant agreement." Ex. B at 5. This vague, open-ended provision requiring reporting of information would enable USAGM to make requests of RFE/RL that cannot be complied with within 24 hours, and then use any asserted failure by RFE/RL to report as an excuse to terminate the grant.

7

- ***Reporting Regarding Contact with Congress and the Executive Branch.*** The Agreement requires RFE/RL to "inform the USAGM CEO of communications or meetings" with "House and Senate staff and Members and any other entity within the Executive Branch," and, within 24 hours of execution of the Agreement, "provide the USAGM CEO a complete accounting of all such communications and meetings" from the prior year. Ex. B at 5. There is no way this information could be compiled and submitted to USAGM within 24 hours of execution of the Grant Agreement, and so this provision appears to be designed to place RFE/RL in breach of the agreement 24 hours after execution.

- ***Reporting of Prior Expenses.*** The Grant Agreement requires a "supplemental accountability report . . . within 5 calendar days of the execution of this Agreement," including "[a]n accounting of any and all beneficial owners of any recipient of any expenditure of funds provided under this Agreement, including but not limited to those expenditures made by grant, sub-grant, fellowship, contract, or any other payment." Ex. B at 13. Once again, the tight deadline seems designed to result in RFE/RL being in breach of the Agreement.

- ***Reviews and Audits.*** The Grant Agreement contains new requirements that authorize USAGM to "at any time hire an independent audit of all Recipient books, financials, security protocols and/or operations. Recipient is required to provide all requested information and access to USAGM and/or its designated auditors/inspectors to all books, records, facilities, and technical systems within 24 hours notice in whatever manner, electronic or otherwise, deemed appropriate by USAGM. Failure to provide such access and/or information as described above shall be deemed to be a material breach of this grant agreement." *Id.* at 23. Providing any such information upon request within 24 hours is onerous and unworkable, and appears designed to place RFE/RL in material breach of the Agreement.

- ***Return of Funds.*** USAGM has added a new sentence to the provision relating to expenditures that are not consistent with the financial plan: "Expenditures by the Recipient that are not consistent with the Approved Financial Plan or otherwise permitted by this Agreement shall be recovered by the Recipient and promptly refunded to USAGM. *Any unrecovered funding will be withheld from future payments*." Ex. B at 16 (emphasis added). This may be an attempt by USAGM to withhold from RFE/RL future grant payments on the basis that it does not to date have an approved financial plan in place for April 2025.

- ***Prohibition on Outside Fundraising.*** Previously, RFE/RL could raise outside funds. Now, RFE/RL "may not engage in fundraising from outside sources. Should the entity want to raise outside funds, they must forgo their grant funds in their entirety." Ex. B at 19. In addition, the agreement goes on to require RFE/RL, within 24 hours of execution of the agreement, to provide an "accounting of all funding received . . . outside of this Grant Agreement over the previous 5 years." *Id.* Given USAGM's withholding of RFE/RL's congressionally appropriated funds, this provision places RFE/RL between a rock and a

8

hard place: it cannot count on USAGM as a reliable source of funding, yet it also cannot explore alternative sources of funding without USAGM denying RFE/RL its congressionally appropriated funds "in their entirety."

- ***24-Hour Cure Provision.*** Compounding all of these problems, the Agreement now has a new provision requiring RFE/RL to "cure" any breach within 24 hours: "the Recipient shall have 24 hours from the receipt of such notice to cure any such failure to comply."  Ex. B at 25.

Each one of these conditions is unreasonable on its face.  Together, there is no doubt that this is not a good-faith effort to "establish guidelines" for a grant.  22 U.S.C. § 6207(g).  The conditions are intended to create, and inevitably would have the effect of creating, a pretext for USAGM to terminate the grant and cut off all funding.  In other words, these conditions directly flout Congress's instruction that the funds it has appropriated "shall be available to make annual grants" for RFE/RL.  22 U.S.C. § 6207(f).

***Arbitrary and Capricious.***  In addition, these onerous grant conditions are arbitrary and capricious in violation of the APA.  5 U.S.C. § 706(2)(A).  These types of onerous conditions are completely foreign to normal government grantmaking.  Moreover, USAGM has offered no explanation for why such a dramatic deviation from normal practice, including USAGM's Fiscal Year 2024 agreement with RFE/RL, is warranted here.  That too violates the APA.  *See FDA v. Wages & White Lion Invs., L.L.C.*, No. 23-1038, 2025 WL 978101, at *13 (U.S. Apr. 2, 2025) (discussing the "change-in-position doctrine" under the APA).

