## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RFE/RL, INC.,

          *Plaintiff*,

v.

KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media;

VICTOR MORALES, in his official capacity as acting Chief Executive Officer of the United States Agency for Global Media; and

UNITED STATES AGENCY FOR GLOBAL MEDIA,

          *Defendants*.

Case No. 1:25-cv-799-RCL

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A FURTHER TEMPORARY RESTRAINING ORDER

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      RFE/RL Is Likely to Succeed on the Merits. .................................................................. 2

        A.      Defendants Do Not Dispute the Unlawfulness of Their New Grant
                Conditions. ........................................................................................................ 2

        B.      This Court Has Jurisdiction. ............................................................................. 3

        C.      Defendants' Imposition of Grant Conditions is Final Agency Action. .................. 6

        D.      Defendants' Unlawful, Unworkable, and Unreasonable Conditions Are
                Reviewable and Not Committed to Agency Discretion by Law ......................... 10

        E.      This Court Has Authority to Order Defendants to Take All Steps
                Necessary to Disburse RFE/RL's April Funding ................................................. 13

II.     The Remaining Factors Favor Granting the Further Temporary Restraining Order. ........ 15

        A.      RFE/RL Continues to Demonstrate Irreparable Harm ....................................... 15

        B.      The Balance of Equities and Public Interest Continue to Favor Relief. .............. 16

III.    A Bond Is Not Required or Necessary ............................................................................. 17

IV.     The Court Should Enter A TRO Without Staying It ........................................................ 18

CONCLUSION ...................................................................................................................... 19

## INTRODUCTION

This Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). What ordinary citizens and this Court alike can see is that Defendants have decided to starve RFE/RL of funds. The only question for Defendants is how to insulate their actions from judicial review. First they tried to destroy RFE/RL by terminating its grant agreement. Once it became apparent that the termination could not be defended in court, Defendants revoked the termination but took no steps to resume the normal funding of RFE/RL. Instead, they took two weeks to craft a host of grant conditions that RFE/RL could not possibly agree to or comply with. If RFE/RL rejects the conditions, then there is no grant agreement and it gets no money. If RFE/RL accepts the conditions, then it is immediately in breach and it gets no money (or Defendants replace its Board of Directors and the new Board just closes up shop). Heads, Defendants win. Tails, RFE/RL loses. So does Congress, which ordered USAGM to make grants available and to allocate a specific sum of appropriated funds to RFE/RL. And so do millions of people living under authoritarian rule who look to RFE/RL for independent journalism.

The new grant conditions are so obviously indefensible that Defendants do not bother trying to defend them. They offer only flawed procedural arguments to evade review. Defendants continue to insist that this Court lacks jurisdiction to "enforce a contract." But RFE/RL asks this Court to enforce statutes and the Constitution, not any contract. The whole premise of the new grant conditions is *there is no contract yet*—Defendants are imposing those conditions to avoid their statutory obligation to make a grant available in the first place. Defendants' lawyers also say that RFE/RL is free to negotiate the conditions, so there is no final agency action. But Defendants

themselves made no such offer to negotiate—and in fact ignored RFE/RL's prompt effort to engage with them.

As Defendants see it, they can just run out the clock on RFE/RL's continued existence. RFE/RL must try in vain to negotiate reasonable terms. Defendants can ignore RFE/RL, or string out those negotiations, all the while asserting absolute, unreviewable discretion to insist on any unlawful or unreasonable condition they please. And this Court can say nothing about any of this, or at least not before RFE/RL's staff are furloughed, its journalists deported, its journalism extinguished, and its reputation destroyed.

Enough is enough. The point of the Administrative Procedure Act is to ensure that agency abuses of power—precisely like this one—are reviewed and stopped. *See Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988) (APA's "purpose [is] to remove obstacles to judicial review of agency action"). It is not to allow an agency to hide from judicial review by means of tricks and loopholes, even as the agency all but concedes the unlawfulness of its actions. This Court should grant the further TRO RFE/RL has requested.[1]

## ARGUMENT

### I.    RFE/RL Is Likely to Succeed on the Merits.

#### A.    Defendants Do Not Dispute the Unlawfulness of Their New Grant Conditions.

Defendants' brief is most notable for what it lacks: any engagement with the merits of RFE/RL's legal challenge to their new conditions. They almost entirely ignore those conditions, and instead caricature RFE/RL as merely being "unhappy with some of the terms." ECF 32, Defs.'

