# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| RFE/RL, INC.<br>1250 Connecticut Avenue NW, Suite 450<br>Washington, DC 20036,<br><br>                    *Plaintiff*,<br><br>v.<br><br>KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media<br>Wilbur J. Cohen Federal Building<br>330 Independence Avenue SW<br>Washington, DC 20237;<br><br>VICTOR MORALES, in his official capacity as Acting Chief Executive Officer of the United States Agency for Global Media<br>Wilbur J. Cohen Federal Building<br>330 Independence Avenue SW<br>Washington, DC 20237;<br><br>UNITED STATES AGENCY FOR GLOBAL MEDIA<br>Wilbur J. Cohen Federal Building<br>330 Independence Avenue SW<br>Washington, DC 20237,<br><br>                    *Defendants*. | Case No. 1:25-cv-799-RCL<br><br>**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**TEMPORARY RESTRAINING ORDER SOUGHT** |

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     This case challenges a federal agency's refusal to abide by Congress's power of the purse.[1]  In unmistakable terms, Congress has appropriated funds specifically for Plaintiff RFE/RL,

---

[1] Plaintiff RFE/RL, Inc. has conferred with Defendants' counsel, who have consented to the filing of this amended complaint.  Fed. R. Civ. P. 15(a)(2).

Inc. (commonly known as Radio Free Europe/Radio Liberty or "RFE/RL"), and expressly directed the United States Agency for Global Media to make those funds available to RFE/RL in the form of annual grants. That agency is now refusing to disburse the appropriated funds on the basis that it is ending its "non-statutory" functions. But funding Radio Free Europe/Radio Liberty *is* a statutory function of the United States Agency for Global Media. Whether to disburse funds as directed by appropriations laws, and whether to make those funds available through grants as directed by the International Broadcasting Act, is not an optional choice for the agency to make. It is the law. Urgent relief is needed to compel the agency to follow the law.

2.    For decades, Congress has appropriated funding for RFE/RL in recognition of the critical role that RFE/RL plays in providing accurate, uncensored news in countries where a free press is threatened. The executive agency distributing these funds—now called the United States Agency for Global Media ("USAGM")—has, until now, always complied with its statutory mandate to "make annual grants for the purpose of carrying out" RFE/RL's historic role. 22 U.S.C. § 6207(f). RFE/RL relies almost entirely on these congressionally appropriated funds to sustain its journalistic work, with over a thousand journalists and staff working in 27 languages to bring news coverage to 23 countries in Europe and Asia.

3.    Despite this statutory mandate and Congress's specific appropriation, USAGM informed RFE/RL that it would not disburse to RFE/RL its congressionally appropriated funds for March 1, 2025, through September 30, 2025. On March 15, 2025, President Trump signed into law an act that extended through the rest of this fiscal year Congress's direct appropriation of funds to RFE/RL. Yet that very same day, Defendant Kari Lake, a Senior Advisor to the Acting Chief Executive Officer of USAGM, purported to terminate RFE/RL's grant agreement on the basis of

a March 14 Executive Order directing USAGM to eliminate "all non-statutorily required activities and functions," and declared that funding RFE/RL "no longer effectuates agency priorities."

4.    RFE/RL then filed this lawsuit in response to USAGM's refusal to disburse its congressionally appropriated funds, seeking a temporary restraining order requiring Defendants to disburse RFE/RL's congressionally appropriated funds for March 1–15, 2025, and to abstain from invoking the closeout obligations in RFE/RL's grant agreement.  RFE/RL also filed a motion for a preliminary injunction requiring Defendants to disburse RFE/RL's congressionally appropriated funds for the remaining months of fiscal year 2025 pursuant to a grant agreement with RFE/RL, along with several related requests.

5.    Defendants have responded by selectively providing portions of the relief requested by RFE/RL while ultimately evading their full statutory and constitutional obligations.  On March 24, 2025, Defendants initiated disbursement of the March 1–15 congressionally appropriated funds, but refused to refrain from invoking the grant closeout obligations—meaning that RFE/RL as a practical matter could not use the March 1–15 funds to continue business in the ordinary course.  The Court issued a temporary restraining order requiring Defendants to refrain from invoking the closeout obligations.  On April 8, 2025, RFE/RL received its appropriated funds for the remainder of March 2025.  However, RFE/RL still has not received any funds for April 2025.

6.    On March 26, 2025, Defendants withdrew the termination of RFE/RL's grant, stating that "[t]he March 15, 2025 letter terminating [RFE/RL's] grant agreement … is hereby rescinded."  ECF 15 at 4.  USAGM further stated that "[t]his recission is without prejudice to USAGM's authority to terminate the grant at a later date."  *Id.*  Defendants insisted that this rescission rendered the entire action moot—even though RFE/RL had yet to receive any of its congressionally appropriated funds for April and had no guarantee that Defendants would follow

through on their statutory and constitutional obligations.  Finally, on April 9, 2025, USAGM demanded, in the form of a new grant agreement, that RFE/RL submit to a host of new terms and conditions before USAGM will disburse RFE/RL's April 2025 funding.  *See* ECF 28-3.  These new conditions are a barely veiled pretext for denying RFE/RL the grant that Congress said "shall be available" and the funds Congress said "shall be allocated" to it.

7.      USAGM made a final decision to impose new grant conditions by giving RFE/RL no option but to accept the new grant agreement in order to obtain its congressionally appropriated funds.

8.      The unreasonableness and blatant illegality of the new terms and conditions leave no question that USAGM has made a final decision not to disburse congressionally appropriated funds to RFE/RL.

9.      In light of these developments, RFE/RL has no choice but to bring this amended lawsuit and seek urgent relief.  Without access to its congressionally appropriated funds, and without a *bona fide* grant agreement that is not riddled with unlawful and impossible-to-meet conditions, RFE/RL will soon be forced to cease to exist in its current form, abandoning journalists and staff who have associated with RFE/RL at significant personal risk and jeopardizing its hard-won reputation for providing reliable, uncensored news in countries where press freedom is weak.

## PARTIES

10.     Plaintiff RFE/RL is a private, not-for-profit 501(c)(3) organization incorporated in Delaware.  RFE/RL's mission is to promote democratic values by providing accurate, uncensored news and open debate in countries where a free press is threatened and disinformation is pervasive. RFE/RL has its corporate headquarters in Washington, D.C., with its journalistic headquarters in Prague, Czech Republic, close to the markets it serves.

11.     Defendant United States Agency for Global Media is a federal agency that makes and administers grants supporting the United States' international broadcasting efforts worldwide.

12.     Defendant Victor Morales is Acting Chief Executive Officer of USAGM.  He is sued in his official capacity.  The CEO of USAGM supervises all activities relating to broadcasting, including by making and supervising grants for broadcasting and related activities. *See generally* 22 U.S.C. § 6204(a).

