```
                     UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


 RFE/RL, INC.,                      .
                                    .
         Plaintiff,                 .   CA No. 25-0799 (RCL)
                                    .
     v.                             .
                                    .
 KARI LAKE, et al.,                 .   Washington, D.C.
                                    .   Tuesday, April 15, 2025
         Defendants.                .   11:00 a.m.
 . . . . . . . . . . . . . . . .


                     TRANSCRIPT OF STATUS HEARING
                 BEFORE THE HONORABLE ROYCE C. LAMBERTH
                     UNITED STATES DISTRICT JUDGE



   APPEARANCES:

 For Plaintiff:                     THOMAS H. BRUGATO, ESQ.
                                    MARNEY L. CHEEK, ESQ.
                                    Covington & Burling LLP
                                    850 Tenth Street NW
                                    Washington, DC 20001

 For Defendants:                    JULIA A. HEIMAN, ESQ.
                                    U.S. Department of Justice
                                    1100 L Street NW
                                    Washington, DC 20530

 Court Reporter:                    BRYAN A. WAYNE, RPR, CRR
                                    U.S. Courthouse, Room 4704-A
                                    333 Constitution Avenue NW
                                    Washington, DC 20001




 Proceedings reported by stenotype shorthand.
 Transcript produced by computer-aided transcription.
```

```
 1                          P R O C E E D I N G S
 2              THE DEPUTY CLERK:  We are on the record in civil action
 3     25-799, RFE/RL, Inc. versus Kari Lake, et al.  Counsel, please
 4     state your appearances for the record.
 5              MR. BRUGATO:  Good morning, Your Honor.  This is Thomas
 6     Brugato for plaintiff, and with me at counsel table is Marney
 7     Cheek.
 8              THE COURT:  Good morning.
 9              MS. STOUT:  Good morning, Your Honor.  Abigail Stout
10     for the government and defendant.
11              THE COURT:  Good morning.  I wanted to do this just as
12     a status because I want to talk to y'all about where I think
13     we are in the case and then get some comments from y'all about
14     where I think we're going.
15         First let me give you my understanding of the case and the
16     connection to the other cases.  Of course, Radio Free Europe
17     was the first of these series of cases and the first grantee
18     case.  In the meantime, Radio Free Asia has filed a case
19     that's assigned to me that I'm hearing this week.  Middle East
20     Broadcasting has a preliminary injunction hearing that I'm
21     hearing this week.
22         I had a case by plaintiffs in the Voice of America case
23     before me, but a case was filed in New York and the -- there
24     had not yet been a temporary restraining order filed in my
25     case yet.  So the New York case went first, and the judge in
```

1   New York issued a temporary restraining order, which I'm sure
2   you read about, and then subsequently transferred the case to
3   this district, and it was assigned to me as related to the
4   Voice of America case I already had.
5       The parties in that case agree to a schedule that has me
6   hearing that preliminary injunction in that case on Thursday,
7   which I've set for 11:30 at the parties' request.
8       I am scheduling the preliminary injunction hearings in
9   the other two grantee cases, Radio Free Asia and Middle East
10  Broadcasting, either Thursday or Friday.  I don't quite know
11  the timing yet on how long the counsel are seeking to argue
12  the two.  You may know, but I don't know, Ms. Stout, the Voice
13  of America cases and whether I can get those all in in one
14  day.
15      It occurred to me that, depending on what I decide to do in
16  the Voice of America case, there is a theory that the plaintiffs
17  have in that case where the court's ruling would, in effect,
18  make moot all of these issues in the grantee cases as well.
19  I don't know that I would do that, but it's possible it would
20  affect the grantees' cases if I went as far as the plaintiffs
21  are asking me to go in the Voice of America cases.
22      I do know that, right now, though I don't know what I'm
23  going to do in the Voice of America cases, I'm going to have
24  argument on all three of the cases and listen to everybody
25  before I rule in any of them.  So what I wanted to do was give

