# Exhibit 2

## GRANT AGREEMENT
## BETWEEN THE
## U.S. AGENCY FOR GLOBAL MEDIA AND
## RFE/RL, INC.

### FAIN: 1060-25-GO-00001

**GRANT FUNDS TABLE**

|  | FY 2025 PROGRAM PLAN | Previous Award Total | Current Award | New Award Total | Currency gain/(loss) (Informational)[1] |
|---|---|---|---|---|---|
| **FUNDING** | PENDING | $67,406,323 | $74,805,667 | $142,212,000 | $87,888.34 |

Preamble

This Grant Agreement ("Agreement") is between the **U.S. AGENCY FOR GLOBAL MEDIA** (hereinafter "USAGM" or the "Agency") and **RFE/RL, INC.** (hereinafter "RFE/RL" or the "Recipient"), a nonprofit organization incorporated in the State of Delaware. USAGM enters into this Agreement under the authority provided by the U.S. International Broadcasting Act of 1994, as amended, 22 U.S.C. §§ 6201 et seq. (the "International Broadcasting Act") and other authorization or appropriation acts that provide authority for such activities. The Catalog of Federal Domestic Assistance (**CFDA**) **Number** for USAGM is **90.500**. The **Unique Entity ID (UEI#)** for the Recipient is **JNXVYWEXC959**. **The Federal Award Identification Number (FAIN) for this Award for Financial Assistance is 1060-25-GO-00001**.

WHEREAS, USAGM is the United States Government agency responsible for non-military U.S. Government-funded international broadcasting pursuant to the authorities set forth in the International Broadcasting Act;

WHEREAS, among the purposes of the activities supported by the International Broadcasting Act is to "promote the right of opinion and expression, including the freedom 'to seek, receive, and impart information and ideas through any media and regardless of frontiers,' in accordance with Article 19 of the Universal Declaration of Human Rights," 22 U.S.C. § 6201(1);

WHEREAS, USAGM's mission is to "inform, engage, and connect people around the world in support of freedom and democracy";

WHEREAS, in furtherance of this mission and as authorized by the International Broadcasting Act, USAGM makes and supervises a grant to the Recipient for broadcasting and related activities in order to provide news and information of the highest journalistic standard to countries that have limited or no access to free press and media, and, in furtherance thereof, USAGM has decided to make a grant for these purposes pursuant to the terms and conditions stated herein; and

---

[1] Reported on RFE/RL Exchange Rate Report – February 28, 2025.

WHEREAS, USAGM believes that it would be in the interests of United States international broadcasting and the USAGM mission to take advantage of the operational independence and flexibilities of its private nonprofit Non-Federal Entities, as consistent with the requirements of the International Broadcasting Act and other federal laws and regulations that are applicable to Non-Federal Entities, including the statutory requirement that duplication of language services and technical operations between the Recipient and USAGM or USAGM-funded broadcasting entities be reduced to the extent appropriate, as determined by USAGM.

NOW, THEREFORE, USAGM agrees to make, and the Recipient agrees to accept, the grant of funds in accordance with the following provisions:

Article I – THE GRANT

a.    Amount of Grant. The USAGM hereby grants an amount of **$142,212,000** to the Recipient for operations during FY 2025, as made available pursuant to the Full-Year Continuing Appropriations and Extensions Act, 2025, Division A of P.L. 119-4 (March 13, 2025), with an automatic extension, pursuant to 2 C.F.R. § 200.308(g)(2), of the period of performance for the following fiscal year.. The USAGM hereby grants to RFE/RL funds for the planning and operating expenses relating to international broadcasting in order to carry out the purposes set forth in the laws referenced in the preamble to this Agreement, expressly P.L. 103-236[2] TITLE III—UNITED STATES INTERNATIONAL BROADCASTING ACT[3], as amended, for the grant period October 1, 2024, through September 30, 2025, unless the source of funding otherwise dictates. This funding will support planning and operational costs detailed in RFE/RL's FY 2025 approved financial plan until an FY2025 Program Plan is approved by Congress.

b.    Use of the Grant Funds. The Recipient may use the Grant Funds solely for planning and operating expenses related to international broadcasting and administration thereof. The Grant Funds are provided solely for the purposes and in the amounts approved by USAGM and as set forth in the Approved Financial Plan (as such term is defined in Article VII hereof and subject to the review procedures and adjustments described therein). Any grant funds used for any other purpose outside of those approved in the financial plan shall be deemed a material breach of this grant agreement and shall result in the grant being immediately canceled at the discretion of USAGM.

c.    Any and all contracts and leases entered into by the Recipient must be secured by the Recipient solely without any guaranty, co-signing, or obligation incurred by USAGM. All leases and spaces purchased by the Recipient with grant funds must be immediately assignable to USAGM upon ~~24 hours~~14 days notice. Any pre-existing leases, mortgages, subleases, or real estate contracts by Recipient which are secured, co-signed or in any way affiliated with USAGM, must be kept current, and in accordance with the approved financial plans. Any default or late payment made on any real property or real estate

---

[2] TITLE III—UNITED STATES INTERNATIONAL BROADCASTING ACT, SEC. 301, may also be cited as the "United States International Broadcasting Act of 1994."

[3] TITLE III—UNITED STATES INTERNATIONAL BROADCASTING ACT, SEC. 301, may also be cited as the "United States International Broadcasting Act of 1994."

occupied by the Recipient shall be deemed a material breach of this grant agreement.

d.     Funds provided under a partial-year Continuing Resolution (CR) are subject to the terms and conditions set forth in Article VII (b)(5) and those otherwise required under a partial-year CR.

## Article II – USAGM OVERSIGHT AND ITS LIMITATIONS

a.     As provided in the International Broadcasting Act of 1994, as amended, including 22 U.S.C. § 6209(c), the Recipient is a private, nonprofit corporation, and nothing in this Agreement may be construed to make the Recipient a Federal agency or instrumentality.

b.     USAGM's oversight and supervision of the Grant Funds are subject to limitations in applicable law.

c.     USAGM acknowledges and affirms the safeguards contained in the United States International Broadcasting Act meant to preserve the journalistic independence and integrity of USAGM programming. Accordingly, USAGM and RFE/RL agree that (i) RFE/RL shall produce "news which is consistently reliable and authoritative, accurate, objective, and comprehensive" (Section 6202(b)(1) of the International Broadcasting Act); (ii) RFE/RL shall enjoy full editorial independence in order to maintain its "professional independence and integrity" (Section 6204(b) of the International Broadcasting Act); and (iii) RFE/RL's editorial decisions shall be insulated from interference from those outside of the network. To that end, no U.S. Government official—including the USAGM CEO, the Secretary of State, and the Inspector General—may attempt to influence the content or editorial choices of the Recipient in a manner that is not consistent with the highest standards of professional broadcast journalism or take any other action that may tend to undermine the journalistic credibility or independence of USAGM or RFE/RL,.

## Article III – PROGRAMMING PRODUCED WITH GRANT FUNDS

a.     The Recipient shall use the Grant Funds to provide objective, editorially independent news and information programming that is consistent with the relevant principles and standards set forth in the International Broadcasting Act and the strategy for U.S. international broadcasting as determined and implemented by the USAGM. Nothing herein shall be interpreted to cause the Recipient to violate the highest standards of professional journalism.

b.     The Recipient shall produce news and information programming in the language(s) described in the Approved Program Plan and associated Approved Financial Plan, as defined in Article VII hereof. Upon USAGM's request, the Recipient shall provide USAGM a detailed written schedule of the programs produced with the Grant Funds, including the languages and media in which such programs were produced. Insofar as the Recipient has duplicative programming with USAGM's other entities, the Recipient shall immediately reduce and delete language cease broadcast operations of those services upon notice by USAGM within 24 hours14 days of such notice. Any refusal to delete cease

broadcast operations of identified duplicative language services within ~~24 hours~~14 days of such notice shall be deemed a material breach of this agreement and shall result in the grant being terminated. Following cessation of broadcast operations of those language services, Recipient will have a reasonable amount of time to wind down all other operations associated with those services.