## II. The Remaining Factors Also Favor Granting the Further Temporary Restraining Order.

***Irreparable harm.***  RFE/RL is currently in essentially the same position it was when it filed its original TRO and PI motion and demonstrated irreparable harm.  *See* Ex. D (Declaration of Stephen Capus) (Apr. 9, 2025).  This Court already found in March that RFE/RL had

9

demonstrated irreparable harm, Order Granting TRO at 6–8, ECF 14, and that finding applies equally today. As explained in its prior briefing and its President's undisputed declarations, RFE/RL will be irreparably harmed in a multitude of ways if it does not immediately receive its congressionally appropriated funds. *See* Pl.'s Mem. in Supp. of Mot. for TRO and Prelim. Inj. at 34–40, ECF 6-1; Pl.'s Reply in Supp. of Mot. for TRO at 17–23, ECF 11; Capus Decl., ECF 6-3; Suppl. Capus Decl., ECF 10-1.

Most importantly, RFE/RL's very existence is at stake: without its congressionally appropriated funds—which constitute approximately 99% of RFE/RL's total funding—RFE/RL will be forced to stop the vast majority of its journalistic work and to cease its essential operations. Capus Decl. ¶¶ 12, 23, ECF 6-3. Before Defendants disbursed—on the eve of the TRO hearing—the $7.5 million in appropriated funds intended to cover the March 1–14 period, RFE/RL had already begun the process of winding down its operations. *Id.* ¶¶ 23–24. Without immediate access to its appropriated funds for the month of April, RFE/RL has had to continue taking steps to wind down. That wind-down process will include "terminating all the organization's contracts with freelance journalists, terminating RFE/RL's leases and contracts, … laying off staff" and "halt[ing] essentially all broadcasting and news operations." *Id.* ¶¶ 23–25. USAGM's continued refusal to provide RFE/RL's congressionally appropriated funds under the terms and conditions that were previously in effect thus "threatens the very existence" of RFE/RL. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). That is quintessential irreparable harm.

Depriving RFE/RL of its appropriated April funds will also deprive RFE/RL's 47+ million weekly readers and listeners of access to free and independent media coverage of important events. Capus Decl. ¶¶ 3–5, 34, ECF 6-3. This will irrevocably harm RFE/RL's mission of providing

10

reliable news coverage to people in countries where the free press is threatened and disinformation is pervasive.

Additionally, failing to provide RFE/RL its appropriated funds will (among other things): impose unrecoverable financial losses on the organization, force the organization to shutter its critical cyber-defense infrastructure, threaten the physical safety of RFE/RL's journalists and staff, and harm the organization's long-term reputation as a trusted employer and purveyor of uncensored media. Each of these consequences constitutes irreparable harm. *See* ECF 6-1, at 34–40; ECF 11, at 17–23.

***Balance of equities and public interest.*** Finally, the balance of equities and the public interest favor granting the requested further TRO. This Court has already held that Defendants' continued withholding of RFE/RL's appropriated funds is likely illegal, and "[t]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" Order Granting TRO at 8, ECF 14 (quoting *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citation omitted)). As the Court explained, "the continued operation of RFE/RL," "in keeping with Congress's longstanding determination," is in the public interest. *Id.* at 9. Defendants should not be allowed to thwart that interest by attaching new and flagrantly illegal conditions to RFE/RL's Grant Agreement.

**CONCLUSION**

The Court should grant the requested further temporary restraining order.

April 9, 2025                                         Respectfully submitted,

                                                     /s/ Marney L. Cheek

                                                     Marney L. Cheek (D.C. Bar No. 470596)
                                                     David M. Zionts (D.C. Bar No. 995170)
                                                     Thomas Brugato (D.C. Bar No. 1013523)
                                                     COVINGTON & BURLING LLP
                                                     850 Tenth Street NW
                                                     Washington, DC 20001-4956
                                                     (202) 662-6000
                                                     mcheek@cov.com
                                                     dzionts@cov.com
                                                     tbrugato@cov.com

                                                     *Attorneys for Plaintiff RFE/RL, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 9, 2025, I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia using the court's CM/ECF filing system, which will send notification of such filing via e-mail to all counsel of record.

                                                      Respectfully submitted,

                                                      /s/ Marney L. Cheek
                                                      Marney L. Cheek (D.C. Bar No. 470596)
                                                      COVINGTON & BURLING LLP
                                                      850 Tenth Street NW
                                                      Washington, DC 20001-4956
                                                      (202) 662-6000
                                                      mcheek@cov.com

                                                      *Attorney for Plaintiff RFE/RL, Inc.*