---

[1] Defendants ask the Court not to grant relief "absent an amended complaint." ECF 32 at 7 n.1. The trio of out-of-circuit cases they cite for this argument are inapposite, but the point will soon be moot regardless. Defendants have consented to RFE/RL filing an amended complaint, which RFE/RL intends to do as early as possible on Monday, April 14.

Opp. to Pl.'s Mot. for Further TRO ("Opp.") 2.  True enough, RFE/RL is unhappy that USAGM is demanding authority to replace its entire Board of Directors.  But what is more important is that *Congress* was unhappy with USAGM having the power to impose such a condition, and expressly took it away.  ECF 28-1 at 5.  Understandably, Defendants' counsel have not come up with a way to defend this assertion of authority on the merits.

Defendants also do not deny that they have a statutory obligation to make grants available to RFE/RL.  *See* ECF 28-1 at 6.  They do not attempt to argue that it is sufficient to fulfill that obligation to demand that RFE/RL sign a supposed "grant agreement" that is unworkable and impossible to comply with.  *Id.*  And they do not dispute that their conditions are intended to, and inevitably would, cause RFE/RL to immediately be in breach, furnishing Defendants with a pretext to terminate RFE/RL's grant again.  *Id.* at 9.  Finally, Defendants do not explain how such unreasonable conditions could be anything other than arbitrary and capricious, both in substance and based on the agency's failure to explain why such a massive departure from normal practice was warranted.  *Id.*

The Court should treat every one of these points as conceded.  *See, e.g.*, *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion … and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

### B.    This Court Has Jurisdiction.

Once again, Defendants argue that the Court of Federal Claims, and not this Court, has jurisdiction over RFE/RL's claims.  Opp. 7–12.  Defendants are still wrong.

Defendants again rely on the Supreme Court's *per curiam* order in *Department of Education v. California*, 604 U.S. __, 2025 WL 1008354 (Apr. 4, 2025) and the district court's decision in *United States Conference of Catholic Bishops v. United States Department of State*,

2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal docketed*, No. 25-5066 (D.C. Cir. Mar. 14, 2025).  RFE/RL has already explained why those cases are inapposite here.  *See* ECF 11 at 6–9; ECF 21.  Defendants again repeat their conclusory assertions that those cases govern without even attempting to respond to RFE/RL's arguments.  In short, *California* and *Catholic Bishops* have no application here because the *only* source of the plaintiffs' claimed rights in those cases was their contracts with the government.[2]

The contrast here could not be clearer.  The sources of RFE/RL's claimed rights are statutes and the Constitution, not any contract.  RFE/RL's claim is that Congress has directed that USAGM "shall" make "annual grants" available to "RFE/RL, Incorporated" from appropriated funds, 22 U.S.C. § 6207(f), and that Congress has further directed that a specified amount of funds "shall be allocated" specifically to RFE/RL, *see* Pl.'s Mem. in Supp. of Mot. for TRO and PI 7–9, ECF 6-1.  Accordingly, RFE/RL *is* seeking "funds to which a statute allegedly entitles it," *Bowen*, 487 U.S. at 895, and its claims "stem from a statute or the Constitution," and are plainly *not* "founded only on a contract."  *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992), *abrogated in part on other grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017); *see also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th

---

[2] As previously noted, in arguing against district-court jurisdiction, the government's briefing in both cases repeatedly emphasized that the only source of the plaintiffs' rights was the grant or cooperative agreements themselves.  *See, e.g.*, App. to Vacate, *California*, 2025 WL 945313, at *16 (U.S. filed Mar. 26, 2025) ("The ultimate source of the grantees' asserted right to payment is *the grant awards, not the grantmaking statutes* or … regulations that respondents claim the government violated" (emphasis added)); Defs.' Opp. to Pl.'s Mot. for PI, *Conf. of Catholic Bishops*, No. 1:25-cv-465, ECF 25, at 13 (D.D.C. filed Feb. 26, 2025) (government arguing that the plaintiff "is not seeking 'funds to which a statute allegedly entitles it'" because the statute at issue "does not require the [government] to reimburse [the] [p]laintiff for providing resettlement services—only the terms o[f] the cooperative agreements address it" (quoting *Bowen*, 487 U.S. at 895)); *see also* ECF 11, at 7; ECF 21, at 2–3.

1099, 1107 (D.C. Cir. 2022) (Tucker Act does not apply to a "claim that is validly based on grounds other than a contractual relationship with the government" (cleaned up)).