13.     Defendant Kari Lake is Senior Advisor to the Acting Chief Executive Officer of the USAGM.  In a letter to RFE/RL dated March 15, 2025, Defendant Lake represented that she is acting pursuant to "Authorities Delegated by Acting CEO."  She is sued in her official capacity.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this action under (a) 28 U.S.C. § 1346(a)(2) because agencies of the United States government are named defendants; (b) 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States; and (c) 28 U.S.C. § 1361 because this action seeks to compel officers of the United States to perform their duties.

15.     Venue is proper in this district because RFE/RL resides in this judicial district, a defendant in the action resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  28 U.S.C. § 1391(e).

## FACTS

### A.     Radio Free Europe/Radio Liberty.

16.     RFE/RL is a private, nonpartisan, nonprofit news organization that promotes democratic values through reporting in countries where a free press is either banned by the government or not fully established.  Over the course of its 75-year existence, RFE/RL has developed into one of the most comprehensive news operations in the world, with reporting in 27 languages to 23 countries that reaches more than 47 million people every week.  *See, e.g.*, RFE/RL

Fact Sheet, USAGM (Jan. 7, 2025).[2]  RFE/RL has been funded by the U.S. government since its inception.

17.     The U.S. government conceived of Radio Free Europe and Radio Liberty.  Radio Free Europe first started broadcasting to Poland, Czechoslovakia, Hungary, Romania, and Bulgaria in 1950, while Radio Liberty started broadcasting to the Soviet Union in 1953.  Radio Free Europe and Radio Liberty were alternative news sources to the media controlled by the Soviet Union and other communist governments.

18.     In 1973, Congress passed the International Broadcasting Act, Pub. Law No. 93-129, 87 Stat. 456, in which Congress found that "it is the policy of the United States to promote the right of freedom of opinion and expression" and that "open communication of information and ideas among the peoples of the world contributes to international peace and stability."  87 Stat. at 457.  Congress further found that "Radio Free Europe and Radio Liberty" "have demonstrated their effectiveness in furthering the open communication of information and ideas in Eastern Europe and the Union of Soviet Socialist Republics" and that "the continuation of Radio Free Europe and Radio Liberty as independent broadcast media … is in the national interest."  *Id.*

19.     The International Broadcasting Act authorized USAGM's predecessor, the Board for International Broadcasting, to "make grants to Radio Free Europe and Radio Liberty in order to carry out the purposes" of "freedom of opinion and expression" as stated in section 2 of the International Broadcasting Act.  *See* 87 Stat. at 457–58.  Radio Free Europe and Radio Liberty combined to form a single corporate entity, RFE/RL, in 1976.

20.     Toward the end of the Cold War, RFE/RL began to expand its operations to respond to threats to democracy and media freedom.  For example, after the violent breakup of Yugoslavia,

---

[2] https://perma.cc/GP6Q-DRU5.

RFE/RL began broadcasting in Serbian, Croatian, and Bosnian to the Yugoslav successor states. In some countries that established democratic governments and free media, RFE/RL concluded that it had fulfilled its mission and ceased broadcasting, such as in Poland in 1997.

21.    Today, RFE/RL reports to 23 countries across Europe and Asia: Afghanistan, Armenia, Azerbaijan, Belarus, Bosnia and Herzegovina, Bulgaria, Georgia, Hungary, Iran, Kazakhstan, Kosovo, Kyrgyzstan, Moldova, Montenegro, North Macedonia, Pakistan, Romania, Russia, Serbia, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan.  RFE/RL is able to publish news in 27 languages because of its decades of sustained effort to recruit journalists and staff with the relevant language skills and cultural knowledge.

22.    RFE/RL has adapted from being a broadcast radio service to embracing a multi-channel approach to news, with a news presence online and across social media platforms.

23.    RFE/RL employs numerous staff around the world.  Many of RFE/RL's journalists are unable to work in their home countries due to threats of violence stemming from their independent journalism.  They therefore operate abroad through work visas supported by their employment at RFE/RL.

**B.    Congress Funds Radio Free Europe/Radio Liberty by Direct Appropriation and Has Mandated that USAGM Make Grant Funds Available to It.**

24.    RFE/RL is a private grantee that operates under grants from the federal government; it is not itself a federal government entity.  *See, e.g.*, 22 U.S.C. § 6207.

25.    Virtually all of RFE/RL's funding—approximately 99%—comes from its federal appropriation.  The remaining funds come from private donations and other sources.

26.    USAGM is the federal agency tasked with making and supervising grants for broadcasting activities.  *See* 22 U.S.C. § 6204(a)(5).  USAGM also allocates funds appropriated for international broadcasting activities among the various elements of the Agency and its grantees,

including RFE/RL.  *See* 22 U.S.C. § 6204(a)(6).  Other grantees of USAGM include Radio Free

Asia, Middle East Broadcasting Networks, Inc., and the Open Technology Fund.  *See* 22 U.S.C.

§ 6201 (finding that "[i]t is in the interest of the United States to support broadcasting to other

nations consistent with the requirements of this chapter").

27.    The USAGM CEO has authority "[t]o make and supervise grants and cooperative

agreements for broadcasting and related activities."  22 U.S.C. § 6204(a)(5).

28.    USAGM is specifically required by statute to make annual grants to RFE/RL.  The

relevant statute provides that "[g]rants authorized under section 6204 of this title for RFE/RL,

Incorporated, *shall be available to make annual grants*" for RFE/RL's operations. The United

States International Broadcasting Act of 1994 (the "International Broadcasting Act"), Pub. Law

No. 103-236, 108 Stat. 382 (1994) (codified as amended at 22 U.S.C. § 6207(f)) (emphasis added).

In 2020, USAGM recognized in a court filing that this language "dictate[s] how the CEO *must*

*exercise* his § 6204 grant-making authority when dealing with [RFE/RL]."  Def.'s Opp. to Pls.'

Mot. TRO, at 4, *Open Technology Fund v. Pack*, No. 20-cv-1710, ECF 7, 2020 WL 7041426

(D.D.C. filed June 26, 2020) (emphasis added).

29.    In accordance with the Act, RFE/RL and USAGM have each year until now entered

into an annual grant agreement.  This process typically begins in September with USAGM

preparing a draft grant agreement and sending it to RFE/RL for review.  Once the agreement is

final, the USAGM CEO will sign on behalf of USAGM and the RFE/RL President will sign on

behalf of RFE/RL.   The grant agreement is then executed, thus obligating RFE/RL's

congressionally appropriated funds.