1    you my thinking on where we are in Radio Free Europe.
2        I think where we are is my temporary restraining order on
3    the original issues that were presented to me about the March
4    payments and the March presentation I had.  I guess at the
5    time I granted the TRO for the March funds and the -- my
6    understanding, that TRO expired today, expires today.  The
7    government had moved to dissolve that.  That actually is moot
8    today, so I'll probably enter an order just denying that
9    motion as moot.
10       In the meantime, the plaintiffs had moved to extend that
11   temporary restraining order and move now for a new temporary
12   restraining order.  I expect I could hear argument on that
13   temporary restraining order in light of the developments since
14   then about the -- what's going on in April in that short-term
15   -- the way these short-term extensions are going.
16       It would seem to me to be more productive if I could talk
17   to y'all about when you could have the preliminary injunction
18   motion filed and argued.  It seems to me the arguments are
19   very much the same and I could decide at the same time when
20   I'm going to be deciding all these other preliminary
21   injunction motions, but the second preliminary injunction
22   motion has not yet been filed.
23       The first preliminary injunction motion is kind of
24   overtaken by events, it seems to me, because it was really
25   going on about the March payments.  I issued that temporary

1    restraining order on March 25th, I guess.
2        So let me ask first if -- I understood that there's still
3    no grant agreement in place for fiscal year 2025.  I
4    understood that there had been an agreement reached and that
5    the plaintiffs had signed the agreement and understood that
6    the government agreed to it in February, that it was for the
7    fiscal year to go through September 30, and that when they
8    returned it after signing it and they understood that February
9    had been agreed upon, that the government would not sign it,
10   it was to cover appropriations for the fiscal year ending
11   September 30, and when the government would not sign that,
12   then my understanding of the facts were that there would be
13   month-to-month.  And so then this March, a single-month
14   agreement was made.
15       And so when I issued the TRO in March, we were working off
16   that one-month agreement, and then there has been this dispute
17   that's going on now about the April agreement because the
18   government, after my TRO, did in fact -- and pending motion
19   for preliminary injunction, did in fact decide to go ahead and
20   disburse the money for March, and that money has been received
21   and is being spent by the grantee.
22       There is some money that the grantee's been receiving now,
23   and I think money has been disbursed for the period from March
24   1st to 15th on March 24th, and for the period from March 16th
25   to the 31st, they disbursed the money on April 8th.

1  So I assume by April 24th, if they're doing it month to
2  month, if they haven't come to an agreement for April, the
3  April financial plan will not have been in place, and then it
4  may be that there would be no funds to disburse for April at
5  all, whereas on the month-to-month way they've been doing it,
6  they would disburse funds for April.
7  But I guess what I want to start with, then, is if the
8  plaintiffs would tell me if my understanding of the facts is
9  right.  I think it would affect whether I have to schedule a
10 TRO hearing now regarding -- and I don't really understand
11 whether there's irreparable injury that I need to do by TRO or
12 whether I can do the preliminary injunction hearing now, but I
13 don't have a preliminary injunction motion in place to decide
14 right now.
15 So with all that opening, let me hear the plaintiffs tell
16 me where they think we are, and then the government can tell
17 me where they think we are, and we'll try to figure out how to
18 get this on track.
19 I will say to you that since I think this case -- and I'm
20 going to say the other in an order, but I didn't think I had
21 to have the parties here, but to Radio Free Asia and Middle
22 East Broadcasting today that I invite you to attend the Voice
23 of America hearings on Friday because your case may be
24 affected by it.  I would encourage you to be here.  I do not
25 require it, but obviously there may be some impact and I'm

1     going to ask them questions about how grantees would be
2     affected.  Go ahead.
3          MR. BRUGATO:  Good morning again, Your Honor.  So your
4     summary of the facts is correct.  We have received the March
5     funds with the latest disbursement on April 8.  We have not
6     received any funds till April.  The reason that we filed the
7     TRO motion for April funding specifically is because we're
8     really right back where we started.
9        We filed the case almost exactly a month ago because we
10    were running out of funds.  The March funding is in the
11    process of being spent, and as the supplemental declaration
12    of President Capus explains, we're really right back where we
13    were, with the funds running out, having to wind down
14    operations again, having to furlough staff.  And so that's
15    why we think we still do need the TRO, Your Honor, is because
16    those harms are occurring presently.
17       We do intend to file a renewed PI motion, as you say, to
18    bring it up to date with the latest facts.  Our current plan
19    was to file that this Friday just because it takes some time
20    to put that together, although we're trying to do it as
21    quickly as we can.  But in the interim, we do think relief is
22    warranted on the TRO papers.
23         THE COURT:  Okay.  Tell me what the impact is if you
24    don't have a TRO.  You can argue it when we set the hearing,
25    but just tell me briefly the impact.