## Article IV – DISTRIBUTION OF PROGRAMMING PRODUCED WITH GRANT FUNDS

a.    Subject to the limitations of Article IV(c), the Recipient acknowledges and agrees that USAGM is authorized to provide for distribution of the programming that is paid for with the Grant Funds over the global network of broadcasting and transmission facilities owned and/or operated by USAGM or, as the case may be, through affiliated networks arranged by USAGM ("USAGM Global Distribution Network").  Subject to the limitations of Article IV(c), the Recipient shall provide the programming that it produces with the Grant Funds to USAGM for distribution over the USAGM Global Distribution Network.

b.    The Recipient may not use Grant Funds for the purpose of concluding affiliate or other distribution agreements, except as approved in writing by USAGM or otherwise authorized under this agreement. Unpaid affiliate agreements must be consistent with the USAGM's strategy for U.S. international broadcasting, as described in Article III(a).

c.    The Recipient grants to USAGM a worldwide, non-exclusive, royalty-free and perpetual license to broadcast, use, distribute, and create derivative works from those of the Non-Federal Entity's original programs that contain no materials provided by or licensed from any third parties. The Recipient grants USAGM a worldwide, non-exclusive, royalty-free license to broadcast and otherwise use those of the Non-Federal Entity's programs that are legally available for such licensing and use.

When obtaining materials from third parties for inclusion in its original programming, the Recipient agrees to use reasonable best efforts to secure sufficient rights to permit the Recipient to license to USAGM (on a non-exclusive, worldwide and royalty-free basis) the right to broadcast the resulting original programming; provided, however, that the Recipient shall not be required to do so where the acquisition of such rights would materially and detrimentally affect the Non-Federal Entity's ability to secure its own license from said third parties. The Non-Federal Entity is to remove or delete any content containing third party materials for any contracts shared with USAGM that are now terminated. The Recipient shall provide, without charge, information concerning, and electronic copies of, any of its programs to USAGM upon USAGM's request.

d.    The Recipient hereby grants to USAGM, and USAGM hereby accepts, an irrevocable, royalty-free, fully paid-up, non-exclusive, sublicense-able, perpetual license during the Grant Term to use the Non-Federal Entity's registered and unregistered trademarks. USAGM's use of the Non-Federal Entity's trademarks shall be limited to use in conjunction with broadcasting or otherwise disseminating the Non-Federal Entity's materials to USAGM's audiences for the purpose of furthering the USAGM mission.

e.     ‑Nothing herein shall authorize the Recipient to charge the United States Government, or any of its instrumentalities, for access to its content, nor shall anything herein authorize any violations of any applicable statutory limitations on domestic dissemination. At the request of the Chief Executive Officer of USAGM (the "CEO"), the Recipient shall, within ~~24  hours~~14 days, provide the CEO sufficient information to make any determinations required by USAGM or otherwise required by the CEO's oversight responsibilities, including to assess revenue earned, as well as the purposes for which such revenue is used. A refusal to provide this information shall be deemed a material breach of the grant agreement.

## Article V – COOPERATION WITH USAGM GOVERNANCE OF UNITED STATES INTERNATIONAL BROADCASTING

As a condition of its receipt and use of the Grant Funds provided hereunder, the Recipient shall cooperate with USAGM's governance of U.S. international broadcasting under the International Broadcasting Act as follows:

a.     The Non-Federal Entity's articles of incorporation, by-laws, or other constitutional documents shall provide that the corporate leadership and Board of Directors of the Recipient be selected in accordance with the International Broadcasting Act and other relevant provisions of law. All compensation, travel expenses, and other fringe benefits to the Board of Directors for the past three years must be disclosed in writing within ~~24 hours~~14 days of signing of this agreement and on a monthly basis thereafter. All members of the Board of Directors must be U.S. citizens. Additionally, all members of the Board of Directors must be approved by the USAGM CEO. All current board members not approved in writing by the USAGM CEO must obtain approval by the USAGM CEO, or their designee, in writing. If this approval is not gained, the appointment to the Board of Directors shall be null and void. For all current and newly proposed Board members who have not received such approval, a resume along with relevant information concerning experience and expertise in the relevant fields of broadcasting must be sent to the USAGM CEO within 14 days ~~24  hours~~ of signing of this grant agreement. Additionally, each proposed board member must attest, in a notarized affidavit, to a lack of conflict of interest and provide financial disclosures similar to those required of US government personnel to the USAGM CEO. Failure to obtain approval of any or all of the Board of Directors by the USAGM CEO, or their designee, shall be deemed to be a material breach of this grant agreement.

b.     The Recipient shall cooperate in the processes and protocols of USAGM as follows:

1.     The Recipient shall report such information to USAGM as may be reasonably requested by USAGM in the format and within the timeframe so requested to the extent permitted by applicable law. Consistent with USAGM's desire to foster transparency, USAGM's request will include information regarding the purpose of the request.

2.     In order to facilitate coordinated communications among the elements of U.S. international broadcasting, the Recipient must inform the USAGM CEO of

communications or meetings with House and Senate staff and Members and any other entity within the Executive Branch, including but not limited to other federal agencies and entities within the Executive Office of the President.

Within ~~24 hours~~ 14 days after the execution of this Agreement, the Recipient will provide the USAGM CEO a complete accounting of all such communications and meetings – whether formal or informal – with the above-described entities, including but not limited to their directors, employees, officers, contractors, staffers, affiliates and/or board members made or held within the last 365 days. Beginning on the date on which this agreement is signed, Recipient will provide USAGM a complete accounting of all communications or meetings with any of the above-referenced parties. Recipient must provide USAGM with the above-described accounting within 24 hours of the communication or meeting.

Nothing in the paragraphs above shall prevent the Recipient (i) from responding to specific requests for information, documents or materials from Congress, (ii) from engaging in routine correspondence or communications with Congress, or (iii) from engaging in communications in the regular pursuit of newsgathering activities. The Recipient shall inform USAGM in a timely manner about such requests for information and the responses to those requests. The Recipient acknowledges that federal rules and regulations including 31 U.S.C. §1352 and 2 CFR 200.450 prohibits Non-Federal Entities from using appropriated funds to pay any person for influencing or attempting to influence an officer or employee of any U.S. government agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making, extension, continuation, renewal, amendment, or modification of any Federal grant.

3.  The Recipient shall not disclose any information expressly designated in writing as confidential by USAGM to any third party not authorized by USAGM to receive it. The Recipient further agrees to take all steps reasonably necessary to protect the confidentiality of the confidential information and to prevent the confidential information from falling into the public domain or into the possession of unauthorized persons. The Recipient shall have no obligation of confidentiality with respect to information that (A) was known to the Recipient prior to receiving any of the confidential information from USAGM, (B) has become publicly known through no wrongful act of the Non-Federal Entity, or (C) was received by the Recipient from a third party without restriction as to the use and disclosure of the information.

4.  The Recipient shall participate in activities of the U.S. International Media Coordinating Committee (ICC) in accordance with the International Broadcasting Act.

5.  Nothing in this agreement shall require the Recipient to take actions which impair

appropriate Congressional oversight or the operations of the USAGM Inspector General.

## Article VI – MUTUAL ASSISTANCE TO PROMOTE UNITED STATES INTERNATIONAL BROADCASTING

a.    In the spirit of cooperation among USAGM-sponsored entities and in order to promote the efficient use of Grant Funds and USAGM resources, USAGM and the Recipient will use their reasonable best efforts to render assistance to each other to promote the interests of U.S. international broadcasting and the implementation of USAGM's strategy.

b.    The Recipient shall make reasonable efforts to provide or facilitate provision of administrative or other services or resources to USAGM or other USAGM-sponsored broadcasting entities in order to promote implementation of USAGM's strategy. Grant Funds shall be available for services to the USAGM or other USAGM-sponsored entities where cost effective and consistent with the USAGM strategic plan as determined by USAGM. Consistent with its desire to foster transparency, USAGM's request for assistance will include information regarding the purpose of the request for such assistance. USAGM shall not be required to reimburse the Recipient for Grant Funds used to provide such assistance but may reimburse the Recipient for costs that are more than de minimis. USAGM will endeavor to make such requests in a manner that does not interfere with the Non-Federal Entity's ability to discharge its responsibilities under this Agreement and, where necessary to achieve the request, to provide resources to assist the Recipient in fulfilling such requests. The Recipient shall notify USAGM of any expenditures it makes on provision of services to USAGM and other USAGM-sponsored entities.

c.    All assistance contemplated under this Article VI shall be rendered in a manner consistent with applicable law and regulations.

## Article VII – ADMINISTRATION OF THE GRANT

a.    Development and Review of the Approved Program Plan

Definition. As used in this Agreement, the term "**Approved Program Plan**" (also known as the "Program Plan" or "Operating Plan" or "Spend Plan") shall consist of (i) a comparison between the congressional budget justification (CBJ) funding levels, (ii) the most recent congressional directives or approved funding levels, and (iii) the funding levels proposed by USAGM, along with a clear, concise, and informative description/justification submitted to the Appropriations Committee.