*California* does not override D.C. Circuit precedent recognizing that the key question is whether the plaintiff's claims are "founded only on a contract." *Transohio*, 967 F.2d at 609. Nor does it undermine the D.C. Circuit's recognition that district-court jurisdiction cannot be undermined by the government claiming the "case involves contract issues." *Id.* To the contrary, *California* simply reaffirmed that the APA's waiver of sovereign immunity "does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered" in that case. 2025 WL 1008354, at *1 (cleaned up). In other words, the Tucker Act rather than the APA is the proper vehicle for "suits based on" contracts. *Id.* The APA, not the Tucker Act, is the proper vehicle for suits, like this one, where the plaintiff's claimed right to relief is external to any contract, and is based on statutory or constitutional rights.

Defendants' recent refusal to provide RFE/RL with a *bona fide* grant agreement only further underscores the distinction. Defendants are now maintaining that they are withholding RFE/RL's funds *because there is no grant agreement*. Opp. 12–13. There is no plausible basis for Defendants to continue to argue that "Plaintiff's claims, fundamentally, are a contract dispute," *id.* at 8, while in the next breath insisting that "there is no valid contract," *id.* at 13. The claim that *California* governs where Defendants say "there is no valid contract" is self-negating. RFE/RL's claim, reinforced by Defendants' most recent actions, is that it is entitled *by statute* to a grant, not that there is a contractual right created by a grant agreement that Defendants are violating.

Defendants also state that courts have "react[ed]" to the Supreme Court's *per curiam* order in *California* by "withholding or staying orders that would have required the types of remedies sought here." *Id.* at 10. But the two cited cases bear no resemblance to this one.

5

*American Association of Colleges for Teacher Education v. McMahon* is a carbon copy of *California*: it involves the very same grant programs—Teacher Quality Partnership and Supporting Effective Educator Development—that are at issue in *California*. *See Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, 2025 WL 833917, at *1 (D. Md. Mar. 17, 2025); *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 95 (1st. Cir. 2025).[3] Accordingly, *McMahon* is inapposite for the same reasons as *California*. Similarly, in *New York v. Trump*, the district court granted a stay in light of *California* (without addressing the merits of the government's jurisdictional arguments) on a question that the government itself described as "nonpayment of various FEMA grants." D.R.I. No. 25-cv-39, ECF No. 176, at 3; *see* 4/7/25 Text Order.[4]

Finally, for the reasons RFE/RL has explained, *see* ECF 21 at 4, this Court would have jurisdiction over RFE/RL's constitutional claims even if the Tucker Act precluded jurisdiction over RFE/RL's APA claims—which it does not.

## C. Defendants' Imposition of Grant Conditions is Final Agency Action.

Courts have repeatedly held that an agency's "imposition" of a "condition" on receiving certain "grants" is final agency action. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031 (N.D. Cal. 2018); *see also Planned Parenthood of N.Y.C., Inc. v. HHS*, 337 F. Supp. 3d 308,

---

[3] Indeed, the *McMahon* plaintiffs—recognizing that *California* raised "substantially overlapping issues" and involved "the termination of grants under the same federal programs"—moved to suspend briefing on the government's motion to stay pending a decision from the Supreme Court in *California*. No. 25-1281, Doc. 14 (4th Cir. filed Mar. 31, 2025). And the government in *McMahon*, just as in *California* and *Catholic Bishops*, stressed that the plaintiffs' claimed rights arose directly from their grant agreements and not from statutes. *See* Time Sensitive Motion for Stay Pending Appeal, No. 25-1281, Doc. 12, at 11 (4th Cir. filed Mar. 25, 2025) ("[A]lthough plaintiffs cite various statutory and regulatory provisions, none of them, even on plaintiffs' telling, compels the government to make payments to plaintiffs. The only conceivable source of that right is the funding agreements themselves.").

[4] Defendants also cite *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989), for the general proposition that a plaintiff must bring breach-of-contract actions against the government in the Court of Federal Claims. Opp. 8–9. That case is likewise distinguishable: the plaintiff there sought to enforce provisions of a deed. *Coggeshall*, 884 F.2d at 4.

326–27 (S.D.N.Y. 2018); *City of Chicago v. Sessions*, 321 F.Supp.3d 855, 865–66 (N.D. Ill. 2018); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 271, 279–80 (E.D. Pa. 2018) (same). RFE/RL cited some of these cases in its motion. *See* ECF 28-1 at 4. Defendants ignore them.