30.    Congress has appropriated funds for RFE/RL every year since the enactment of the

International Broadcasting Act in 1973.  Last year, Congress appropriated funds for RFE/RL in

the Further Consolidated Appropriations Act of 2024, Pub. Law No. 118-47, div. F, 138 Stat. 460 (2024). Under the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, Congress appropriated $857,214,000 for USAGM. In the text of the statute, Congress provided that the "funds appropriated under this heading shall be allocated in accordance with the table included under this heading in the explanatory statement described in section 4." *Id.* at 735. The table that Congress incorporated by reference in the text of the statute allocated $142,212,000 in funding for "Radio Free Europe/Radio Liberty" for the 2024 fiscal year.[3] *See* H. Comm. on Appropriations, 118th Cong., Further Consolidated Appropriations Act, 2024, Legislative Text and Explanatory Statement at 1167 (Comm. Print 2024).

31.     Upon the expiration of fiscal year 2024 funding on September 30, 2024, Congress renewed RFE/RL's funding until December 20, 2024, in the Continuing Appropriations Act, 2025, Pub. Law No. 118-83, 138 Stat. 1524 (2024) ("First Continuing Resolution"). Division A of the First Continuing Resolution appropriated "[s]uch amounts as may be necessary, at a rate for operations as provided in the applicable appropriations Acts for fiscal year 2024 and under the authority and conditions provided in such Acts, for continuing projects or activities … that are not otherwise specifically provided for in this Act, that were conducted in fiscal year 2024, and for which appropriations, funds, or other authority were made available" in "The Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division F of Public Law 118-47)." *Id.* at 1524–25.

---

[3] Incorporation by reference is a well-accepted legislative tool in the appropriations context, and the Government Accountability Office has recognized that incorporation by reference renders spending language legally binding. *See, e.g.*, B-316010, Consolidated Appropriations Act, 2008 – Incorporation by Reference (Feb. 25, 2008).

32.     Congress again renewed RFE/RL's funding in the American Relief Act, 2025, Pub. Law No. 118-158, 138 Stat. 1722 (2024) ("Second Continuing Resolution"), through March 14, 2025.  Division A of the Second Continuing Resolution amended the First Continuing Resolution by replacing the expiration date of December 20, 2024, with March 14, 2025.  The Second Continuing Resolution thus appropriated funding for the period December 21, 2024, through March 14, 2025, under the same conditions, as relevant to RFE/RL, as the First Continuing Resolution.

33.     On March 15, 2025, President Donald J. Trump signed into law Congress's Full-Year Continuing Appropriations and Extensions Act, 2025 ("Third Continuing Resolution"), which, like the previous continuing resolutions, appropriated "[s]uch amounts as may be necessary, at the level specified … under the authority and conditions provided in applicable appropriations Act for fiscal year 2024" until September 30, 2025.  *See* H.R. 1968, 119th Cong. § 1101(a) (2025).

34.     In sum, Congress appropriated approximately $23 million for RFE/RL in the First Continuing Resolution for October 1, 2024, to December 20, 2024.  Congress appropriated approximately $41 million to RFE/RL in the Second Continuing Resolution for December 21, 2024, to March 14, 2025.  Congress further appropriated approximately $77 million for RFE/RL in the Third Continuing Resolution for March 15, 2025, to September 30, 2025.

### C.     USAGM Has Denied Radio Free Europe/Radio Liberty Access to Its Congressionally Appropriated Funds.

35.     As required by the International Broadcasting Act, USAGM obligates funding appropriated by Congress to RFE/RL through a grant agreement.  Following the passage of the First and Second Continuing Resolutions, USAGM executed grant agreements (FAIN: 1060-25-GO-00001) obligating those funds to RFE/RL through February 28, 2025.  USAGM was legally

obligated to execute these grant agreements because the agency is statutorily mandated to make "annual grants" available for RFE/RL's operations when Congress appropriates funds for RFE/RL. 22 U.S.C. § 6207(f).

36.    Under the Second Continuing Resolution, Congress appropriated funds for RFE/RL through March 14, 2025.  USAGM did not, however, obligate the March 1–14, 2025, funds— which total approximately $7.5 million—in the grant agreement.  Throughout December 2024, USAGM informed RFE/RL that the reason for not obligating the funds was a policy of not providing partial-month payments to grantees.  RFE/RL continued to follow up with USAGM regarding the obligation and disbursement of the March 1–14 appropriated funds, but USAGM did not obligate or take steps to initiate disbursement of the funds until March 24, just hours before the hearing on RFE/RL's motion for a temporary restraining order in this action, *see* ECF 13 (Notice of Disbursement Initiation).

37.    RFE/RL continued to engage with USAGM to secure formal obligation of its funds for the remainder of fiscal year 2025 through a signed grant agreement through late February 2025.

38.    In late February 2025, RFE/RL and USAGM exchanged drafts of an additional 2025 grant agreement.  After agreeing on some minor edits, on February 27, 2025, USAGM sent a final version of the grant agreement to RFE/RL and requested a "*signed* version of this Master Grant Agreement at your earliest convenience."  RFE/RL promptly responded with the signed grant agreement that same day.  USAGM never returned the counter-signed grant agreement.

39.    On March 14, 2025, President Trump announced the Executive Order "Continuing the Reduction of the Federal Bureaucracy."  The order provided that the "non-statutory components and functions of the following governmental entities shall be eliminated to the maximum extent consistent with the applicable law" and listed the "United States Agency for

Global Media" as one of those governmental entities. The Executive Order did not define what it considered the statutory or non-statutory components and functions of USAGM, and it did not purport to define USAGM's function of obligating appropriated funds for RFE/RL through grants as a non-statutory function.

40.    On March 15, 2025, Kari Lake, Senior Advisor to the Acting CEO of USAGM, sent a letter to RFE/RL purporting to terminate RFE/RL's grant agreement pursuant to authorities delegated to her by the Acting CEO, Defendant Morales. According to Defendant Lake, USAGM terminated the grant awarded to RFE/RL because it "no longer effectuates agency priorities."

41.    Defendant Lake's letter only further confirmed that USAGM has no intent of obligating or disbursing RFE/RL's congressionally appropriated funds for the remainder of fiscal year 2025.

42.    In RFE/RL's 75-year history, it is not aware of any instance in which USAGM (or its predecessors) has refused to obligate and disburse funds appropriated by Congress in an appropriations statute. This denial of access to funds mandated by law is unprecedented and will, if not remedied immediately, inflict irreparable harm on RFE/RL and ultimately require RFE/RL to almost completely cease its operations.

**D.    RFE/RL Sues to Compel Defendants to Comply with Their Statutory Obligations; the Court Grants the Requested TRO; Defendants Rescind RFE/RL's Grant Termination and Disburse One Month of Appropriated Funds.**

43.    RFE/RL initiated this action on March 18, 2025, by filing a complaint and a motion for a temporary restraining order ("TRO") and preliminary injunction ("PI"). ECF 1, 6. RFE/RL's TRO motion sought to, among other things, (i) compel USAGM to disburse the nearly $7.5 million in appropriated funds for the March 1–14, 2025 period of time, and (ii) enjoin Defendants and their agents from taking any steps or imposing any obligations relating to closing out RFE/RL's grant.