1          MR. BRUGATO:  Yeah.  So the impact would be -- and
2    it's stated in the declaration that we filed with the TRO
3    papers, is that absent immediate disbursement of our April
4    funds, RFE/RL will likely need to close the vast majority of
5    its operations in the next few weeks, including terminating
6    contracts and laying off and furloughing staff.  So impact
7    will be all of those harms that we've been talking about for
8    a month now.
9          THE COURT:  You would have to shut down now.
10         MR. BRUGATO:  We would have to start the shut-down
11   process and continue it.  Yes, Your Honor.
12         THE COURT:  Because your funds are going to run out
13   when?
14         MR. BRUGATO:  Well, there's not a specific date when
15   they're going to run out.  RFE/RL is trying to conserve them
16   as much as it can by sort of progressively winding down as the
17   funds are not obtained.  So I don't have a specific date to
18   give you, but the corporation is winding down its operations
19   because of the lack of April funding.
20         THE COURT:  All right.  What other comments do you want
21   to make?
22         MR. BRUGATO:  The only other comment I would make,
23   Your Honor, is that I think part of the preliminary injunction
24   motion we previously filed is still live.  We did ask for
25   monthly funding to be restored.  That has not been restored

1    yet.  And I think the theories we advanced in our initial PI
2    papers are still valid.
3             THE COURT:  You have an offer, then, for this month's
4    funding, right?
5             MR. BRUGATO:  Well, I wouldn't call it an offer, Your
6    Honor.  It's not a bona fide grant agreement they've provided
7    us.  It has so many conditions that are impossible to fill
8    that we could never accept and enter into that offer.
9             THE COURT:  All right.  Okay.  I understand.  Thank
10   you, Mr. Brugato.
11            MR. BRUGATO:  Thank you.
12            THE COURT:  Ms. Stout.
13            MS. STOUT:  Your Honor, beginning with this case then
14   I'm happy to comment on the timing and how things might affect
15   other cases, but beginning with this case, we agree with the
16   general facts that the court laid out and would kind of, in
17   terms of state of play, would note the pending PI motion.
18       We still maintain that that is moot and agree with the
19   court that that's been overcome by events since it was based
20   on the March 15th letter, and especially in light of the
21   representation by plaintiffs that they're planning on filing
22   another PI maybe this week, maybe by Friday.
23       So we would submit that the papers based on the further TRO
24   that plaintiffs have filed and then whatever further PI motion
25   they file would be kind of getting the case up to speed.  And

those would be the operative papers, not the preliminary injunction that's currently pending.

And then in terms of timing, the government, of course, is happy to proceed as the court sees fit. Considering that plaintiffs are planning on filing a PI, in terms of judicial efficiency and resources, especially considering the other case that the court is going to hear, the kind of broader case, the Voice of America case, on Thursday, we think that it would make sense to kind of roll it all up into one and have the PI motion heard and argument on that after it is filed, but of course we defer to the court in how it would like to proceed.

In terms of kind of some of the other cases, we do agree that the broader Voice of America case, the one that was transferred down from the Southern District of New York, those issues there could implicate and moot out the grant-specific cases including RFE case, RFA case, and then the Lilly Broadcasting network case.

So, again, in terms of judicial efficiency, we would suggest that perhaps that case go first and then kind of, as those issues are sorted out, then it would impact, then would make sense to have that as the leading case and then the other cases follow and be resolved as appropriate.

THE COURT: Okay.

MS. STOUT: Thank you.