1.    Required Program Plan. The Agency's Program Plan is required to be submitted to Congress no later than 45 days after the date of enactment of the annual appropriation act, which provides details of the uses of funds at the program, project, and activity (PPA) levels (and typically found in the associated joint explanatory statement accompanying the bill). To achieve this deadline, subject to guidance from the agency, the Recipient shall submit the information described in paragraphs one (1) through

three (3) of this subsection.

2. Program Plan Detail. The RECIPIENT 's submission will be dictated by the Data Call Guidance provided by USAGM. The submission will include updated Entity Budget Tables by division and applicable language service, updated broadcast hours, transfers between entities/PPA's, Full Time Equivalent (FTE) Employees, and narratives for proposed investments and/or reductions.

3. Approval. If the Program Plan includes changes in the level of funding for any PPA or other notification and reprogramming requirements, all of these changes shall be included in the Program Plan. Once incorporated, the Program Plan is submitted to the appropriate committees of Congress. Following submission of the Program Plan to Congress, full-year funding is distributed to the Recipient contingent upon receipt and approval by USAGM of a more detailed financial plan (defined more fully in Article VII (b)(1) through (5)). The RECIPIENT 's financial plans shall reconcile to the funding levels included in the Approved Program Plan.

b.    Development and Review of the Approved Financial Plan

Definition. As used in this Agreement, the term "**Approved Financial Plan**" shall mean (i) the financial plan for use of Grant Funds that is approved by USAGM in accordance with the procedures set forth in this Article VII; (ii) any modification to such plan that is approved by USAGM during the term of this Agreement; and (iii) any proposal or modification of such proposal during a Continuing Resolution as referenced in Article VII (b)(5) below.

1. Financial Plan Required. Unless otherwise determined by USAGM, prior to entering into this Agreement (or, as the case may be, any amendment to this Agreement which alters the amount or purpose of Grant Funds available), the Recipient shall submit to USAGM a proposed detailed financial plan consistent with the strategy, purposes, and language services approved by USAGM, and covering the full amount of the Grant.

2. Financial Plan Detail. The Non-Federal Entity's proposed financial plan shall delineate the Non-Federal Entity's anticipated monthly expenditures for each budget line item, broken down by Domestic and Overseas Budget line items will be defined by USAGM. The Financial Plan must include a detailed breakdown of where grant funds are being spent with specificity including but not limited to the salary for every employee , contractor, fellow/fellowship and a detailed breakdown of every contract, contractor, grant, sub-grant, vendor, and supplier including the beneficial ownership information of each of those entities for every owner with any ownership share in any entity receiving funds from the Recipient. If the Recipient funds any other non-profit, NGO, or other entity that provides funding to other entities, that entity must also provide a breakdown of all individuals and organizations to funds are paid for that fiscal year. Each entity or individual receiving funds from the Recipient must also attest in a notarized writing attesting to any potential conflict of interest (and a request for a waiver if applicable), to having no current conflict of interest and certifying that they

have broken no US laws before receiving any funds by or through the Recipient. Failure to abide by these requirements and/or provide accurate information shall be deemed a material breach of the grant agreement.

3.  Approval of the Proposed Financial Plan. USAGM shall transmit any disapproval of the proposed financial plan prior to the execution of the Agreement (or, as the case may be, any amendment to this Agreement which alters the amount or purpose of Grant Funds available). The Approved Financial Plan shall be provided to the Recipient with the executed version of the Agreement (or, as the case may be, any amendment to this Agreement which alters the amount or purpose of Grant Funds available).

4.  Relationship of the Approved Financial Plan to the Approved Program Plan. The Approved Financial Plan serves as the funding drawdown schedule; it should be the Recipient's estimate of monthly and/or period operating costs. The Approved Financial Plan must directly correlate to the Approved Program Plan, subject to USAGM approved changes in plans or directions that occur over the course of the year following the Approved Program Plan.

5.  Financial Plan during a Partial-Year Continuing Resolution (CR). If appropriations for the full-year amount of the Grant Funds are not available to USAGM at the time USAGM and the Recipient enters into this Agreement, the Recipient shall provide, with each request for funding, an explanation of funding requirements for the period covered by the funding request and two subsequent months. Unless otherwise determined by law or approved by USAGM, such requirements shall include only the minimum amounts of Grant Funds reasonably necessary to sustain current operations under the partial-year Continuing Resolution.

Financial Plans during a CR shall correlate to the last Approved Program Plan or Enacted Level from the Prior Year, subject to guidance from the Agency. No later than 30 days after enactment of an appropriation covering the fiscal year, the Recipient shall submit a proposed detailed Financial Plan for approval in accordance with paragraphs one (1) through five (4) of this subsection. The Recipient shall operate at a rate of obligation under its CR financial plan until USAGM approval of the financial plan in accordance with this paragraph.

c.  USAGM will provide Grant Funds to the Recipient by the U.S. Treasury electronic funds transfers through the Automated Clearing House System. Recipient USAGM will make disbursements in bi-weekly increments or on such other basis as may be consistent with the Approved Financial Plan.

d.  Reporting and Review of Use of Grant Funds

Program monitoring of Grant Funds is required to determine that adequate progress is being made towards USAGM's objectives; that expenditures are in line with relevant statutes, regulations, and agency administrative requirements; and that federal funds are used responsibly. One component of grant monitoring includes the submission and review of

reports.

The following chart details the summary of the Recipient report submissions, due dates and submission methods:

## SUMMARY OF RECIPIENT REPORT SUBMISSIONS

| | Report Title and Form | Frequency/Due Date | Submission Method |
|---|---|---|---|
| **1.** | **FFR using Form SF-425** | Quarterly: 30 days after the end of the prior quarter. Annual: 30 days after Period of Performance (POP) end date [Reporting Frequency Change from Monthly Effective at the start of the quarter following the Recipient demonstrating no single audit deficiencies or materials weaknesses] | grantreports@usagm.gov |
| **2.** | **SOD using Template** | Quarterly: 30 days after the end of the prior quarter. Annual: 30 days after Period of Performance (POP) end date [Reporting Frequency Change from Monthly Effective at the start of the quarter following the Recipient demonstrating no single audit deficiencies or materials weaknesses] | grantreports@usagm.gov |
| | **Year-End Advance: Preliminary Trial Balance** | **Grant Validation:** <br> July 31, 2025 <br> 1. Audited 2024 Trial Balance <br> 2. Leave activities – including leave payout. <br> August 30, 2025 <br> 1. USAGM will send an email for explanation on items that have unusual fluctuation. The Recipient must provide explanations within 7 business days. <br> **Grant advance:** <br> October 7, 2025 <br> 1. Final August 2025 trial balance | cfointernalcontrolsteam@usagm.gov |

| | | 2. September 2025 preliminary trial balance<br>3. Additional estimates (estimated payroll, travel, commitment estimates and other misc. costs)<br>4. Preliminary SF-425s<br>5. Carry over requests.<br>6. Bank statements as of 9/30.<br><u>October 15, 2025</u><br>1. Updated September 2025 preliminary trial balance.<br>Estimate of "related party" financial transactions with USAGM and the basis for determining the amounts (for the SFFAS 47 disclosure). USAGM will provide the prior year disclosure prior to this date for revisions/confirmations. | |
|---|---|---|---|
| **3.** | **Exchange Rate Report** | Quarterly: 30 days after the end of the prior quarter. Annual: 30 days after Period of Performance (POP) end date [Reporting Frequency Change from Monthly Effective once Recipient demonstrates no single audit deficiencies or materials weaknesses] | grantreports@usagm.gov |
| **4.** | **Status of Vacancy and Staffing Report** | Vacancy: 30th day after the end of each quarter.<br>Staffing: 30 days after the end of the fiscal year | grantreports@usagm.gov |
| **5.** | **Unfunded Liability Template** | Beginning of the fiscal year with updates reported on the regular financial reports | grantreports@usagm.gov |
| **6.** | **Report on Equipment and Equipment Disposition** | 7 days before disposal of equipment; Annual Summary: 90 days after POP end date | grantreports@usagm.gov or Storage Media |

| 7. | **Other Reviews & Reports** | As Requested, | Per Guidance |

**Reporting Requirements.** The Recipient shall provide to USAGM the following monthly and annual reports within thirty (30) calendar days of their respective coverage periods, unless otherwise indicated above or approved by USAGM.

1. Federal Financial Report (FFR) (SF-425) – Per 2 CFR 200.328, financial reporting is required by all recipients of federal funding. The Office of Management and Budget (OMB) specifies that grant recipients use this form for financial reporting to track the status of financial data tied to a particular Federal grant award. A separate SF-425 shall be submitted per Grant Agreement for each fiscal year; USAGM may require a separate SF-425 for special or earmarked funding. Each SF-425 Report will include the Federal Award Identification Number (the FAIN) and the fiscal year (FY) of the funding. This report will be submitted until all funding for the specific grant is fully obligated and expended.

2. Statement of Obligations and Disbursements (SOD) Report - for each month, a statement of obligations and cash disbursements in U.S. dollars with the level of detail described in Article VII(a)(2), including exchange rate gains and losses, together with such additional information as USAGM may request from time to time. As requested by USAGM, the Recipient shall justify in detail its use of Grant Funds against items defined in the Approved Financial Plan.

3. Year-End Advance - 2025 Year-End Trial Balance (TB) and Cash Balance report due by – Schedule of Deliverables provided in "SUMMARY OF RECIPIENT REPORT SUBMISSIONS" Table above, bullet 3, for Year-End (YE) Reporting, USAGM in order to prepare the fiscal year-end accruals requires the RECIPIENT to provide the trial balance for the year ending September 30, 2025. USAGM understands that the TB will not be final. USAGM may also require the Recipient to provide estimated payroll, travel, and other miscellaneous Costs, including commitment numbers. In addition, USAGM will need an estimate of any "related party" financial transactions with USAGM and the basis for determining the amounts. Questions for the Trial Balance report should be directed to e-mail: cfointernalcontrolsteam@usagm.gov.

4. Exchange Rate Report – USAGM requires that the Non-Federal Entity report monthly on foreign currency exchange rate gains and/or losses providing source documentation per 2 CFR 200.440.

5. Status of Vacancy and Staffing Reports.

   a. Organizational Chart. The Recipient shall submit an organizational chart based on the above table's listed requirements. Should the Recipient be reorganized

at any point during the fiscal year, the Recipient will provide USAGM with an updated organizational chart.

b. Report on Vacancies. Not later than 3days after the end of each month of the fiscal year, the Recipient shall submit a report to USAGM listing personnel vacancies as of the end of the month. This report should be organized by Division (i.e. Office or Language Service as they appear in associated budget documents such as the Congressional Budget Justification and/or Program Plan) The report shall include the Position Title; a Unique Vacancy Identifier (i.e. a position number or alpha numeric combination that remains with the vacancy); Grade Level, Annual Salary; Date Vacant and Expected Hire Date. The provision of such report to USAGM is solely to facilitate USAGM's budget planning and reporting to Congress and does not imply that the Recipient is required to seek USAGM approval to fill personnel vacancies.

c. Report on Staffing. Not later than 3 days after the end of each fiscal year, the Recipient shall submit a report to USAGM listing positions including its domestic and foreign national positions (full- and part-time staff) and contractor positions (full- and part-time staff) filled as of the end of the fiscal year.

6. Unfunded Liabilities from Previous Year(s). Unfunded liabilities are debt obligations that do not have sufficient funds set aside to pay the debt. There may be certain liabilities of the Recipient where the future payment obligations exceed the amount of funds available at a specific time. Examples of unfunded liabilities may include employee annual leave balances, and pension and health benefits for retirees. The Recipient must provide a list of these liabilities to USAGM annually at the end of the fiscal year.

7. Report on Equipment and Equipment Disposition. In accordance with 2 CFR Part 200, the Recipient shall submit annually to USAGM an inventory of all equipment and no later than 90 days after the POP ends. Requests for disposition instructions concerning property purchased with Grant Funds with an estimated fair market value (at the time of such disposition) of U.S. $10,000 or more must be submitted to USAGM 7 days in advance of the proposed disposition. If USAGM has not notified the Recipient that the disposition is disapproved, the disposition will be deemed approved.

8. To ensure efficiency and transparency for the American taxpayer, the Recipient will provide a supplemental accountability report to the Agency within 5 calendar days of the execution of this Agreement, including the following information:

a. An accounting of all expenditures of funds provided under this Agreement made to any non-profit organization or to any provider of legal services legal services.

b. An accounting of any and all beneficial owners of any recipient of any expenditure of funds provided under this Agreement, including but not limited

to those expenditures made by grant, sub-grant, fellowship, contract, or any other payment. Any beneficial owner who previously served as an employee or contractor of USAGM, the Recipient, and any other organization with which USAGM maintains a grant agreement shall be so identified. USAGM will provide Recipient with a list of all other organizations with which USAGM maintains a grant agreement.

c.  Copies of all retainer agreements with any provider of legal services.

d.  Resumes of Recipient personnel. For the purposes of this requirement, Recipient personnel include members of the Board of Directors and any employee.

9.  Other Reports and Reviews. The Recipient shall prepare and submit to USAGM such other reviews and reports on expenditures and obligations as USAGM may request on a schedule to be provided periodically by USAGM.

e.  On Site Reviews. USAGM may conduct site visits consistent with the purposes of appropriate Recipient oversight consistent with 2 CFR 200.329 to each Recipient headquarters site (domestic/overseas) and to a select bureau(s) of the Recipient each fiscal year. USAGM shall be entitled to site visits with 24 hours notice to the Recipient. The Recipient shall arrange the site visit with the appropriate Recipient personnel. At its discretion, USAGM may prepare and provide a checklist of items to review and discuss with the Recipient but is explicitly not required to do so. The Recipient shall have all books and records available for inspection on site at all times. USAGM will not conduct inquiries into Recipient operations that could be deemed to violate statutory protections regarding the independence of the network's editorial decision-making and journalism. After the visit, USAGM will prepare a draft report that identifies any observations or areas of improvement and will provide the Recipient an opportunity to respond and comment on it within a reasonable time prior to USAGM's finalizing the report.

f.  Comparability Studies. USAGM may perform compensation comparability studies annually. These studies will be used to evaluate the Recipient's salary and other compensation rates in relation to the salary and compensation under Title 5 of the United States Code or the foreign relations laws of the United States for comparable locations overseas. The Recipient will coordinate with a USAGM designated contractor, if necessary, to complete these studies and produce a report.

Comparability studies will assess the compensation comparability among federal and Recipient organizations to include salary, benefits, and other forms of compensation for employees based inside and outside of the United States. USAGM understands that RFE/RL's ability to transmit the personal data of its employees to USAGM and/or the USAGM Designated Contractor is constrained by the European Union's General Data Protection Regulation (GDPR), and its requests for data made in connection with compensation comparability studies shall reflect such understanding. The Recipient agrees, but only to the extent permitted by applicable law including GDPR, to the

following:

1. Provide USAGM or any Designated Contractor with the following information and compliance requirements:
   a. Base Salary/Wages
   b. Additional compensation components (overtime and night differentials)
   c. Bonuses and Awards
   d. Benefits Prevalence to include retirement, health insurance premiums, life insurance, social security and Medicare, short- and long-term disability, commuter benefits, fitness/gym allowances/memberships, parking, perquisites, etc.
   e. Paid time-off practices (vacation, illness, holidays, etc.)
   f. Expatriate practices for those positions identified as eligible for overseas/expatriate benefits.
   g. Authorization for USAGM to conduct a full and complete background investigation; USAGM will not pay for or reimburse the costs of an individual's employment with the Recipient if the individual does not pass a background check at a level consistent with the standard in Article X or is later determined to be an insider threat.

2. Comply with USAGM directives applicable to USAGM-funded salary and benefits costs both domestically and globally which are necessary for USAGM to properly exercise its oversight and supervision or other authority under the International Broadcasting Act, or any other provision of law.

3. Follow USAGM or any Designated Contractor instructions applicable to collecting organizational and job position data in different ways – through interviews and existing job documentation - in order to evaluate the relative scope, complexity, responsibilities and contribution of roles and positions.

4. Recipient shall comply with data requests from USAGM or any Designated Contractor, which may include the following additional data regarding pay and benefit practices:
   a. Individual employee data from various human resources systems will be collected and analyzed and may include length of service, location of work and other data points that would be useful for analyzing the data.
   b. Current policies across the organization will also be analyzed and summarized.
   c. Additional compensation components may be collected as determined by the USAGM or any Designated Contractor.

g.  The Recipient shall maintain at its principal offices full and complete records and books of account, in accordance with generally accepted accounting principles, covering the financial details applicable to the Grant. The Recipient shall maintain separate accountability for funds provided under this Agreement. The Recipient shall expend these funds only on the operating costs authorized by this Agreement and in compliance with 2

CFR Part 200, Subpart E (Cost Principles) unless it receives prior written approval of USAGM to do otherwise.

h.  In accordance with 2 CFR 200.308, the Recipient is required to report deviations from the Approved Financial Plan to USAGM. The Recipient shall make reasonable efforts to provide prior notice of anticipated deviations The Recipient may not transfer Grant Funds among individual line items approved in the financial plan if the cumulative amount of such transfers exceeds, or is expected to exceed, 10 percent of the total budget in the Approved Financial Plan unless otherwise approved by USAGM.

i.  Unless otherwise approved by USAGM, the Recipient shall provide five (5) days advance notification to the grantreports@usagm.gov of any new contracts exceeding U.S. $500,000 and any new leases exceeding U.S. $200,000. Notification should include and answer the following:

   a. Purpose of contract/lease
   b. Was market research conducted for contract and/or lease;
   c. Was competition considered for the contract/lease;
   d. The POP of the contract/lease (total number of years, months, etc.)
   e. The cost associated with the contract/lease (total costs along with annual cost for base year and option years, including, as appropriate, escalation costs).

j.  Return of Funds.

   1. The Recipient shall return to USAGM at the conclusion of the POP any portion of the Grant Funds that are not required for a legally binding transaction or designated by the Recipient for a purpose and in an amount consistent with the Approved Financial Plan, if instructed to do so by USAGM.

   2. Any and all interest earned on Grant Funds provided to the Recipient pursuant to this Agreement shall be returned to U.S. Government on an annual basis in accordance with the requirements of 2 CFR 200.305.

   3. Expenditures by the Recipient that are not consistent with the Approved Financial Plan or otherwise permitted by this Agreement shall be recovered by the Recipient and promptly refunded to USAGM. Any unrecovered funding will be withheld from future payments.

k.  Grant Closeout. Closeout is the process, as governed by 2 CFR 200.344, in which USAGM determines that a grant has been fully performed, the established POP has ended, and all administrative actions pertaining to the grant have been completed. Closeout is initiated by the Office of the Chief Financial Officer (OCFO)/Budget (B) sending notice to the Recipient 30 days before the POP of a grant ends, informing the Recipient that the grant will be closed out. If there are cases where the grant's POP has been completed and the Grant Agreement should be extended beyond the POP, the OCFO/B will notify the

Recipient of this change and will coordinate all actions through the USAGM Office of General Counsel (OGC) and the Recipient.

1. Any grant funds not obligated and disbursed by USAGM to the Recipient at the time the POP expires revert to USAGM unless otherwise agreed to in writing by USAGM. The Recipient should not enter into an obligation without receiving the funding first from USAGM.

2. In accordance with 2 CFR 200.344, no later than 120 calendar days after the end date of the POP, the Recipient must submit all financial, performance, and other reports as required under this Agreement. Within 120 calendar days after the end date of the POP, the Recipient shall liquidate all financial obligations incurred under this Agreement, unless the USAGM authorizes an extension in writing.

3. If the Recipient completes all closeout requirements, USAGM shall complete all actions for the closeout no later than one year after the POP end date unless otherwise directed by authorizing statutes.

4. If the Recipient does not submit all reports in accordance with 2 CFR 200.344 and this Agreement, USAGM shall proceed to close out with the information available within one year of the POP end date.

5. If the Recipient does not submit all reports in accordance with 2 CFR 200.344 within one year of the POP end date, USAGM may report the Recipient's material failure to comply with this Agreement with the OMB-designated integrity and performance system. USAGM may also pursue other enforcement actions per 2 CFR 200.339.

6. A grant is not fully performed if aspects of the approved Financial Plan continue to remain uncompleted, and USAGM agrees that the items are still to be validly completed.

*l.*  Under 2 CFR §200.305, the Non-Federal shall deposit and maintain advance payments of Federal Funds in insured accounts whenever possible. 2 CFR §200.305 also provides that the Recipient must maintain such advance payments in interest-bearing accounts and consistent with 2 CFR 200.305(b)(12) returned annually. In addition, consistent with 31 CFR §202.6, the Recipient must ensure that a Financial Institution receiving public money pledge collateral security in the amount required by the Secretary of Treasury.

Article VIII – REGULATORY COMPLIANCE

b. The Parties acknowledge and agree that the Parties are subject to all Federal laws and regulations pertaining to Federal grants, including the following: 22 U.S.C. § 6201 et seq., 31 U.S.C. §§ 7502 and 1352, 41 U.S.C. § 702, 31 U.S.C. § 6301 et seq. (the Federal Grant and Cooperative Agreement Act) and implementing regulations, and 2 CFR Part 200.

c.     Allowability of costs incurred under this Agreement will be determined in accordance with 2 CFR Part 200, pursuant to certain clarifications specified in Attachment B and subject to any exceptions granted by authorization or appropriation laws.

d.     The Recipient shall comply with the covenants and other contracting provisions set forth in Attachment D.

e.     The Recipient shall comply with grant limitations in the International Broadcasting Act and/or any appropriations statute that is applicable to the Non-Federal Entity, including, without limitation, any set forth in Attachment D.

f.     The Recipient shall deliver all required certifications identified in Attachment E upon execution of this Grant Agreement.

g.     No Grant Funds may be used for the following purposes:

1.    To pay any salary or other compensation or enter into any contract providing for the payment of salary or compensation, in excess of the rates established for comparable positions under Title 5 of the United States Code, or the foreign relations laws of the United States.

2.    Except in the event of a reasonable accommodation under federal law, To pay first-class or business class travel for any employee, Board Member, or contractor of the Non-Federal Entity, or the relative of any employee.

3.    To pay any legal fees or associated costs for suing USAGM or any other US government entity or employee.

4.    To lobby directly or indirectly any member of Congress or the executive branch.

5.    To violate or circumvent any US laws or conditions of this grant agreement.

6.    To pay for any food, drink, entertainment, or non-essential items.

7.    To pay for any hosting or attending of any conferences, meetings, symposium, honorariums, speakers fees, gifts, or fringe benefits.

8.    To pay any other secondary or tertiary non-profit organizations.

9.    To pay any entity which is affiliated with or owned by any former head of the Recipient organization or any prior or existing Board Member.

h.     The Recipient shall comply with all applicable U.S. laws and regulations, including, without limitation, the copyright and other intellectual property rights laws of the United States.

a.    When engaging outside the United States in activities that require the use of Grant Funds, the Recipient shall exercise due diligence to ascertain the local laws and regulations applicable to the Non-Federal Entity's activities in the relevant country(ies) where such activities shall be undertaken. The Recipient shall promptly notify USAGM in writing in the event that the Recipient or any of its employees or contractors is undergoing prosecutorial actions such that those actions are likely to cause reputational damage to USAGM or the United States Government.

i.    Consistent with 2 CFR 200.113, the Recipient shall disclose, in a timely manner, in writing to the Office of Inspector General (OIG) for the Department of State, with a copy to the USAGM CEO, all violations of U.S. Federal criminal law involving fraud, bribery, or illegal gratuities potentially affecting the Federal award. Sub-recipients must disclose, in a timely manner, in writing to the OIG and to the prime recipient (pass-through entity) all violations of Federal criminal law involving fraud, bribery, or illegal gratuities potentially affecting the Federal award. Failure to make required disclosures can result in any of the remedies described in 2 CFR 200.339.  Disclosures must be sent to: U.S. Department of State Office of Inspector General, P.O. Box 9778, Arlington, VA 22219. Website: https://stateoig.gov/hotline  Phone: 1-800-409-9926 or 202-647-3320

j.    The Recipient's agreement to execute work in accordance with 2 CFR 200 includes the specific requirement under 2 CFR 200.300(b) to comply with whistleblower rights and protections under 41 U.S.C. 4712. The Recipient is expected to inform all of its employees of whistleblower rights and protections in writing.

Article IX – FUNDRAISING

a.    The Recipient may not engage in fundraising from outside sources for any activities for which funding is provided under this grant. Should the entity Recipient want to raise outside funds, they must forgo their grant funds provided under this grant in their entirety.

b.    At the request of the USAGM CEO, Non-Federal Entity shall provide the USAGM CEO sufficient information for the USAGM CEO to make any determinations required under the Policy or by the USAGM CEO's oversight responsibilities, and to assess the amounts and purposes for which funds received by the Non-Federal Entity from outside sources are used.

b.    

c.    Within 24 hours 14 days  of the execution of this agreement, Recipient will provide the USAGM CEO with an accounting of all funding received by the Recipient outside of this Grant Agreement over the previous 5 years, including but not limited to those funds received through grants, donations, contributions, sponsorships, gifts, or endowments.

c.    

d.    Recipient shall provide the USAGM CEO sufficient information for the USAGM CEO to make any determinations required under the Policy or by the USAGM CEO's oversight responsibilities, and to assess the amounts and purposes for which funds received by the Recipient from outside sources are used.

Article X – PERSONNEL SECURITY POLICY

a.  <u>Security Policies Generally</u>. The Recipient shall adopt and implement such security policies as are required by federal law, regulation, or Executive Order.

b.  <u>Background Investigations</u>. USAGM is subject to laws, regulations, and Executive Orders that establish policy for security vetting of Federal employees, contractors, and (in certain instances) Recipient staff. Accordingly, employees or contractors of the Recipient may be required to undergo investigations conducted by USAGM or other authorized U.S. Government agencies, if the Recipient employee or contractor requires access to Federal Government space (including any Federally-owned or leased building or its grounds), information (including classified information or other proprietary, non-public information), information technology systems (including any information technology system used or operated by an executive agency, by a contractor of an executive agency, or by another organization on behalf of an executive agency), staff (including any Federal employee or contractor), or other assets of the Federal Government.

c.  <u>Determinations.</u> The Recipient shall determine which of its employee or contractor positions meet the conditions in Article X.b, subject to USAGM guidance on making this determination. All members of the Recipient's Board of Directors must be designated for investigation.

d.  <u>Position Designation for Positions Subject to Federal Background Investigation.</u> All federal investigations conducted in accordance with this section will be made at the minimum level as determined by the USAGM Director of Security in accordance with the Defense Counterintelligence and Security Agency Position Designation Tool. For all positions meeting the criteria set forth in Article X.b., the Recipient must therefore provide USAGM a position description, statement of work, or equivalent document describing the duties of the position. All members of the Recipient's Board of Directors must be favorably adjudicated prior to assuming membership on the Board of Directors.

e.  <u>Investigative Standards for Positions Subject to Federal Background Investigation.</u> Recipient employees and contractors who meet the conditions set forth in Article X.b. (as and pursuant to Article X.c) are subject to investigative standards, policies, and procedures subject to approval by the Office of Personnel Management and the Office of the Director of National Intelligence.

f.  <u>Access to Classified Information</u>. Any access to classified information by Recipient employee or contractor or member of Recipient Board of Directors must first be coordinated with and approved by the USAGM Director of Security. Failure to obtain prior approval from the USAGM Director of Security will result in an administrative debrief and removal of the individual's security clearance.

g.  <u>Risk Assessment for Positions not Subject to Federal Background Investigation</u>. USAGM will perform a Risk Assessment on all Recipient employees and contractors that do not

meet the conditions set forth in Article X.b. The Recipient must provide the USAGM Office of Security with all information requested by the Agency for each Recipient employee and contractor as well as any required Release of Information necessary for the Agency to perform a Risk Assessment. All Recipient employees and contractors must be favorably adjudicated by the USAGM Office of Security as a condition of their employment or continued affiliation with the Recipient.

h.    <u>USAGM Insider Threat Program Participation</u>. Recipient, all Recipient employees, and all employees of Recipient contractors, and all members of the Recipient's Board of Directors fall under the purview of the USAGM Insider Threat Program, designed to deter, detect, and mitigate actions by insiders who may represent a threat to national security. USAGM will not pay for or reimburse the Recipient for the employment or contracting of an individual identified by the USAGM Director of Security-an individual identified by the USAGM Director of Security to be an insider threat may not serve as a member of the Recipient's Board of Directors.

i.    <u>USAGM as Independent Controller of Personal Data</u>. Ensuring the stability of the Non-Federal Entity's operations and the security of the Non-Federal Entity's personnel is of utmost importance to USAGM. In particular, USAGM is committed to ensuring that the Recipient is protected from risks such as terrorism and other crimes. Accordingly, the Recipient is required to transmit certain personal data to or via USAGM so that USAGM, or other authorized U.S. Government agencies, can conduct required background investigations or Risk Assessments. For purposes of this Agreement, USAGM is treated as an independent controller of the personal data that the Recipient sends to it. The independent controller shall at all times exercise professional judgment in the processing of the personal data of the Non-Federal Entity's employees and contractors, will comply with all applicable U.S. laws in processing the personal data, will ensure that adequate technical and organizational measures are taken for a level of security appropriate to the risk, and will have sufficient autonomy as to how such personal data are processed. USAGM will inform the Recipient if these background investigations and assessments are completed and raise any identifiable concerns about members of the Recipient's staff.

<u>Cooperation with Law Enforcement</u>. Like USAGM, RFE/RL has a responsibility to protect its staff and facilities from risks such as terrorism and other crimes. As a condition of receiving federal Grant Funds, RFE/RL shall comply with all lawful requests for non-journalistic (corporate) information from the Inspector General and other law enforcement agencies of the U.S. government, as appropriate. Furthermore, RFE/RL is authorized to share corporate information with the relevant security services of the government of the Czech Republic when doing so serves to protect RFE/RL and its staff to the extent allowable under applicable laws and regulations.

j.    <u>Costs</u>. The Recipient is responsible for the cost of the Federal investigations described in Article X.b or any vetting described in Article X.g.

k.    <u>Responsibility for Personal Data</u>. USAGM and the Recipient are individually and separately responsible for complying with applicable privacy and data-protection laws.

l.    Nothing herein can or will, nor may be understood as intending to, subject the United States to the laws, courts, or jurisdiction of any foreign country or sovereign; or give rise to any claim against the United States by any third party or the Non-Federal Entity. (United States includes any Agency or Instrumentality thereof.)

## Article XI – IT NETWORK SECURITY POLICY

Any material breach of the Non-Federal Entity's IT network security policies, or any incident that materially affects the integrity or operations of the Non-Federal Entity's IT network system shall be reported to USAGM's Chief Information Officer within twenty-four (24) hours of detection. These violations shall include, but are not limited to, the following:

a.    Unauthorized access to any of the social media or web site content management systems used by the Recipient that the Recipient becomes aware of.

b.    Disruption or denial of service for production or distribution systems.

c.    Unauthorized modification or removal of the Non-Federal Entity's data that the Recipient becomes aware of.

d.    The Recipient will comply with USAGM and OMB Regulatory Policy as it applies to Recipients. The Recipient will coordinate its IT policy with USAGM IT policy to ensure a secure IT computing environment.

e.    All Recipient personnel with authority to enter into or to initiate or authorize contracts for the acquisition or leasing of Information Technology products must complete USAGM-provided Capital Planning and Investment Control (CPIC) training, or another appropriate training identified by USAGM designed to ensure IT investments integrate strategic planning, budgeting, procurement, and management of IT in support of the Recipient's mission and business needs.

## Article XII – AUDITS AND INSPECTIONS

a.    All records required to be kept in order to comply with the terms and conditions of this Agreement, including financial records, supporting documentation, statistical records, bid solicitations, evidence of shipment for commodities, procurement and service contracts, and all other Recipient records pertinent to a federal award, shall be maintained by the Recipient for a period of at least three (3) years from the date of the submission of the final expenditure report, in a manner that will permit verification of the Non-Federal Entity's compliance with its representations, warranties, and obligations contained in this Agreement. If any litigation, claim, or audit is started before the expiration of the three (3) year period, the records shall be retained until such litigation, claim, or audit has been resolved. In compliance with 2 CFR 200.334(c), the retention period for real property and equipment records starts with the date of disposition. The retention period for program income records starts at the end of the Non-Federal Entity's fiscal year in which the income

is earned. 2 CFR 200.334(e).

b.      The Recipient acknowledges the audit requirements set forth in 2 CFR Part 200, Subpart F (Audit Requirements). The audit package and the data collection form shall be submitted to the Federal Audit Clearinghouse 30 days after receipt of the auditor's report(s), or 9 months after the end of the fiscal year– whichever comes first.

c.      Recipient acknowledges and agrees that, consistent with 2 C.F.R. Part 200.503, USAGM may arrange additional audits so long as such audits are not duplicative of the single audit. at any time hire an independent audit of all Recipient books, financials, security protocols and/or operations. . Upon notice by USAGM of an additional conforming audit, Recipient is required to provide all requested information and access to USAGM and/or its designated auditors/inspectors to all required books, records, facilities, and technical systems within 24 hours notice in whatever manner, electronic or otherwise, deemed appropriate by USAGM. Failure to provide such access and/or information as described above shall be deemed to be a material breach of this grant agreement.

d.      Operations of the Non-Federal Entity, as related to use of the Grant Funds, may be audited by the Government Accountability Office (GAO) in accordance with such principles and procedures and under such rules and regulations as may be prescribed by the Comptroller General of the United States. Any such audit shall be conducted at the place or places where accounts of the Recipient are normally kept.

e.      Representatives of the GAO shall have access to all books, accounts, records, reports, files, papers, and property belonging to or in use by the Recipient pertaining to such financial transactions and necessary to facilitate an audit. Such representatives shall be afforded full facilities for verifying transactions with any assets held by depositories, fiscal agents, and custodians. All such books, accounts, records, reports files, papers, and property of the Recipient shall remain in the possession and custody of the Non-Federal Entity.

The Recipient acknowledges that the Inspector General of the United States Department of State is authorized to exercise the authorities of the Inspector General Act of 1978 with respect to the Non-Federal Entity.

## Article XIII – SERVICE REVIEWS AND OTHER CONTENT ASSESSEMENTS

a.      In accordance with 22 U.S.C. § 6204(a)(22)(A), the Recipient is required to conduct content reviews at least annually or more frequently at the discretion of the USAGM CEO, consisting of a review of at least 10 percent of available unique weekly content from any selected week from the previous year, which shall be conducted, to the extent practical, by fluent language speakers and experts without direct affiliation to the language service being reviewed who are seeking any evidence of unprofessional content or content otherwise inconsistent with the highest standards of professional journalism. The results of these content reviews shall be submitted to the Office of Policy and Research, the head of the Non-Federal Entity, and the USAGM CEO. Such reviews shall not interfere with the Recipient's professional journalistic independence.

b. In accordance with 22 U.S.C. § 6204(a)(22)(C), the USAGM CEO is authorized to launch a review, using external, native-language and regional experts, the results of which are to be reported to the appropriate committees of Congress, to determine if a widespread pattern of violations of the Non-Federal Entity's established editorial principles are detected, including its Standards of Ethical Journalism. The Recipient shall cooperate with such expert reviews and agrees to provide the USAGM CEO, or his/her authorized representatives, with any information requested for the purpose of conducting such expert reviews. Such reviews shall not interfere with the Recipient's professional journalistic independence.

c. USAGM shall conduct reviews throughout the POP to measure the Non-Federal Entity's performance in achieving the purposes of this Agreement and in line with § 200.301 Performance measurement. Such reviews shall be conducted at reasonable times and upon notice to the Non-Federal Entity. USAGM's Office of Policy and Research ("OPR") is responsible for coordinating USAGM policy and research engagement with USAGM networks (Federal and Non-Federal) in support of the agency's mission and strategic objectives. USAGM performance is measured by OPR through research and review in the following areas of effort:

1. Strategic alignment, including agency Strategic Plan formulation, Language Service Review (LSR) prioritization and language service strategies, and other strategic reviews as requested by USAGM.

2. Data collection and analysis, including ensuring that all performance research and data is centrally accessible to OPR and, in compliance with Agency data governance standards, is vetted using established quality control/quality assurance practices, and supports the Agency's Impact Model Framework.

3. Knowledge and data management, including contributing to the Smart Management and Audience Research Tool (SMART), data.usagm.gov, Impact Tracker, and the data management system.

4. Performance management, including setting performance targets in the annual budget, and reporting performance results for the <u>Agency Performance Plan / Agency Performance Report</u> (APP/APR).

5. Monitoring, including compliance with Agency program review guidelines and procedures for violations of journalistic standards.

d. Within 7 calendar days after the enactment of this Grant Agreement, the Recipient must engage an independent, third-party expert identified by the Recipient and approved by the USAGM CEO to review and prepare a report on the Recipient's perceived bias and credibility. Within 45 days after engaging the third-party expert, the Recipient must provide results of the review to the USAGM CEO along with a list of suggested corrective actions, if appropriate. The Agency will consider the results of the report and any identified corrective actions when evaluating future year funding requests.

e.  In accordance with the March 14, 2025 Executive Order issued by the President, "Continuing the Reduction of the Federal Bureaucracy," and consistent with USAGM CEO authorities outlined in 22 U.S.C. §6204 and Recipient responsibilities outlined in 22 U.S.C. §6207, within 3 calendar days after the enactment of this Grant Agreement, the Recipient must provide the Agency with a reform plan identifying opportunities for efficiencies resulting in the reduction of the Recipient's operating budget and required appropriations. Such reform plan may include, for example, the reduction of services, creating efficiencies in operations, or consolidation with other Agency Recipient organizations.

f.  To ensure continuous and cooperative planning and operations hereunder, the Recipient shall permit USAGM or its authorized representatives, including the Inspector General, to visit the Non-Federal Entity's facilities and to inspect the facilities, activities, and work pertinent to the grant, both in the United States and abroad, and to interview personnel engaged in the performance of the Grant to the extent deemed necessary by USAGM. USAGM, however, shall not exercise any prepublication review of the substance of any broadcast or print publication of the Non-Federal Entity.

Article XIV – FAILURE TO COMPLY WITH THE TERMS OF THE GRANT

In the event that the Recipient fails to comply with any material term of this Grant, USAGM shall have the right to suspend or terminate the Non-Federal Entity's use of the Grant Funds by providing written notice to the Recipient in accordance with the provisions in 2 CFR Part 200; provided, that the Recipient shall have 24 hours from the receipt of such notice to cure any such failure to comply. (The Recipient may seek an extension from USAGM but USAGM is under no obligation to provide any such extension as it is fully discretionary as to whether to grant an extension as determined by the CEO.)

In the event USAGM suspends or terminates the Non-Federal Entity's use of Grant Funds, the Recipient shall forthwith return to USAGM any portion of the Grant Funds in its possession or control. Any such termination or suspension shall be without further obligation by USAGM or the United States.

In the event that the Recipient reasonably believes that USAGM has breached Article II, the Recipient shall report the breach to the USAGM CEO. If the RECIPIENT believes that the breach involves the USAGM CEO, then they shall contact the USAGM General Counsel, the White House Counsel, or State Department OIG.

Article XV – POINTS OF CONTACT

For USAGM, the following person, or anyone otherwise designated by the CEO, shall be deemed to be the point(s) of contact for the Recipient with respect to the provisions of this Agreement:

Roman Napoli
Chief Financial Officer
Tel: (202) 230-0564

Email: rnapoli@usagm.gov

For the Non-Federal Entity, the following person(s), shall be deemed to be the point(s) of contact for the Recipient with respect to the provisions of this Agreement:

Joseph Lataille
Chief Financial Officer
Tel: (202) 457-6915
Email: LatailleJ@rferl.org

Article XVI – AMENDMENTS

The terms of this Agreement may be amended by mutual written consent between USAGM and the Non-Federal Entity.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the day and year specified below:

**RFE/RL, INC.**

BY _____          BY_____
Stephen Capus                                              Kari Lake, SA
President                                                        Acting with the Delegations for the
                                                                   Chief Executive Officer

DATE _____          DATE _____

## ATTACHMENT A

The Board of the Broadcasting Board of Governors (BBG Board) on June 3, 2011, adopted "rules of the road" governing expectations regarding interactions among the elements of United States International Broadcasting (USIB), specifically (i) the federal agency (now called the U.S. Agency for Global Media); (ii) the Voice of America (VOA) and Office of Cuba Broadcasting (OCB); and (iii) USAGM's private Non-Federal Entities: Radio Free Europe/Radio Liberty (RFE/RL), Radio Free Asia (RFA), and Middle East Broadcasting Networks (MBN) (collectively, "Non-Federal Entities"). The Agency structure has changed significantly since then. It is now headed by a Senate-confirmed Chief Executive Officer. Nevertheless, the core principle of governance set forth therein in still relevant, namely that to fulfil the Agency's statutory mission, the elements of USIB shall work together "in a spirit of collegiality, transparency, mutual respect, and good communication with peers and colleagues," in a manner consistent with the requirement, per 22 USC 6204(b), that the Agency respect the professional independence and integrity of the networks.

## ATTACHMENT B

Allowability of costs incurred under this Agreement will be determined in accordance with 2 CFR Part 200, Subpart E (Cost Principles), with the following clarifications:

a.      All operating costs are determined to be direct costs. (See 2 CFR 200.413)

b.      The following expenses, insofar as they are reasonable and necessary to further the purpose of the grant, are authorized. (Relevant paragraphs of 2 CFR Part 200 are noted in parentheses.)

1. Official representation expenses necessary to further the mission of the Recipient are not to exceed the amount in the Approved Financial Plan unless otherwise authorized by USAGM. (See Department of State Standardized Regulations (DSSR), Sections 300 (Representation Allowances) – 330 (Prohibitions))

2. Capital expenditures for general purpose equipment. (See 2 CFR 200.439)

3. Overtime, extra-pay shift, and multi-shift premiums. (See 2 CFR 200.430)

4. Participant support costs (See 2 CFR 200.456)

5. Costs of legal, accounting, and consulting services, and related costs, incurred in connection with organization and reorganization. (See 2 CFR 200.435; 200.455 & 200.462)

6. Public information and relations service costs. (See 2 CFR 200.421)

7. Publication and printing costs. (See 2 CFR 200.461)

8. Foreign travel costs as specified in the Approved Financial Plan. (See 2 CFR 200.475)

9. The cost of advertising the availability of publications, recordings, or services of the Non-Federal Entity, subject to limitations in applicable law or regulation.

## ATTACHMENT C

1.    COVENANT AGAINST CONTINGENT FEES

The Recipient warrants that no person or selling agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees, bona fide established commercial or selling agencies maintained by Recipient for the purpose of securing business. For breach or violation of this warranty, USAGM shall have the right to annul this Agreement without liability or in its discretion to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage or contingent fee. This includes, but is not limited to, attorneys, law firms, and non-profit or non-governmental organizations providing consulting or legal services.

2.    EQUAL OPPORTUNITY

During the performance of this Agreement, the Recipient agrees that it will not discriminate against an employee or applicant for employment because of race, creed, color, sex, national origin, religion, age, or disability in accordance with all applicable Federal laws and regulations prohibiting discrimination in employment including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. 2000e, et seq.; section 504 of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 794; the Age Discrimination Employment Act of 1975, as amended; and 42 U.S.C. 6101, et seq. The provisions of this paragraph shall apply to employment actions including, but not limited to, employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship. With regards to its employment, procurement, and contracting practices, the Recipient will not consider race, color, sex, sexual preference, religion, or national origin in ways that violate the Nation's civil rights laws. The Recipient acknowledges that its compliance with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code. The Recipient certifies that it does not operate any programs promoting "diversity, equity, and inclusion" that violate any applicable Federal anti-discrimination laws.

3.    AIR TRAVEL

The Recipient agrees that all travel paid for with the Grant Funds will comply with the "Fly America Act" (49 U.S.C. § 40118).

4.    CONVICT LABOR

In connection with the performance of work under this grant, the Recipient agrees not to employ any person undergoing sentence of imprisonment except as provided by 18 U.S.C.

3622 and Executive Order No. 11755, December 29, 1973, as amended.

5.      THE RECIPIENT SHALL COMPLY WITH:

a.      Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000d <u>et</u> <u>seq</u>., which prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving Federal financial assistance.

b.      Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, which prohibits discrimination on the basis of handicap in programs and activities receiving Federal financial assistance.

c.      The Age Discrimination Act of 1975, as amended, 42 U.S.C. 6101 <u>et</u> <u>seq</u>., which prohibits discrimination on the basis of age in programs or activities receiving Federal financial assistance.

d.      The 2019 National Defense Authorization Act, section 889(b), which prohibits federal award recipients from using grant funds for certain purposes, and the implementing regulations found at 2 CFR 200.216.

## ATTACHMENT D

GRANT LIMITATIONS – RFE/RL, INC.

A.    The headquarters of RFE/RL, Incorporated and its senior administrative and managerial staff must be in a location which ensures economy, operational effectiveness, and accountability to USAGM.

B.    This Grant may be used only for activities which the USAGM determines are consistent with the purposes of the U.S. International Broadcasting Act of 1994, as amended, and for the purpose of carrying out similar functions as were carried out by RFE/RL on the day before the date of enactment of the Act with respect to RFE/RL, consistent with Section 2 of the Board for International Broadcasting Act of 1973, as in effect on such date.

C.    To compensate freelance contractors, except as contemplated in the Approved Financial Plan.

D.    In determining whether RFE/RL's Emergency Currency Relief policy has been triggered, a Currency Relief Rate of 1.10 will be used as the coefficient to apply to the UniCredit Bank exchange rate posted on the 5th business day of each month in calculating currency relief amounts for employees.

## ATTACHMENT E

1.    CERTIFICATION REGARDING LOBBYING

The Recipient shall sign the Certification (Attachment F) Concerning Lobbying Activities that it will comply with 31 U.S.C. § 1352 concerning the use of appropriated funds for lobbying activities. If appropriated funds have been paid or will be paid for lobby activities, the Recipient shall submit Standard Form LLL, "Disclosure of Lobbying Activities."

2.    CERTIFICATION REGARDING DRUG-FREE WORKPLACE REQUIREMENTS

The Recipient shall sign the Certification (Attachment I) Regarding Drug Free Workplace Requirements: Drug-Free Workplace Act of 1988 that it will provide a drug-free workplace in accordance with the Drug-Free Workplace Act of 1988, 22 CFR 513, Subpart F.

3.    FEDERAL DEBT STATUS

Under OMB Circular No. A-129, the Recipient must certify that it is not delinquent on payment of any Federal debt. The Recipient shall sign the Certification (Attachment H) Regarding Federal Debt Status.

4.    DEBARMENT AND SUSPENSION

Executive Order 12549 of February 18, 1986, as clarified by Executive Order 12689 of August 15, 1989, requires uniform Federal rules on non-procurement debarment and suspension from certain transactions with the Government. The May 26, 1988 Federal Register (53 Fed. Reg. 19161) contains these rules, which, among other things, require signature by Non-Federal Entities of the Certification (Attachment I) Regarding Debarment and Suspension.

5.    STANDARDS OF ETHICAL CONDUCT

The Recipient will publish written policy guidelines on conflict of interest and avoidance thereof. These guidelines must cover financial interest, gifts, gratuities and favors, nepotism, political activity and foreign affiliations, outside employment, and use of company assets. These rules must also indicate how outside activities, relationships, and financial interests are reviewed by the responsible Recipient official(s). The Recipient will ensure that each employee is given a copy of the policy and notified that, as a condition of employment under the grant, the employee must abide by the terms of the policy.

## ATTACHMENT F

### Certification Concerning Lobbying Activities

The undersigned certifies, to the best of his or her knowledge and belief that:

(1) No federal funds have been paid or will be paid, by or on behalf of the undersigned, to any person influencing or attempting to influence an officer or employee of any U.S. government agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan or cooperative agreement.

(2) No registrant under the Lobbying Disclosure Act of 1995 has made lobbying contacts on behalf of the undersigned with respect to this grant.

(3) The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was made when this contract was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each failure. **The signature below requires notarization.**

RFE/RL, Inc.

_____                    _____

Stephen Capus
President                                                         Date

## **ATTACHMENT G**

<u>Certification Regarding Drug Free Workplace Requirements</u>
<u>Drug-Free Workplace Act of 1988</u>

The Recipient certifies that it will provide a drug-free workplace by (a) publishing a statement notifying employees that the unlawful manufacture, distribution, dispensation, possession or use of a controlled substance is prohibited in the Non-Federal Entity's workplace and specifying that action that will be taken against employees for violation of such prohibitions; (b) establishing a drug-free awareness program to inform employees about (1) the dangers of drug abuse in the workplace, (2) the Non-Federal Entity's policy of maintaining a drug-free workplace, (3) any available drug counseling, rehabilitation, and employee assistance programs, and (4) the penalties that may be imposed on employees for drug abuse violations; (c) making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (c); (d) notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will (1) abide by the terms of the statement and (2) notify the employer of any criminal drug statute conviction for a violation occurring in the workplace not later than five days after such conviction; (e) notifying the agency within ten days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction; (f) taking one of the following actions with respect to any employee who is so convicted: (1) taking appropriate personnel action against such an employee, up to and including termination, or (2) requiring such an employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and (g) making a good-faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

RFE/RL, Inc.

_____                          _____

Stephen Capus
President                                                          Date

**ATTACHMENT H**

<u>Certification Regarding Federal Debt Status</u>
<u>(OMB Circular A-129)</u>

The Recipient certifies to the best of its knowledge and belief that it is not delinquent in the repayment of any federal debt.

RFE/RL, Inc.

_____                                 _____

Stephen Capus
President                                                                   Date

# **ATTACHMENT I**

### Certification Regarding Debarment and Suspension


The Recipient certifies to the best of its knowledge and belief that it and its principals: (a) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excided from covered transactions by any Federal department or agency; (b) have not, within a three-year period preceding this grant, been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state or local) transaction or contract under a public transaction; violation of Federal or state anti-trust statutes; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements or receiving stolen property; (c) are not presently indicted or otherwise criminally or civilly charged by a governmental entity (Federal, state or local) with any of the offenses enumerated in paragraph (b) of this certification; and (d) have not within a three-year period preceding this grant had one or more public transactions (Federal, state or local) terminated for cause of default.


RFE/RL, Inc.


_____                    _____

Stephen Capus
President                                                                Date

**ATTACHMENT K**

Certification Regarding Federal Anti-Discrimination Laws
(Executive Order 14173)


The Recipient certifies that it does not operate any "diversity, equity, and inclusion" (DEI) programs that violate applicable Federal anti-discrimination laws.


RFE/RL, Inc.


_____                    _____


Stephen Capus
President                                                    Date