Instead, without citing a single case, Defendants deny that imposing a grant condition is "agency action" at all, final or otherwise. Opp. 13. In making this bare assertion, Defendants elected not to acknowledge the Supreme Court's holding that "the word 'action' ... is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). And while Defendants note that agency action "most often" takes the form of an order, they ignore that the D.C. Circuit has "previously defined 'order' expansively to include any agency action capable of review on the basis of the administrative record." *Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1169 (D.C. Cir. 2016). Nor do Defendants engage with the case, cited in RFE/RL's motion, holding that an agency announcement of "the terms whereby applicants can seek grant funding" is agency action. *Planned Parenthood*, 337 F. Supp. 3d at 314.

Imposing grant conditions is plainly a way that USAGM seeks to "exercise its power." *Whitman*, 531 U.S. at 478. Defendants' own brief says that its imposition of "terms and conditions" was an exercise of "the authority" of USAGM vested by 22 U.S.C. § 6204(a)(5). Opp. 4; *see also id.* at 15–16 (asserting that the agency is exercising statutory authority to establish "grant guidelines"). When an agency says it is exercising its *authority*, it is taking agency action, and courts can review whether the agency actually has the authority it is claiming and has exercised it lawfully and reasonably.

Defendants' "finality" argument is just as meritless. Again refusing to acknowledge any inconvenient precedent, Defendants do not mention the many cases holding that "we are to apply

the finality requirement in a 'flexible' and 'pragmatic' way." *Ciba-Geigy Corp. v. U.S.E.P.A.*, 801 F.2d 430, 435 (D.C. Cir. 1986); *see also id.* at 435 n.7 (rejecting "hypertechnical" application of finality); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (noting the "'pragmatic' approach [the Supreme Court] ha[s] long taken to finality").

When the finality standard is applied in a pragmatic and flexible way, the first prong of the finality inquiry is readily met: the grant conditions constitute "the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted); *see also CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 411 (D.C. Cir. 2011) (describing *Ciba-Geigy Corp.* as "complementary" to *Bennett*).  Defendants represent that since March 26, they have been "diligently working to review the terms and conditions."  Opp. 4. That process consummated on April 9, when USAGM demanded that RFE/RL accept those conditions.  In describing the grant agreement that included those conditions, Defendants' brief uses the words "proposed" or "proposal" 22 times.  But that is pure after-the-fact spin by Defendants' lawyers.  USAGM's actual transmission to RFE/RL—which Defendants refer to just once in passing—did not describe the grant agreement as a "proposal" or the terms and conditions as "proposed."  USAGM called it "*the* RFE/RL FY-25 Master Grant Agreement."  ECF 28-2 (emphasis added).  And it directed RFE/RL to "provide a signed version of *this* Grant Agreement" if it wanted its April funds.  *Id.* (emphasis added).  These statements "admit of no ambiguity," and "gave no indication that it was subject to further agency consideration or possible modification." *Ciba-Geigy*, 801 F.2d at 437; *see also City of Dania Beach, Fla. v. F.A.A.*, 485 F.3d 1181, 1187–88 (D.C. Cir. 2007) ("little difficulty concluding" that the agency's letter ends its "decisionmaking process" where "[n]othing in the letter indicates that the [agency's] statements and conclusions are tentative, open to further consideration, or conditional on future agency action"); *Connecticut v.*

*U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 59 (D.D.C. 2019) (finding final agency action where "the letter does not identify the additional information necessary to make a 'final' decision, nor does it request anything of [the] [p]laintiffs").

Similarly, the suggestion that RFE/RL "could have very well voiced its concerns about the grant terms with USAGM and started a negotiation process," Opp. 14, is a fiction invented by counsel. Defendants have failed to disclose that immediately after receiving the new grant agreement, RFE/RL's Chief Financial Officer responded by e-mail, asking if USAGM could "quickly talk to clarify." ECF 33-5, Ex. D, April 9, 2025, Joseph Lataille Email ("Lataille Email"). That email went unanswered, ECF 33-1, Ex. 1, Joseph Lataille Decl. ("Lataille Decl.") ¶ 13—a fact entirely inconsistent with Defendants' representation that RFE/RL "could have" started a negotiation. Under these circumstances, it is telling that Defendants simply make unsupported assertions in their brief that RFE/RL "could" have requested negotiations; apparently no one is prepared to sign a declaration under penalty of perjury that Defendants were *actually* prepared to negotiate reasonable terms and conditions in good faith.

Defendants also ignore all the relevant context. This Court can "consider[] whether final agency action has resulted from a series of agency pronouncements" without considering any specific statement in isolation. *Ciba-Geigy*, 801 F.2d at 435 n.7. RFE/RL spent the month of February negotiating a grant agreement with USAGM and reached a point when USAGM conveyed that the agreement was substantively final. Lataille Decl. ¶ 6. Then the agency went silent, and next contacted RFE/RL to terminate the grant on the basis that it had decided that funding RFE/RL was no longer an agency priority. *Id.* at ¶¶ 7–8; ECF 6-3. USAGM retracted that termination only after inquiry from this Court, went silent again for weeks, and finally presented "the RFE/RL FY-25 Master Grant Agreement," Lataille Decl. ¶ 13; Lataille Email, with

a host of poison pills designed to effectuate the same termination of funding, ECF 28-1 at 6–9. And as Defendants well knew, RFE/RL was already furloughing employees and otherwise suffering irreparable harm, making it untenable to continue waiting for its funding.  ECF 28-5, Capus Decl. ¶ 2.  Against that backdrop, it requires extraordinary naiveté to consider the April 9 conditions merely the start of a good-faith negotiation.

The second prong of the finality inquiry is satisfied just as easily.  Defendants selectively quote *Bennett* to say that finality requires an action "by which rights or obligations have been determined."  Opp. 14 (quoting *Bennett*, 520 U.S. at 178).  The full quote from *Bennett* says: "the action must be one by which rights or obligations have been determined, *or* from which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (emphasis added; cleaned up).  As courts have explained, "legal consequences clearly flow from the imposition" of a grant condition, because "[r]eceipt of the grant[] is conditioned" on accepting it.  *Becerra*, 284 F. Supp. 3d at 1031–32.

Defendants cite no APA cases—just the Restatement of Contracts and a contract case—to argue that there is no finality because a "proposal" must be "accepted" "for it to have legal effect." Opp. 14.  But legal consequences flow *from the choice* presented by the agency: "[t]hey force [RFE/RL] to choose between accepting the award with the [c]onditions or forgoing the award." *City of Chicago*, 321 F. Supp. 3d at 866.

### D.    Defendants' Unlawful, Unworkable, and Unreasonable Conditions Are Reviewable and Not Committed to Agency Discretion by Law.

"The Administrative Procedure Act embodies a basic presumption of judicial review." *Dep't of Com.*, 588 U.S. at 771 (cleaned up).  Courts interpret the "exception for action committed to agency discretion quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Id.* at 772.  Even where a statute confers "broad discretion,"

agency action remains reviewable unless "the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised." *Make The Rd. New York v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020). The "defendants must rebut the presumption that agency action is judicially reviewable." *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007). For several reasons, Defendants have failed to demonstrate that this narrow exception to judicial review applies here.

*First*, this is not a case where there is "no law to apply." *Dep't of Com.*, 588 U.S. at 773. To the contrary, RFE/RL's position is that the grant agreement expressly *violates* the law by imposing conditions that Congress directly rejected. ECF 28-1 at 5. Specifically, Congress expressly repealed USAGM's prior authority to condition grants on USAGM having the ability to determine membership of RFE/RL's board. *Id.* at 4–5. The Court can thus plainly review whether USAGM has the power to impose *that* condition—courts decide all the time whether agencies acted within their statutory authority, and the judicial task could hardly be easier when an agency asserts an authority *that Congress recently repealed*.[5]

In addition, RFE/RL has identified three statutory limitations that apply here: (1) that grants "shall be available"—not unavailable—to RFE/RL, 22 U.S.C. § 6207(f), (2) that the grant agreement "shall establish guidelines for such grants," *id.* § 6207(g), and (3) that USAGM "shall respect the professional independence and integrity of … the grantees of the agency," *id.* § 6204(b). Defendants offer no argument disputing that these provisions provide law for the Court to apply: it may review whether a *bona fide* grant has in fact been "made available," whether the

---

[5] Notably, the dicta (from the district court, not the D.C. Circuit) in *Open Technology Fund v. Pack* that the USAGM CEO has "broad, unilateral powers over grant-making" pre-dates Congress's removal of these authorities from the CEO. 470 F. Supp. 3d 8, 31 (D.D.C. 2020).

imposed conditions go beyond "guidelines," and whether the conditions "respect [RFE/RL's] professional independence and integrity."

The main authority on which Defendants rely, *Lincoln v. Vigil*, 508 U.S. 182 (1993), proves the point. There, the Court found that "[t]he allocation of funds *from a lump-sum appropriation* is another administrative decision traditionally regarded as committed to agency discretion." *Id.* at 192 (emphasis added). But the Court made clear that "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* at 193. Congress did just that here.

*Second*, even if the statute lacked clear restrictions, "courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal. If the agency action is found not to be reasonably consistent with this goal, then the courts must invalidate it." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985). Here, the "general goal" of the International Broadcasting Act is clear: grants "shall be available … for the purpose of carrying out" RFE/RL's functions. 22 U.S.C. § 6207(f). So is the general goal of the recent appropriations law: a specific sum of money "shall be allocated" specifically to RFE/RL. Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 735 (2024). Defendants' imposition of a grant agreement with patently unreasonable terms that would necessarily result in termination of the grant 24 hours after its execution is not "reasonably consistent" with these statutory goals.

*Third*, and relatedly, the Court has jurisdiction to review whether Defendants' actions amount to abandonment of the relevant statutory mandates. As another court held in the context of contract termination: "Courts have consistently distinguished between an agency's discretion in how it *implements* statutory mandates (which may, in some instances, be unreviewable) and an agency's attempt to *abandon* those mandates entirely (which is always reviewable)." *Pacito v.*

*Trump*, 2025 WL 893530, at *6 (W.D. Wash. Mar. 24, 2025). Here, RFE/RL has demonstrated that these grant conditions, which inevitably would create a pretext for USAGM to terminate the grant and cut off all funding, amount to an abandonment of USAGM's obligation to make grants "available" to RFE/RL and to establish "guidelines" for such grants. *See* ECF 28-1 at 11.[6]

*Finally*, contrary to Defendants' suggestion, courts do review agency decisions to impose contractual provisions under the APA to determine whether they are arbitrary or capricious. For example, the D.C. Circuit found a Transportation Security Administration decision to mandate a contractual provision requiring airports to provide certain indemnities to the agency to be arbitrary. *SecurityPoint Holdings, Inc. v. TSA*, 769 F.3d 1184 (D.C. Cir. 2014). The Court should do the same here.

To be clear, RFE/RL is not asking the Court to go "line by line through the grant agreement" to evaluate each and every term. Opp. 16. Instead, RFE/RL is asking that the Court review the grant provisions that RFE/RL contends are contrary to law or arbitrary and capricious, and determine whether Defendants have complied with the relevant statutory directives, including their legal obligation to make a grant "available" to RFE/RL. Defendants have not complied with these requirements, and their decision not to comply is judicially reviewable.

### E.    This Court Has Authority to Order Defendants to Take All Steps Necessary to Disburse RFE/RL's April Funding.

Defendants miss the point entirely when they say that RFE/RL "lacks a legal basis for requesting the money it seeks" "[w]ithout a grant agreement in place." Opp. 13. The reason there is no grant agreement in place is *because of the unlawful action RFE/RL is challenging*.

---

[6] While it is not necessary for the Court to reach the issue, judicial review is available even where the "committed to agency discretion" exception otherwise would apply, where there are "facts adduced in support of a claim of … bad faith, fraud, or conscious wrongdoing." *Curran v. Laird*, 420 F.2d 122, 131 (D.C. Cir. 1969). Defendants' course of conduct may rise to that level.

RFE/RL has asked the Court to order disbursement of the April 2025 funds "under the same terms and conditions that were previously in effect and governed the funds disbursed in March 2025." ECF 28-6 at 1. That request is entirely compatible with the statutory provision that grants are to be "made in compliance with a grant agreement." Opp. 12 (quoting 22 U.S.C. § 6207(g)). USAGM recently disbursed funds for the second half of March based on a short "mini-agreement" that applied the same terms and conditions that were previously in effect for FY24. ECF 33-4, Ex. C, Grant Agreement for Additional Amounts in FY25. Nothing prevents the agency from doing the same for April. USAGM can disburse the April funds under the same terms and conditions that were previously in effect for FY24. Of course, it would be equally satisfactory for Defendants to simply counter-sign the full-year FY25 grant agreement that USAGM negotiated with RFE/RL and RFE/RL signed at the end of February, and disburse the funds pursuant to those terms and conditions. Lataille Decl. ¶¶ 6–8.

This Court is fully empowered to enter the order RFE/RL has requested. The new terms and conditions that Defendants have imposed are unlawful, arbitrary, and capricious, and this Court has authority to set aside such agency action. 5 U.S.C. § 706(2). It also has authority to "compel agency action unlawfully withheld." *Id.* § 706(1). The agency has a statutory obligation to make grants "available" to RFE/RL. 22 U.S.C. § 6207(f). As Defendants do not dispute, the new conditions make the grant illusory—or in other words, unavailable. ECF 28-1 at 6. This Court can of course compel Defendants to do what the law requires, *i.e.*, enter a grant agreement without unlawful conditions, and pursuant to that agreement disburse the funds that Congress said shall be allocated to RFE/RL.

It is worth taking note of what Defendants are really saying. They think they can violate their statutory obligation to make funds "available" to RFE/RL through grant agreements, and then

tell this Court it lacks authority to order the disbursement of funds since no grant agreement is in place.  In other words, since Defendants are illegally withholding a *bona fide* grant agreement, the Court cannot stop them from illegally withholding congressionally appropriated funds.  To state that proposition is to refute it.

## II.    The Remaining Factors Favor Granting the Further Temporary Restraining Order.

### A.    RFE/RL Continues to Demonstrate Irreparable Harm.

Defendants' principal argument regarding irreparable harm is that RFE/RL "has a choice to accept the grant agreement" or alternatively "negotiat[e]" a new grant agreement with USAGM.  Opp. 17.  Given the grant agreement provided to RFE/RL, however, these supposed "solutions" would still result in irreparable harm.

As RFE/RL has explained and Defendants do not dispute, if RFE/RL signed the grant agreement, it would in 24 hours be in material breach and the agreement would be terminated, putting RFE/RL in the same position it would be in without a signed agreement.  *See* ECF 28-1 at 7.  That presents RFE/RL with a Hobson's choice: sign the grant agreement and lose all funding 24 hours later, or refuse to sign the grant agreement and remain without funding to operate.  That is no choice at all.  Either way, RFE/RL suffers the irreparable harm of having to shutter its operations because it is starved of funding.  *See City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017) ("forcing the City either to decline the grant funds based on what it believes to be unconstitutional conditions or accept them and face an irreparable harm, is the type of 'Hobson's choice' that supports irreparable harm"); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) (similar); *City of Los Angeles v. Sessions*, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018) (similar).

Defendants' suggestion that RFE/RL could "negotiate" a grant agreement is just as untenable.  To start, the record demonstrates that USAGM is not actually willing to negotiate.

15

USAGM presented "the" agreement and said it would release the April funds if RFE/RL signed "this" agreement. ECF 28-2. In response, RFE/RL promptly sought clarification from USAGM, but USAGM never responded. Lataille Decl. ¶ 13. So Defendants' "negotiation" option is illusory.[7] In any event, the harms that RFE/RL will suffer are imminent *now*. *See* ECF 6-3, Capus Decl. ¶ 2; ECF 28-5, Capus Decl. ¶ 2. Defendants are suggesting that RFE/RL should have started negotiating the terms and conditions for its April funding *nine days into April*. Even if good-faith negotiation were somehow a possibility here, RFE/RL would still suffer these harms while negotiations took place. In short, all of the roads Defendants suggest RFE/RL could take lead to the same destination: RFE/RL winding down operations and, ultimately, no longer existing.

Defendants' other argument, that economic harms are not irreparable harm, *see* Opp. 17–18, has already been rejected by the Court. As the Court held in its order granting RFE/RL's original temporary restraining order, "[w]hile ordinary economic injuries are usually insufficient to require injunctive relief, financial harm can 'constitute irreparable harm … where the loss threatens the very existence of the movant's business.'" ECF 14 at 7 (quoting *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698 (TSC), 2025 WL 842360, at \*10 (D.D.C. Mar. 18, 2025)). RFE/RL's very existence remains threatened today, and it has demonstrated irreparable harm. *See* ECF 28-1 at 9–11.

### B.    The Balance of Equities and Public Interest Continue to Favor Relief.

Defendants argue that "the balance of the equities and the public interest tip in Defendants' favor." Opp. 19. But this Court has already held the opposite: that "the balance of the equities and the public interest favor RFE/RL." ECF 14 at 8. Nothing has changed since that ruling.

---

[7] Defendants also ignore that RFE/RL has *already* negotiated a FY25 agreement with USAGM, which RFE/RL signed on February 27, 2025, but which USAGM refuses to sign. *See* Lataille Decl. ¶¶ 6–8.

*See* ECF 28-1 at 11. "There is generally no public interest in the perpetuation of unlawful agency action," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), and Defendants should not be allowed to thwart the public interest in "the continued operation of RFE/RL," ECF 14 at 9, by forcing RFE/RL to make a false choice between accepting no funding, or accepting the promise of funding that RFE/RL will never receive because it is attached to flagrantly illegal conditions that RFE/RL could never satisfy.[8]

### III.    A Bond Is Not Required or Necessary.

For the reasons RFE/RL has previously given, *see* ECF 11 at 24–25, the Court should exercise its discretion to deny Defendants' bond request, which would defeat the purpose of the emergency relief sought here. Rule 65(c) "has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all," *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012)). A bond "is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action." *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (collecting cases). Defendants ask this Court to require RFE/RL to post a bond equal to $12,178,590, or

---

[8] Defendants also suggest that RFE/RL faces a "heightened burden" to obtain a mandatory injunction. Opp. 20. But "[i]n this circuit, … no case seems to squarely require a heightened showing." *Friends for All Child., Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 835 n.31 (D.C. Cir. 1984); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 159 F.3d 636 (D.C. Cir. 1998) (unpublished) ("We need not reach the question whether the district court erred in holding that the standard applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction…."); *see also Minney v. United States Off. of Pers. Mgmt.*, 130 F. Supp. 3d 225, 231 n.6 (D.D.C. 2015) ("The D.C. Circuit, however, has yet to address whether plaintiff carries a heightened burden and this Court, as such, declines to impose a heightened standard of persuasion."). In any event, "assuming its applicability, the higher standard is fully met here" given the showing RFE/RL has made on each factor. *Friends*, 746 F.2d at 834 n.31.

"equal to the size of any payment that the Court orders on a preliminary basis." Opp. 21. Requiring RFE/RL to post a bond when it essentially has access to no source of funds other than its congressionally appropriated grant money, ECF 6-3, Capus Decl. ¶ 12, would "have the effect of denying" RFE/RL its "right to judicial review," *Wolf*, 502 F. Supp. 3d at 520.

Further, courts have routinely held that bonds are not required, or required the posting of only a nominal bond, in the context of challenges to unlawful agency action, including funding freezes. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (finding bond was especially inappropriate when the defendants "personally face no monetary injury from the injunction"). Even where courts have required a bond in such cases, the bond amounts have been nominal. *See, e.g.*, *Does 1-26 v. Musk*, 2025 WL 840574, at *32 (D. Md. Mar. 18, 2025) (requiring only a limited bond of $100); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 2025 WL 573764, at *30 (D. Md. Feb. 21, 2025) (setting a "nominal bond of zero dollars under Rule 65(c)" because granting the defendants' request "would essentially forestall [the] [p]laintiffs' access to judicial review").

## IV.  The Court Should Enter A TRO Without Staying It.

There is also no basis for Defendants' request that the Court stay a TRO for a week "to allow the Solicitor General to determine whether to authorize the Government to seek a stay pending appeal." Opp. 21. RFE/RL is in desperate need of its funds for April—it is already April 12 and RFE/RL has not received a dime of April funding. Further, if Defendants believed it was so urgent to attach these unlawful and unreasonable conditions to RFE/RL's April funding, Defendants did not need to wait two weeks to impose them. Indeed, Defendants could have raised them in February when USAGM and RFE/RL were negotiating the FY25 agreement. Whether or not the Solicitor General would quickly authorize an appeal (despite the usual rule that TROs are not appealable) is an internal matter for Defendants, not this Court's concern.

## CONCLUSION

For the reasons set forth herein, the Court should grant the motion for a further temporary restraining order.

April 12, 2025

Respectfully submitted,

/s/ *Marney L. Cheek*
Marney L. Cheek (D.C. Bar No. 470596)
David M. Zionts (D.C. Bar No. 995170)
Thomas Brugato (D.C. Bar No. 1013523)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
mcheek@cov.com
dzionts@cov.com
tbrugato@cov.com

*Attorneys for Plaintiff RFE/RL, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2025, I filed the foregoing document with the Clerk of

Court for the United States District Court for the District of Columbia using the court's CM/ECF

filing system, which will send notification of such filing via e-mail to all counsel of record.


Respectfully submitted,

/s/ *Marney L. Cheek*
Marney L. Cheek (D.C. Bar No. 470596)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
mcheek@cov.com

*Attorney for Plaintiff RFE/RL, Inc.*