*See* ECF 6-5.  RFE/RL's PI motion sought to, among other things, compel USAGM to disburse the remainder of RFE/RL's appropriated funds through September 30, 2025 in accordance with a grant agreement with RFE/RL.  *See* ECF 6-6.

44.    On March 24, just hours before the TRO hearing, USAGM initiated disbursement of the March 1–14 appropriated funds.  *See* ECF 13.  Defendants argued at the TRO hearing that this disbursement of funds obviated the need for a TRO.  *See* ECF 16.

45.    On March 25, the Court granted RFE/RL's TRO motion.  ECF 14.  The Court concluded, among other things, that RFE/RL is likely to succeed on its APA claim.  *See id.* at 5–6.  The Court further concluded that RFE/RL would suffer irreparable harm absent the requested TRO because RFE/RL's closeout obligations would have prevented RFE/RL from using the March 1–14 funds to continue its normal operations, putting "RFE/RL in the same position as if [it] had not received the funds at all."  *Id.* at 8.

46.    The next day, on March 26, Defendant Lake, acting on behalf of USAGM, sent a letter to RFE/RL "rescind[ing]" the March 15 letter that had purported to terminate RFE/RL's grant.  ECF 15 at 4.  The March 26 letter further stated that "[t]his recission is without prejudice to USAGM's authority to terminate the grant at a later date."  *Id.*  Defendants argued that the withdrawal of the March 15 letter terminating RFE/RL's grant mooted this case because, according to Defendants, RFE/RL had "secured the primary relief … that it requested in the complaint."  *Id.* at 1.

47.    But the primary relief RFE/RL seeks in this action is to compel Defendants to comply with their statutory and constitutional obligations to disburse RFE/RL's congressionally appropriated funds pursuant to a *bona fide* grant agreement.  And Defendants' conduct since the

beginning of this litigation has confirmed that they are intent on flouting these obligations, and that remains the case.

48.    On March 20, in response to USAGM's request, RFE/RL submitted a financial plan for the remainder of the fiscal year to USAGM for approval.  ECF 18 at 3.  In the normal course, USAGM approves RFE/RL's proposed financial plans promptly.  *See id.*  But USAGM has not yet approved RFE/RL's submitted financial plan.

49.    On March 27, the day after Defendants rescinded the termination of RFE/RL's grant, RFE/RL submitted an invoice to USAGM requesting its congressionally appropriated funding for March 15–April 30, 2025.  *See* ECF 18-1.[4]  RFE/RL also contacted Defendants' counsel, posing questions intended to clarify when RFE/RL's April 2025 funding would be disbursed, whether Defendants would continue to disburse the remainder of RFE/RL's FY2025 funds, and whether Defendants maintained that there was any legal impediment to RFE/RL using its appropriated funds—once disbursed—to continue its standard operations in the ordinary course. *See* ECF 18-2.

50.    On March 28, Defendants' counsel responded that, with respect to the period beginning April 1, Defendants "will rely on any approved financial plan to disburse funds," and that RFE/RL "may expend disbursed funds under standard operations, as set forth in the Approved Financial Plan through March 31, 2025, and subsequent financial plan to be approved, and the grant agreement."  *Id.*

51.    USAGM's inaction on RFE/RL's financial plan is yet another example of Defendants' efforts to avoid their statutory and constitutional obligations to disburse RFE/RL's congressionally appropriated funds in accordance with the processes that RFE/RL and USAGM

---

[4] On April 8, 2025, RFE/RL received its appropriated funds for March 15–31, 2025.

have followed for years.  RFE/RL requested a further temporary restraining order on March 28 seeking an order permitting RFE/RL to continue to operate without being required to "recover" or "refund" funds that are spent without an approved financial plan.  *See* ECF 18 at 4.

52.    On April 8, the Court held a status hearing in which counsel for Defendants represented that USAGM would provide a grant agreement to RFE/RL within the next day. 4/8/2025 Status Hearing Tr. 4:05–06.

### E.    USAGM Demands that RFE/RL Sign a Grant Agreement Containing Numerous Unlawful, Unworkable, and Unreasonable Conditions.

53.    On April 9, 2025, RFE/RL received an email from USAGM, presenting it with the "**RFE/RL FY-25 Master Grant Agreement**."  The "FY 25 Master Grant Agreement" ("the Grant Agreement") contained numerous provisions that have not been in any of RFE/RL's previous grant agreements.  The agency did not invite any feedback or discussion of the new terms.  Instead, the agency demanded that RFE/RL submit its April 2025 funding request together with "a signed version of *this* Grant Agreement."  ECF 28-2 (emphasis added).

54.    The Grant Agreement is replete with unlawful conditions.  For instance, USAGM has added a condition that "all members of the Board of Directors [of RFE/RL] must be approved by the USAGM CEO," including "current board members" who must "obtain approval" by the CEO, ECF 28-3 at 5, despite Congress's express repeal of this precise power.

55.    In 2017, Congress for the first time authorized USAGM to "condition, if appropriate, any grant or cooperative agreement to RFE/RL, Inc. [and certain other grantees] … on authority to determine membership of [RFE/RL's] boards."  National Defense Authorization Act for Fiscal Year 2017, Pub. L. 114-328, 130 Stat. 2000, 2550 (2016) (codified at 22 U.S.C. § 6204(a)(20) (2017)).  USAGM's exercise of that authority with respect to a different grantee sparked significant congressional and media attention, as well as litigation.  *See Open Tech. Fund*

*v. Pack*, 470 F. Supp. 3d 8, 14 (D.D.C. 2020).  Congress responded by repealing USAGM's authority to condition grants on USAGM having the authority to determine membership of RFE/RL's or other grantees' boards.  *See* National Defense Authorization Act for Fiscal Year 2023, Pub. L. 117-263, 136 Stat 2395, 3915 (2022) (amending 22 U.S.C. § 6204(a) by "striking paragraph (20)").  Congress also repealed part of another provision under which RFE/RL's "directors" had "serve[d] at the pleasure of" the USAGM CEO.  *See id.*

56.    The conferral of authority to USAGM's CEO to approve RFE/RL's Board is but one of many unlawful conditions in the Grant Agreement designed to do two main things: (i) set up RFE/RL for failure and (ii) give USAGM complete control over RFE/RL, despite its status as a private, independent 501(c)(3) nonprofit corporation.

57.    USAGM is imposing no fewer than twelve conditions requiring RFE/RL to respond or take certain actions in 24 hours, including in some cases within 24 hours of signing the Agreement itself.  *See, e.g.*, ECF 28-3 at 2, 3, 5, 6, 14, 19, 22, 23, 25.  At least some of these requirements are patently impossible to comply with.  Other provisions impose simply unworkable obligations.  A sampling of additional unlawful and impracticable provisions is highlighted below:

58.    ***OMB Ability to Restrict Funds***.  The agency imposed new language that appears designed to give the Office of Management and Budget the ability to restrict RFE/RL's funds: "The USAGM hereby grants an amount of $67,406,323, *subject to availability of funds through apportionment by the Office of Management and Budget*, …."  ECF 28-3 at 2 (new language emphasized).  But *Congress* has already made these funds available and provided that they shall be allocated to RFE/RL.

59.    ***Restrictions Regarding Contracts and Leases***.  The Grant Agreement provides that all "leases and spaces purchased by the Recipient with grant funds must be immediately assignable

to USAGM upon 24 hours notice," and that "[a]ny default or late payment made on any real property or real estate occupied by the Recipient shall be deemed a material breach of this grant agreement." ECF 28-3 at 2–3. Setting aside that RFE/RL would likely be unable to negotiate leases that are assignable to USAGM upon 24 hours' notice, this provision appears designed to place RFE/RL in material breach immediately. RFE/RL is already going to make late payments on real estate *due to USAGM's withholding of its congressionally appropriated funds*.

60.    ***Demands to Delete Language Services.*** The Grant Agreement provides that, "[i]nsofar as the Recipient has duplicative programming with USAGM's other entities, the Recipient shall immediately reduce and delete language services upon notice by USAGM within 24 hours of such notice. Any refusal to delete language services within 24 hours of such notice shall be deemed a material breach of this agreement and shall result in the grant being terminated." ECF 28-3 at 3–4. USAGM is demanding essentially same-day deletion of entire divisions without consultation or consideration for whether it is even feasible to shut down such complex operations in 24 hours.

61.    ***Reporting of Requested Information within 24 Hours.*** The Grant Agreement provides that "[a]t the request of the Chief Executive Officer of USAGM (the 'CEO'), the Recipient shall, within 24 hours, provide the CEO sufficient information to make any determinations required by USAGM or otherwise required by the CEO's oversight responsibilities, including to assess revenue earned, as well as the purposes for which such revenue is used. A refusal to provide this information shall be deemed a material breach of the grant agreement." ECF 28-3 at 5. This vague, open-ended provision requiring reporting of information would enable USAGM to make requests of RFE/RL that cannot be complied with within 24 hours, and then use any asserted failure by RFE/RL to report as an excuse to terminate the grant.

62.    ***Reporting Regarding Contact with Congress and the Executive Branch.***  The Grant Agreement requires RFE/RL to "inform the USAGM CEO of communications or meetings" with "House and Senate staff and Members and any other entity within the Executive Branch," and, within 24 hours of execution of the agreement, "provide the USAGM CEO a complete accounting of all such communications and meetings" from the prior year.  ECF 28-3 at 5–6.  There is no way for this information to be compiled within 24 hours of execution, so this provision appears designed to place RFE/RL in material breach of the grant agreement 24 hours after execution.

63.    ***Reporting of Prior Expenses.***  The Grant Agreement requires a "supplemental accountability report … within 5 calendar days of the execution of this Agreement," including "[a]n accounting of any and all beneficial owners of any recipient of any expenditure of funds provided under this Agreement, including but not limited to those expenditures made by grant, sub-grant, fellowship, contract, or any other payment."  ECF 28-3 at 13–14.  This tight deadline puts RFE/RL at risk of material breach of the grant agreement when it cannot realistically provide within one week such an accounting for every vendor of every single good or service, whether significant or minor, acquired with grant funds.

64.    ***Review and Audits.***  The Grant Agreement newly requires that RFE/RL maintain "all books and records available for inspection on site at all times," ECF 28-3 at 14, allow site access to USAGM "with 24 hours notice," *id.*, and provides that USAGM "may review of all Recipient financial records" through any means "as reasonably requested by" USAGM, *id.*  There is another audit provision that authorizes USAGM to "at any time hire an independent audit of all Recipient books, financials, security protocols and/or operations," and RFE/RL is required to provide all requested information and access to within 24 hours notice in whatever manner

"deemed appropriate by USAGM." *Id.* at 23. Failure to provide such access constitutes a material breach of the grant agreement. *Id.* Providing any such information within 24 hours is onerous and unworkable, and demanding such provisions would inevitably put RFE/RL in material breach of the grant agreement.

65.    ***Return of Funds.***    The Grant Agreement states that "[e]xpenditures by the Recipient that are not consistent with the Approved Financial Plan or otherwise permitted by this Agreement shall be recovered by the Recipient and promptly refunded to USAGM. *Any unrecovered funding will be withheld from future payments.*" ECF 28-3 at 16 (emphasis added). This may be an attempt by USAGM to withhold from RFE/RL future grant payments on the basis that it does not to date have an approved financial plan in place for April 2025.

66.    ***Prohibition on Outside Fundraising.***    Previously, RFE/RL could raise outside funds. Now, RFE/RL "may not engage in fundraising from outside sources. Should the entity want to raise outside funds, they must forgo their grant funds in their entirety." ECF 28-3 at 19. In addition, the agreement goes on to require RFE/RL to, within 24 hours of execution of the agreement, provide an "accounting of all funding received … outside of this Grant Agreement over the previous 5 years." *Id.* This position puts RFE/RL between a rock and a hard place: it cannot rely on USAGM for funding, but also cannot seek other sources of funding without losing all of its grant funding.

67.    ***24-Hour Cure Provision***. Compounding all of these problems, the agreement now has a new provision requiring RFE/RL to "cure" any breach within 24 hours: "the Recipient shall have 24 hours from the receipt of such notice to cure any such failure to comply." ECF 28-3 at 25. This is impractical and unworkable and sets RFE/RL up to fail.

68.     Each one of these conditions is unreasonable on its face.  Together, there is no doubt that the Grant Agreement is not a good-faith effort by USAGM to "establish guidelines" for a grant.  22 U.S.C. § 6207(g).

69.     The International Broadcasting Act includes several provisions relevant to the grant agreement between USAGM and RFE/RL.  First, the International Broadcasting Act requires USAGM to make grants "available" to RFE/RL, which precludes the agency from imposing conditions so onerous (and even impossible) as to make the grant, as a practical matter, unavailable.  22 U.S.C. § 6207(f).  Second, the statute provides that "[t]he grant agreement shall establish *guidelines* for such grants."  22 U.S.C. § 6207(g) (emphasis added).  Third, the statute mandates that USAGM "shall respect the professional independence and integrity of … the grantees of the Agency."  22 U.S.C. § 6204(b).

70.     The terms and conditions in the Grant Agreement contravene each of these provisions.  The conditions are intended to create, and inevitably would have the effect of creating, a pretext for USAGM to terminate the grant and cut off all of RFE/RL's funding.  In other words, these conditions directly flout Congress's instruction that the funds it has appropriated "shall be available to make annual grants" for RFE/RL.  22 U.S.C. § 6207(f).

**F.      Harm Caused by the Unlawful Withholding of Congressionally Appropriated Funds for Radio Free Europe/Radio Liberty.**

71.     As a result of RFE/RL's inability to access its congressionally appropriated funds, RFE/RL is currently facing and will continue to face irreparable harms to its operations and the security of its journalists.  Those harms jeopardize RFE/RL's very existence.

72.     Because of the withholding of its congressionally appropriated funds, RFE/RL has already been forced to significantly scale back its operations.  Without access to those funds, RFE/RL will soon be nearly unable to operate, as it will be forced to (among other things) terminate

freelance journalists, terminate its leases and contracts, and lay off staff. Without its congressionally appropriated funds, RFE/RL will also be forced to stop the vast majority of its journalistic work and will be at risk of ceasing to exist as an organization.

73. Failing to provide RFE/RL with its congressionally mandated funding will effectively end RFE/RL's operations by requiring it to halt essentially all broadcasting and news operations. RFE/RL reaches over 47 million people every week. Stopping news coverage in countries where there are few other alternative news sources in the local language apart from state-controlled or state-influenced media means that millions of people will be cut off from access to free and independent media coverage of critical events. This will irrevocably harm RFE/RL's reputation and credibility among those who rely on RFE/RL for news, in addition to jeopardizing RFE/RL's mission.

74. RFE/RL's loss of funding will also impose unrecoverable financial losses on the organization. RFE/RL is responsible for multiple leases and obligations on which it will be forced to default without Congress's appropriated funds. For example, RFE/RL has a payment due on the first of the month on its lease in Prague that it will not be able to pay without access to its congressionally appropriated funds. Moreover, because USAGM is a co-obligor on RFE/RL's Prague lease, the agency's decision to withhold RFE/RL's funding will financially harm the agency itself.

75. More broadly, RFE/RL exists to provide independent news coverage that is outside of the control of the governments in the countries where it operates. Ceasing news coverage, even temporarily, will allow the state-controlled or state-influenced media in these countries to fill the gap with coverage that is skewed towards the particular narratives favorable to the local governments, rather than objective reporting. This will have an immeasurable impact in reducing

democratic access to information and set back the work of independent journalism in these countries.

76.     RFE/RL relies on freelance journalists in other countries to do some of its most critical reporting.  Many of these journalists operate in the field in countries that are hostile to journalistic freedoms.  These journalists therefore face threats to their physical safety, and they have been the object of specific and credible threats to their safety from foreign governments and organized criminal elements associated with foreign governments.  If RFE/RL's funding is not restored, it will not be able to pay for security services for its journalists, or for security services that protect RFE/RL facilities and staff in a number of countries where RFE/RL journalists have been targeted for attack by terrorist organizations, criminal elements, and governments that are hostile to RFE/RL's reporting.

77.     Given the nature of RFE/RL's work to support journalistic freedom, it is a frequent target of cyber threats and attacks. If RFE/RL does not receive its congressionally appropriated funding, it will be forced to lay off essential personnel responsible for protecting RFE/RL from cyberattacks.  Some of RFE/RL's critical cybersecurity defense tools have monthly licenses that will lapse in thirty days if there is a delay in payment.  Any data breach will risk exposing the personal information of journalists working in authoritarian states, putting their security, and potentially their lives, at risk.

78.     RFE/RL's workforce relies on journalists who have fled from authoritarian regimes in countries such as Russia and Iran.  In many countries where these journalists operate, their residency is based on employment contracts with RFE/RL.  If RFE/RL is not funded, it will be forced to terminate its contracts with freelance journalists and lay off a substantial portion of its employees in April 2025.  RFE/RL journalists whose residency relies on their employment may

be forced to return to their home countries.  In many cases, these journalists could be criminally prosecuted, imprisoned, or tortured because of their work for RFE/RL.

79.    Absent judicial relief to ensure the restoration of access to congressionally appropriated funding, RFE/RL's mission and reputation will be harmed irrevocably and long into the future.  Many RFE/RL journalists operate in unstable and/or conflict-torn environments.  It takes time and effort for RFE/RL to build trust and credibility with its journalists.  RFE/RL will also suffer irreparable harm if forced to close its doors, even for a short period of time, because its credibility will be damaged with journalists it may later hope to employ.  Moreover, if RFE/RL is not able to protect its current journalists, it will be very difficult for RFE/RL to persuade journalists to join RFE/RL in the future.  The lack of access to congressionally appropriated funding therefore severely undermines RFE/RL's journalistic mission and contribution to freedom of the press around the world.

## CLAIMS FOR RELIEF

### COUNT ONE
### APA, 5 U.S.C. § 706(2)(A)–(C)

80.    All preceding and subsequent paragraphs are incorporated herein by reference.

81.    The Administrative Procedure Act ("APA") provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" "contrary to constitutional right, power, privilege, or immunity[,]" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C.§ 706(2)(A)–(C).

82.    Defendants' impoundment of RFE/RL's congressionally appropriated funding is final agency action reviewable under 5 U.S.C. § 704.  "Agency action" includes an agency's "sanction," "denial" of "relief," and "failure to act."  5 U.S.C. § 551(13).  "[S]anction" includes

the "withholding of relief" or "property."  5 U.S.C. § 551(10)(B), (D).  "[R]elief" is defined to include an agency's "grant of money" and an agency's "recognition of a claim [or] right." 5 U.S.C. § 551(11).

83.    Defendants' actions are "final" because USAGM's refusal to obligate and disburse RFE/RL's congressionally appropriated funds for March 1–14, 2025, and March 15, 2025, to September 30, 2025, culminating in Defendant Lake's March 15, 2025, Notice of Grant Termination Letter, "mark[s] the consummation of the agency's decisionmaking process" and is an action by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  In the Notice, Defendant Lake invoked the March 14, 2025, Executive Order's mandate that USAGM eliminate all non-statutorily required activities and functions, indicating that USAGM has decided it is not statutorily required to make grants with and provide congressionally appropriated funds to RFE/RL. Additionally, as a basis for terminating the grant award, Defendant Lake asserted that grants to RFE/RL "no longer effectuate[] agency priorities."   In conjunction, these determinations by USAGM make clear that the agency has decided to not provide RFE/RL with its congressionally appropriated funding.

84.    Defendants' termination of RFE/RL's grant agreement also constitutes final agency action under the APA.

85.    Defendants' actions are contrary to law and in excess of statutory authority because the International Broadcasting Act and the relevant appropriations laws create a mandatory, non-discretionary duty for Defendants to make available to RFE/RL its congressionally appropriated funds.  22 U.S.C. § 6207(f); Second Continuing Resolution; Third Continuing Resolution.

86.     Defendants' actions are also contrary to the United States Constitution because Defendants are unlawfully impounding funds appropriated by Congress for RFE/RL through the constitutionally prescribed legislative process, in violation of the Separation of Powers, as well as the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

87.     Defendants' actions are arbitrary and capricious because, among other things, Defendants have not articulated a basis—let alone an adequate or reasoned one—for the impoundment of RFE/RL's congressionally appropriated funds, and they have also entirely failed to consider the substantial reliance interests in RFE/RL's continued funding and operation, including without limitation: the 47 million individuals who receive news from RFE/RL on a weekly basis, some of whom reside in countries where there may be no alternative news sources free from state control or influence; RFE/RL's employees, some of whom will be at risk of physical harm, or of losing their visas and subsequent deportation, if RFE/RL does not receive its congressionally appropriated funding; and the leases and other obligations on which RFE/RL will be forced to default without its funding, including a lease in Prague on which USAGM itself is a co-obligor.

## COUNT TWO
### APA, 5 U.S.C. § 706(1)

88.     All preceding and subsequent paragraphs are incorporated herein by reference.

89.     The APA provides that a reviewing court "shall" "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1).

90.     USAGM has a non-discretionary duty to make "annual grants" available to RFE/RL from congressionally appropriated funds. 22 U.S.C. § 6207(f). In 2020, USAGM acknowledged to this Court that the International Broadcasting Act "dictate[s] how the CEO *must exercise* his

§ 6204 grant-making authority when dealing with [RFE/RL]."   Def.'s Opp. to Pls.' Mot. TRO, at 4, *Open Technology Fund v. Pack*, No. 20-cv-1710, ECF 7, 2020 WL 7041426 (D.D.C. filed June 26, 2020) (emphasis added).   In the Second and Third Continuing Resolutions, Congress appropriated funds for RFE/RL that USAGM must make available to RFE/RL for use during the statutorily prescribed timeframe.

91.    USAGM has not complied with its non-discretionary duties to make appropriated funds available to RFE/RL through an annual grant agreement.

92.    Defendants' actions are also contrary to the United States Constitution because they are unlawfully impounding funds appropriated by Congress for RFE/RL through the constitutionally prescribed legislative process, in violation of the Separation of Powers, as well as the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

93.    The Court should thus compel Defendants to make accessible RFE/RL's appropriated funds to RFE/RL for April 2025, and from May 1 through September 30, 2025.

## COUNT THREE
### APA, 5 U.S.C. § 706(2)(A)–(C)

94.    All preceding and subsequent paragraphs are incorporated herein by reference.

95.    The APA provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" "contrary to constitutional right, power, privilege, or immunity[,]" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C.§ 706(2)(A)–(C).

96.    The onerous grant conditions imposed by USAGM are arbitrary and capricious, and otherwise not in accordance with the law, in violation of the APA.  These types of onerous

conditions are completely foreign to normal government grantmaking.  Moreover, USAGM has offered no explanation for why such a dramatic deviation from normal practice, including USAGM's Fiscal Year 2024 agreement with RFE/RL, is warranted here.  This too violates the APA.

97.    The grant conditions are also unreasonable on their face.  Together, there is no doubt that the Grant Agreement is not a good-faith effort to "establish guidelines" for a grant.  22 U.S.C. § 6207(g).  The conditions are intended to create, and inevitably would have the effect of creating, a pretext for USAGM to terminate the grant and cut off all funding.  In other words, these conditions directly flout Congress's instruction that the funds it has appropriated "shall be available to make annual grants" for RFE/RL.  22 U.S.C. § 6207(f).

98.    Defendants' imposition of new grant conditions also constitutes "final agency action" reviewable under the APA.  USAGM presented the new conditions as a fait accompli, presenting RFE/RL with no option but to accept the terms presented in order to access its congressionally appropriated funds.

99.    Defendants' actions are contrary to law and in excess of statutory authority because the International Broadcasting Act and the relevant appropriations laws create a mandatory, non-discretionary duty for Defendants to make available to RFE/RL its congressionally appropriated funds through a *bona fide* grant agreement.  22 U.S.C. § 6207(f); Second Continuing Resolution; Third Continuing Resolution.

100.    Defendants' actions are also contrary to the United States Constitution because, by imposing onerous and illegal grant conditions that RFE/RL cannot accept, Defendants are unlawfully impounding funds appropriated by Congress for RFE/RL through the constitutionally prescribed legislative process, in violation of the Separation of Powers, as well as the Take Care

Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

### COUNT FOUR
### APA, 5 U.S.C. § 706(1)

101.    All preceding and subsequent paragraphs are incorporated herein by reference.

102.    The APA provides that a reviewing court "shall" "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).

103.    Defendants' actions also constitute agency action unlawfully withheld.  5 U.S.C. § 706(1).  Defendants are required to "make available" grant funds to RFE/RL.  22 U.S.C. § 6207(f).  Defendants' refusal to provide a *bona fide* grant agreement unlawfully withholds RFE/RL's congressionally appropriated funds, in violation of USAGM's non-discretionary statutory duty to make appropriated funds available to RFE/RL through an annual grant agreement.

### COUNT FIVE
### Presentment Clause, U.S. Const. art. I, § 7, cl. 2

104.    All preceding and subsequent paragraphs are incorporated herein by reference.

105.    This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

106.    The Presentment Clause provides, in relevant part, "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it[.]" U.S. Const. art. I, § 7, cl. 2.  Under the Presentment Clause, the President lacks authority to modify or amend duly enacted legislation—the President may only "approve all the parts of a Bill, or reject it in toto." *Clinton v. City of New York*, 524 U.S. 417, 439–40 (1998) (citation omitted).

107.    Congressional appropriations law mandating that funds be provided to RFE/RL for fiscal year 2025 is duly enacted legislation which the President and his officers may not disregard either in full or in part.

108.    Defendants' unlawful impoundment of RFE/RL's congressionally appropriated funds constitutes an unconstitutional modification and *de facto* partial veto of duly enacted appropriations legislation in violation of the Presentment Clause.

## COUNT SIX
### Appropriations Clause, U.S. Const. art. I, § 9, cl. 7

109.    All preceding and subsequent paragraphs are incorporated herein by reference.

110.    This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund*, 561 U.S. at 491 n.2.

111.    The Appropriations Clause of the Constitution provides, "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]"  U.S. Const. art. I, § 9, cl. 7.  The Clause protects Congress's "exclusive power over the federal purse."  *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (*quoting Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992)).  The Executive Branch has no authority to circumvent Congress's appropriations power.  *In re Aiken County*, 725 F.3d 255, 260–61 (D.C. Cir. 2013).

112.    Defendants' impoundment of RFE/RL's congressionally appropriated funds unlawfully infringes on Congress's exclusive power over the federal purse.  The Executive has no constitutional authority to undermine this core legislative function.

## COUNT SEVEN
### Spending Clause, U.S. Const. art. I, §  8, cl. 1

113.    All preceding and subsequent paragraphs are incorporated herein by reference.

114.    This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund*, 561 U.S. at 491 n.2.

115.    The Spending Clause of the Constitution provides, "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."  U.S. Const. art. I, § 8, cl. 1.  The Spending Clause vests this spending power exclusively with the legislative branch.

116.    Defendants' impoundment of RFE/RL's congressionally appropriated funds unlawfully infringes on Congress's exclusive power over the federal purse.  The Executive has no constitutional authority to undermine this core legislative function.

## COUNT EIGHT
### Take Care Clause, U.S. Const. art. II, § 3

117.    All preceding and subsequent paragraphs are incorporated herein by reference.

118.    This Court has inherent equitable power to enjoin unconstitutional executive conduct.  *See Free Enter. Fund*, 561 U.S. at 491 n.2.

119.    Under the Constitution, the executive power vested in the President and, by extension, all subordinate officers to whom he may delegate executive functions, includes the duty to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

120.    The Take Care Clause commands the executive branch to faithfully execute the laws of the United States.

121.    Defendants' unlawful impoundment of RFE/RL's congressionally appropriated funds is a dereliction of the Executive's constitutional obligation to "take Care that the Laws be faithfully executed," in violation of the Take Care Clause.

## COUNT NINE
### Violation of the Separation of Powers

122.    All preceding and subsequent paragraphs are incorporated herein by reference.

123.    This Court has inherent equitable power to enjoin unconstitutional executive conduct. *See Free Enter. Fund*, 561 U.S. at 491 n.2.

124.    Defendants' unlawful impoundment of RFE/RL's congressionally appropriated funds unconstitutionally aggrandizes executive power at the expense of constitutionally protected legislative authority, in violation of the Separation of Powers. *See* U.S. Const. art. II, § 3, *id.* art. I, § 9, cl. 7; *id.* art. I, § 8, cl. 1; *id.* art. I, § 7, cl. 2.

## COUNT TEN
### Mandamus Act, 28 U.S.C. § 1361; All Writs Act, 28 U.S.C. § 1651

125.    All preceding and subsequent paragraphs are incorporated herein by reference.

126.    The Mandamus Act, 28 U.S.C. § 1361, vests this Court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

127.    The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction.

128.    USAGM has a non-discretionary duty to make annual grants available to RFE/RL from congressionally appropriated funds.  22 U.S.C. § 6207(f).

129.    It is necessary and appropriate for this Court to issue a writ of mandamus pursuant to 28 U.S.C. §§ 1361 and 1651 and under this Court's equitable authority to compel Defendants to act.

## COUNT ELEVEN
### *Ultra Vires*

130.    Paragraphs 1–79 are incorporated herein by reference.

131.    An agency acts ultra vires when it "plainly acts in excess of its delegated powers." *Fresno Cmty. Hosp. & Med. Ctr. v. Cochran*, 987 F.3d 158, 162 (D.C. Cir. 2021).

132.    Judicial "[r]eview for ultra vires acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts generally have jurisdiction to grant relief." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (internal quotations and citation omitted).

133.    This Court has inherent equitable power to enjoin ultra vires conduct by Defendants. *See Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 743 (D.C. Cir. 2022). No statute, constitutional provision, or other source of law authorizes Defendants to impound RFE/RL's congressionally appropriated funds. To the contrary, the International Broadcasting Act and the relevant appropriations laws require that Defendants make available annual grants to RFE/RL from congressionally appropriated funds. 22 U.S.C. § 6207(f); Second Continuing Resolution; Third Continuing Resolution.

134.    Defendants' unlawful impound of the RFE/RL's congressionally appropriated funds is *ultra vires*.

## RELIEF REQUESTED

WHEREFORE, RFE/RL respectfully requests that the Court:

A.    Issue a temporary restraining order and preliminary injunction;

B.    Order Defendants to cease their unlawful refusal to obligate RFE/RL's appropriation for April 1, 2025 through September 30, 2025;

C.    Declare unlawful and set aside the Defendants' impoundment of RFE/RL's congressionally appropriated funds and termination of RFE/RL's grant agreement as arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A), contrary to constitutional right, power, privilege, or immunity under 5 U.S.C. § 706(2)(B), and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right under 5 U.S.C. § 706(2)(C);

D.      Declare that the termination of Grant FAIN: 1060-25-GO-00001 is unlawful and null and void;

E.      Set aside the termination of Grant FAIN: 1060-25-GO-00001;

F.      Declare that Defendants are required by law to take all necessary steps to ensure that the Agency is party to a grant agreement that does not contain unlawful, unreasonable, or unworkable conditions with RFE/RL, Inc. providing all congressionally appropriated funds through September 30, 2025;

G.      Declare that Defendants are required by law to obligate and disburse to RFE/RL the congressionally appropriated funds covering April 1, 2025, to September 30, 2025;

H.      Declare that the FY 2025 Master Grant Agreement contains illegal and unreasonable terms and conditions;

I.      Declare that the FY 2025 Master Grant Agreement sent to RFE/RL on April 9, 2025, contains illegal and unreasonable terms and conditions;

J.      Issue a permanent injunction barring Defendants from impounding RFE/RL's congressionally appropriated funds, requiring Defendants to make available to RFE/RL a grant through a grant agreement that does not contain unlawful, unreasonable, or unworkable conditions, and requiring Defendants to disburse RFE/RL's congressionally appropriated funds;

K.      Award RFE/RL reasonable attorneys' fees and costs; and

L.      Grant such other relief as the Court deems necessary, just, and proper.

April 14, 2025                          Respectfully submitted,

                                   /s/ *Marney L. Cheek*
                                   Marney L. Cheek (D.C. Bar No. 470596)
                                   David M. Zionts (D.C. Bar No. 995170)
                                   Thomas Brugato (D.C. Bar No. 1013523)
                                   COVINGTON & BURLING LLP
                                   850 Tenth Street, NW
                                   Washington, DC 20001-4956
                                   (202) 662-6000
                                   mcheek@cov.com
                                   dzionts@cov.com
                                   tbrugato@cov.com


                                   *Attorneys for Plaintiff RFE/RL, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, I filed the foregoing document with the Clerk of

Court for the United States District Court for the District of Columbia using the court's CM/ECF

filing system, which will send notification of such filing via e-mail to all counsel of record.


Respectfully submitted,

/s/ *Marney L. Cheek*
Marney L. Cheek (D.C. Bar No. 470596)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
mcheek@cov.com

*Attorney for Plaintiff RFE/RL, Inc.*