1           THE COURT:  And you're not arguing for Voice of
2     America.  Someone else is going to do that?
3           MS. STOUT:  The D.C. U.S. Attorney's Office is handling
4     in conjunction with the Civil Office.  So they'll be handling
5     part of the argument, and I'll be handling part of the
6     argument.
7           THE COURT:  Let me ask the government this:  If the
8     general practice has been to disburse the funds every couple
9     of weeks, how's Radio Free Europe going to get its appropriated
10    fund?  Congress has appropriated 77 million for this in the
11    continuing resolution for March 15th to September 30th.
12       The government expects the grantee to renegotiate each
13    month how and when it's going to get the money, or what's the
14    government contemplating?
15          MS. STOUT:  Your Honor, what's at play right now is
16    a master grant agreement that would cover through the end of
17    this fiscal year.  So it contemplates, once the parties
18    negotiate and are able to sign into this master grant
19    agreement, then that will kind of take care of month by month.
20    There would be monthly financial plans as has been the practice.
21          THE COURT:  Because there's no master agreement now.
22          MS. STOUT:  Correct.  I think that it was a function of
23    perhaps the continuing resolutions in Congress and the way
24    that the funding played out.  So I think that was also a
25    factor.  But right now there's no master grant agreement.

```
 1              THE COURT:  Is what's proposed now a master agreement?
 2              MS. STOUT:  Yes, Your Honor.
 3              THE COURT:  It is.
 4              MS. STOUT:  Yes.
 5              THE COURT:  Okay.  Anything else you want to add today?
 6              MS. STOUT:  I don't think so, Your Honor.  Thank you.
 7              THE COURT:  Okay.  Thank you, Ms. Stout.
 8        Mr. Brugato, anything else you want to say?
 9              MR. BRUGATO:  I just have a couple of points to make,
10   Your Honor.  The first is this practice of disbursing funds
11   well into the month is a very new, recent development as a
12   result of defendants' actions.  Typically, as I understand it,
13   RFE/RL gets its funds either before or at the start of the
14   month.  So this process of wading well into April to even
15   potentially get any funding is not ordinary.
16        The other point I would just make in response to counsel's
17   suggestion about the master grant agreement is, as you pointed
18   out earlier, that was already negotiated in the early months
19   of this year.  And RFE/RL signed a version in February that
20   defendants have refused to sign, and instead they've come back
21   with this agreement with extremely onerous terms that we could
22   not possibly satisfy.
23        So that's why we've requested the TRO, because there just
24   isn't time for RFE/RL to avoid these irreparable harms in
25   light of what they've proposed and imposed.
```

1             THE COURT:  Okay.  Thank you very much, counsel.
2  Court will be in recess.
3      (Court conferring with staff.)
4      Okay.  I'm not sure how far to go down this road, but let
5  me ask you, what is the status of negotiations?
6             MR. BRUGATO:  So we filed a declaration, Your Honor,
7  with our reply brief that basically shows that shortly
8  after -- minutes after we received this grant agreement with
9  the request to sign and return it, there was an email sent
10 from RFE/RL asking can we quickly speak to clarify and there
11 was no response to that email, as the declaration attests.
12     So the status is RFE/RL promptly responded, and the
13 defendants have been silent on any discussion about this
14 agreement.
15            THE COURT:  And you took that as a "take it or leave it"?
16            MR. BRUGATO:  Correct.
17            THE COURT:  Ms. Stout?
18            MS. STOUT:  Your Honor, I can't speak to the specifics
19 of what exactly happened, but as represented in our brief, the
20 agency stands open to negotiation.
21            THE COURT:  Okay.  Having told me that, see if you can
22 call someone in the agency and see if they hang up or if they
23 talk to you before the next hearing.
24            MR. BRUGATO:  If I could just make one point, Your
25 Honor?  Just given the nature of the terms that are in this

1  agreement, even if it is possible to negotiate, that is likely
2  to be a many-weeks-long process, during which these irreparable
3  harms are going to occur.
4          THE COURT:  I understand, but I don't want to get into
5  the situation where I'm overseeing contract negotiations.
6          MR. BRUGATO:  Understood.
7          THE COURT:  That is what this is.
8          MR. BRUGATO:  What we're asking the court for is
9  not to oversee the negotiations; it's really just to order
10  disbursement of the April funds so that RFE/RL can survive
11  while negotiations take place.
12          THE COURT:  If they are refusing to negotiate and it's
13  "take it or leave it," it's a different posture.
14          MR. BRUGATO:  That's correct.  And that's what they've
15  been doing thus far.
16          THE COURT:  Give me some evidence of that --
17          MR. BRUGATO:  Understood, Your Honor.
18          THE COURT:  -- in your PI motion.
19     Court will be in recess.
20       (Proceedings adjourned at 11:22 a.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne