## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RFE/RL, INC.,

                  *Plaintiff,*

    v.

KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media;

VICTOR MORALES, in his official capacity as acting Chief Executive Officer of the United States Agency for Global Media; and

UNITED STATES AGENCY FOR GLOBAL MEDIA,

                  *Defendants.*

Case No. 1:25-cv-799-RCL

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    RFE/RL's Good-Faith Attempt to Negotiate With USAGM Has Failed. ......................... 2

II.   RFE/RL Is Likely to Succeed on the Merits. .................................................................. 5

      A.    This Court Has Jurisdiction. ................................................................................. 5

      B.    There Are Three Forms of Reviewable Agency Action or Inaction. ..................... 6

            1.    Defendants' Rejection of an April Extension Agreement ......................... 6

            2.    Defendants' Unwavering Insistence on the Challenged Conditions
                  and Rejection of RFE/RL's Objections ...................................................... 7

            3.    Defendants' Unlawful and Unreasonable Inaction .................................... 9

      C.    Defendants' Unlawful, Unworkable, and Unreasonable Conditions Are
            Reviewable and Not Committed to Agency Discretion by Law .......................... 10

      D.    This Court Has Authority to Order Defendants to Take All Steps
            Necessary to Disburse RFE/RL's Congressionally Appropriated Funding. ......... 15

III.  The Remaining Factors Favor Granting the Preliminary Injunction. .............................. 17

      A.    RFE/RL Has Demonstrated Irreparable Harm ..................................................... 17

      B.    The Balance of the Equities and the Public Interest Favor RFE/RL ................... 18

IV.   A Bond Should Not Be Required. .................................................................................. 18

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonumose, Inc. v. FDA,*
747 F. Supp. 3d 211 (D.D.C. 2024) ...................................................................6

*Brach v. United States,*
443 F. App'x 543 (Fed. Cir. 2011) (unpublished) ..........................................5

*Ciba-Geigy Corp. v. EPA,*
801 F.2d 430 (D.C. Cir. 1986) .........................................................................9

*Cody v. Cox,*
509 F.3d 606 (D.C. Cir. 2007) .......................................................................11

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,*
159 F.3d 636 (D.C. Cir. 1998) (unpublished) ...............................................17

*Curran v. Laird,*
420 F.2d 122 (D.C. Cir. 1969) .......................................................................14

*\*Dep't of Com. v. New York,*
588 U.S. 752 (2019) ...................................................................................10, 11

*\*Doe v. Devine,*
703 F.2d 1319 (D.C. Cir. 1983) ...........................................................5, 12, 14

*Friends for All Child., Inc. v. Lockheed Aircraft Corp.,*
746 F.2d 816 (D.C. Cir. 1984) .......................................................................17

*Giuseppe Bottiglieri Shipping Co. S.P.A. v. United States,*
843 F. Supp. 2d 1241 (S.D. Ala. 2012) ...........................................................8

*John Doe, Inc. v. DEA,*
484 F.3d 561 (D.C. Cir. 2007) .........................................................................6

*Lincoln v. Vigil,*
508 U.S. 182 (1993) ........................................................................................12

*Make The Rd. N.Y. v. Wolf,*
962 F.3d 612 (D.C. Cir. 2020) .......................................................................11

*Minney v. United States Off. of Pers. Mgmt.,*
130 F. Supp. 3d 225 (D.D.C. 2015) ...............................................................17

*Open Tech. Fund v. Pack*,
    470 F. Supp. 3d 8 (D.D.C. 2020) ................................................................11

*Pacito v. Trump*,
    2025 WL 893530 (W.D. Wash. Mar. 24, 2025) ....................................................14

*\*Robbins v. Reagan*,
    780 F.2d 37 (D.C. Cir. 1985) ................................................................13

*\*SecurityPoint Holdings, Inc. v. TSA*,
    769 F.3d 1184 (D.C. Cir. 2014) ........................................................5, 8, 14

*\*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021) ................................................................12

*Soundboard Ass'n v. FTC*,
    888 F.3d 1261 (D.C. Cir. 2018) ................................................................6

*South Carolina v. United States*,
    907 F.3d 742 (4th Cir. 2018) ................................................................9

*Vietnam Veterans of Am. v. Shinseki*,
    599 F.3d 654 (D.C. Cir. 2010) ................................................................9

*\*Widakuswara v. Lake*,
    --F. Supp. 3d--, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ..............................5, 18

**Statutes**

5 U.S.C. § 706(1) ................................................................16

5 U.S.C. § 706(2) ................................................................16

22 U.S.C. § 6204(b) ................................................................12

22 U.S.C. § 6207 ................................................................9–11, 13, 15–16

**Other Authorities**

Def.'s Opp. to Pls.' Mot. TRO, *Open Tech. Fund v. Pack*,
    No. 20-cv-1710, ECF 7, 2020 WL 7041426 (D.D.C. filed June 26, 2020) ....................9

*Guidelines*, Mellinkoff's Dictionary of American Legal Usage (1992) ........................13

## INTRODUCTION

There is no serious argument for the lawfulness or reasonableness of Defendants' actions—which is presumably why Defendants offer none. Defendants do not dispute that Congress has appropriated a specific amount of money that shall be allocated to RFE/RL for this fiscal year. Defendants do not dispute that they have a statutory obligation to make those funds available to RFE/RL by entering into grant agreements with it. Defendants do not dispute that they lack authority to condition RFE/RL's grant on USAGM gaining the power to replace RFE/RL's entire Board of Directors. Defendants do not dispute that a host of its other conditions are unreasonable and even impossible to comply with, and would promptly give them a pretext to terminate RFE/RL's grant. Defendants do not dispute that such an illusory grant agreement does not fulfill their statutory obligation to make a *genuine* grant agreement available to RFE/RL. Defendants do not dispute that they have failed to explain their insistence on these conditions, or that they have refused to enter into a short-term grant agreement on previous terms while negotiating a new one, even after being asked to do so by RFE/RL. And they do not dispute that this failure is arbitrary and capricious under binding D.C. Circuit precedent, and that the substantive unreasonableness of the conditions is arbitrary and capricious as well.

The only thing Defendants *do* dispute? That this Court can do anything about their lawlessness. To convince this Court that it is powerless, Defendants offer a laughably sanitized account of their behavior over the past month, distort and conceal the actual issues in the case, and ignore inconvenient things like binding decisions of the D.C. Circuit. Defendants even try to create a new Catch-22: they accuse RFE/RL of asking this Court to "superintend" a contractual relationship, while *also* accusing RFE/RL of not providing enough "specificity" about what they should be ordered to do. Defs.' Opp. to Pl.'s Mot. for PI ("Opp.") 2, 25, ECF 44.

Since Defendants want more specificity, RFE/RL respectfully asks this Court to enter a preliminary injunction as follows (an amended proposed order is attached):

- Defendants are enjoined to immediately enter into a grant agreement with RFE/RL covering April 2025 under the same terms and conditions applicable to the most recent master grant agreement between the parties, in materially identical terms to the agreement between the parties pertaining to March 2025.

- Defendants are enjoined to immediately disburse RFE/RL's April funding in the amount of $12,178,590.

- Defendants are enjoined to immediately enter into a master grant agreement with RFE/RL for Fiscal Year 2025 that does not include any terms or conditions that were not included in either the master grant agreement for Fiscal Year 2024, or the version of the negotiated master grant agreement for Fiscal Year 2025 as it stood when RFE/RL signed it at USAGM's request on February 27, 2025.

- Defendants are enjoined from imposing the grant terms and conditions identified at pp. 28–36 of RFE/RL's memorandum in support of its motion for a preliminary injunction, ECF No. 41-1, or terms and conditions that are substantially the same.

- Defendants are enjoined to (i) restore disbursement of RFE/RL's congressionally appropriated funds to RFE/RL on a monthly basis pending final resolution of this lawsuit, and (ii) file monthly status reports on the first day of each month apprising the Court of the status of their compliance with the Court's order.

## ARGUMENT

### I.  RFE/RL's Good-Faith Attempt to Negotiate With USAGM Has Failed.

Defendants assert that "the parties are currently negotiating the terms of a new grant agreement," and that these negotiations are "ongoing" and "active." Opp. 2–3, 16. It is astonishing that Defendants would make such representations to this Court. Here is how these "negotiations" have gone:

- On February 14, USAGM initiated the normal negotiating process for RFE/RL's annual grant agreement. Declaration of Joseph Lataille ("First Lataille Decl.") ¶ 6, ECF 33-1. In less than two weeks, the parties reached agreement, and on February 27, USAGM requested RFE/RL's signature, which it provided. *Id.* On February 28, USAGM confirmed that there were no "issues with countersigning the grant agreement." *Id.* But USAGM never returned a countersigned agreement. *Id.* ¶ 7. It is therefore misleading for Defendants to represent that, as of late March,

USAGM had to "expeditiously draft" a new grant agreement because "[a] full FY 2025 grant agreement had never been previously finalized." Opp. 5.

- On March 15, Defendants sent a letter terminating RFE/RL's existing grant, ECF 6-3 at 9, and on March 26, Defendants rescinded that termination, ECF 15 at 4. The parties promptly agreed to a "mini agreement" extending to March the terms and conditions that were previously in effect so that the remainder of RFE/RL's March funds could be disbursed. *See* First Lataille Decl. ¶ 9.

- For the next two weeks, USAGM refused to engage with RFE/RL on the full-year FY 25 agreement, which the parties had already successfully negotiated.

- On April 9, USAGM transmitted to RFE/RL "the" grant agreement for FY 25 and demanded that RFE/RL sign it. *See* Ex. A to Mot. for Further TRO, ECF 28-2. That agreement added a host of unlawful and unreasonable provisions—in effect, poison pills—which Defendants still have not justified or explained.

- The same day, RFE/RL emailed a request to speak with USAGM to clarify. First Lataille Decl. ¶ 13. USAGM never responded. *Id.*

- On April 15, nearly a week later and still without a response, RFE/RL again sought to engage USAGM, after a status conference where the Court urged the parties to negotiate. Second Declaration of Joseph Lataille ¶ 2 ("Second Lataille Decl."), ECF 41-5; Apr. 15 Hr'g Tr. at 13–14. RFE/RL asked USAGM to sign the previously negotiated February FY 25 agreement. ECF 41-6 at 6. RFE/RL asked, alternatively, for a one-month extension of the previous terms into April. *Id.* at 7. Finally, RFE/RL asked USAGM to agree to delete six particularly egregious provisions of the new agreement, as a sign of its willingness to negotiate. *Id.* at 7–8.

- To this day, USAGM has not responded to RFE/RL's request to sign the previously negotiated agreement, or to enter into an April "mini agreement." *See generally id.*; Second Lataille Decl. ¶ 2.

- Instead, on April 15, USAGM sent a cursory response requesting a redline version of the new grant agreement that USAGM had transmitted on April 9 with "specific edits RFE/RL is seeking." ECF 41-6 at 5. RFE/RL promptly sent a redline on April 16. *Id.* at 4–5.

- USAGM responded the same day with a rejection of every change RFE/RL requested. *Id.* at 3–4. It "maintain[ed] that its language is reasonable," without explanation. *Id.* at 4. It stated only that it was willing to change certain 24-hour deadlines to 14-day deadlines. *Id.* USAGM also asked for an explanation of why its condition giving USAGM power over RFE/RL's board is illegal. *Id.*

- RFE/RL responded the same day. *Id.* at 1–3. It explained why USAGM lacks authority to demand a condition giving it the power to determine RFE/RL's board. *Id.* at 1–2. RFE/RL offered additional explanation of why several other provisions

3

are unreasonable, and asked USAGM to explain what has changed since February that necessitates these new conditions. *Id.* at 2–3.

- In the same communication, RFE/RL noted USAGM's continued non-response to its request for a "mini-agreement" covering April. *Id.* at 3. RFE/RL stated its understanding that USAGM had rejected that request, and asked USAGM to "let us know if we are mistaken." *Id.* USAGM never disputed that it had rejected this request.

- USAGM then went *eight days* without responding, despite being well aware of RFE/RL's desperate need for additional funding.[1]

- When USAGM finally responded on April 24, it attached a new version of the grant agreement that retained nearly all of the objectionable language. ECF 42-1 at 1; ECF 42-2. USAGM did not respond to RFE/RL's concerns about the retained language, and it did not explain why USAGM considered necessary or appropriate the terms to which RFE/RL had objected. Indeed, USAGM said nothing at all of substance about the agreement; it said only that "[w]e will use this version going forward." ECF 42-1 at 1.

At least three points are clear. *First*, USAGM has definitively rejected RFE/RL's request for an agreement extending the prior terms and conditions to April. *Second*, USAGM has definitively rejected nearly all of RFE/RL's objections to the new terms—RFE/RL keeps asking for them to be deleted; USAGM keeps retaining them and refusing to explain or even discuss them. *Third*, USAGM is unreasonably and indefinitely dragging out these purported negotiations—never making meaningful progress, repeatedly going silent for long periods, and then doing just enough, usually in the hours before Defendants' counsel will be appearing before the court, to maintain the pretense that there is still a process.

In short, these are not "active negotiations," Opp. 16, but Potemkin negotiations. Their point is not to get to yes but to get nowhere. That way, Defendants believe, they can continue

---

[1] Counsel for Defendants represent, without citing evidence, that "on April 21, 2025, [USAGM] twice tried to reach out to Plaintiff by phone to discuss the matter." Opp. 6. Defendants do not represent that they left any voicemail or other message that day or that they called from a number identifiable as from USAGM.

withholding RFE/RL's congressionally appropriated funds while insisting that there is no agency action (or inaction) for this Court to review. It is time to put an end to this ruse.

## II. RFE/RL Is Likely to Succeed on the Merits.

### A.    This Court Has Jurisdiction.

Defendants concede that this Court has already rejected their jurisdictional objection, Opp. 8 n.1, *see Widakuswara v. Lake*, --F. Supp. 3d--, 2025 WL 1166400, at *9–10 (D.D.C. Apr. 22, 2025), so RFE/RL will not belabor the point. RFE/RL merely adds that Defendants' jurisdictional argument here is even weaker than it was in *Widakuswara*. It is simply not true that RFE/RL seeks "specific performance" of a contract. Opp. 2. There *is no contract* to enforce because USAGM, in violation of the law and the APA, is refusing to enter into a lawful and reasonable grant agreement and to disburse RFE/RL's congressionally appropriated funds.

It makes no sense for Defendants to say RFE/RL should have brought this case in the Court of Federal Claims. *See* Opp. 9. RFE/RL would have been laughed out of that court—what relief could that court order when there is no contract Defendants could be said to have breached? *See, e.g.*, *Brach v. United States*, 443 F. App'x 543, 546 (Fed. Cir. 2011) (unpublished) ("To invoke the court's jurisdiction" a plaintiff must "allege the existence of a contract as a basis for relief."). RFE/RL claims that Defendants are breaking the *law* by refusing to *enter into* a lawful and reasonable grant agreement. Only a Federal District Court can hear such a claim.

RFE/RL's motion pointed to a multitude of APA cases reviewing an agency's grant or contract conditions that a plaintiff alleges to be unlawful or unreasonable. Pl.'s Mem. Supp. Mot. Prelim. Inj. ("Mem.") 16, 22–23, 27, 36, ECF 41-1. That included two D.C. Circuit cases. *See id.* (first citing *SecurityPoint Holdings, Inc. v. TSA*, 769 F.3d 1184 (D.C. Cir. 2014); and then citing *Doe v. Devine*, 703 F.2d 1319, 1326 (D.C. Cir. 1983)). It is striking that Defendants ignore this authority, including binding precedent, that is incompatible with their argument.

**B.      There Are Three Forms of Reviewable Agency Action or Inaction.**

As noted above, Defendants have transparently calculated their actions to evade APA review.  They have not succeeded.  There are three distinct forms of action or inaction that are reviewable.

**1.      Defendants' Rejection of an April Extension Agreement**

As explained above, RFE/RL has asked Defendants multiple times to enter into a one-month agreement extending the previous terms and conditions into April, exactly as USAGM did with respect to March, to provide breathing space for a real negotiation.  USAGM has not once responded.  RFE/RL even told USAGM that it understood this request to have been rejected, and asked USAGM if that understanding was mistaken.  Still USAGM did not respond.  There is therefore no question that USAGM made a final decision to refuse a one-month extension agreement for April.

In its PI motion, RFE/RL argued that "Defendants' unexplained refusal" to enter into a one-month agreement for April "is itself arbitrary and capricious" agency action.  Mem. 2; *see also* Pl.'s Notice Regarding Recent Development 2, ECF 42 (explaining that this refusal "is plainly reviewable final agency action at this point").  Defendants' opposition does not respond: it does not dispute that the refusal is final agency action, and it does not dispute that this action was arbitrary and capricious.

The final agency action requirement is not jurisdictional, and thus waivable. *See Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("[T]he requirement of finality is not jurisdictional."); *John Doe, Inc. v. DEA*, 484 F.3d 561, 565 (D.C. Cir. 2007) ("[T]he requirement of 'final agency action' is not jurisdictional.").  Defendants have waived any finality challenge to this action, as well as any defense of that action on the merits.  *See Bonumose, Inc. v. FDA*, 747 F. Supp. 3d 211, 224 (D.D.C. 2024) ("[T]he absence of a final agency action constitutes

6

a defense to an APA claim, but it is not a jurisdictional hurdle to review. The defense, therefore, is waivable, and the FDA's failure to raise it means that it is conceded." (citation omitted)). As part of its preliminary injunction order, this Court should specifically enjoin Defendants to immediately enter into an agreement extending the previous terms and conditions to April, in materially identical terms to the March agreement between the parties, and to immediately disburse RFE/RL's April funding in the amount of $12,178,590.[2]

### 2. Defendants' Unwavering Insistence on the Challenged Conditions and Rejection of RFE/RL's Objections

Defendants have also made a final decision not to enter into a grant agreement with RFE/RL unless RFE/RL accepts a host of conditions that are unlawful, unreasonable, impossible to comply with, and/or would place RFE/RL in immediate breach through no fault of its own. Defendants' only response is to wildly misstate the issue before the Court.

According to Defendants, the question is whether "sending a contract or grant proposal" is final agency action. Opp. 15; *see also* Opp. 16 (describing the action at issue as "[s]ending an *unsigned* grant agreement to a grantee"). The reason this is not final agency action, Defendants say, is that RFE/RL "can engage with USAGM regarding its concerns," and "provide a redline as USAGM has asked it do." Opp. 16.

Here's the problem: *that is what RFE/RL has been trying to do, without success*. On April 16, RFE/RL *did* "provide a redline as USAGM has asked it to do." *See* Opp. 5, 16; RFE/RL Emails with USAGM at 4–6, Second Lataille Decl. Ex. 1, ECF 41-6. RFE/RL keeps attempting to delete the provisions it objects to; it has explained the reasons for its objections; and

---

[2] In light of Defendants' apparent intent to appeal any preliminary injunction, the inclusion by this Court of specific relief governing April (as distinct agency action that is arbitrary and capricious) in any injunction will facilitate the D.C. Circuit's review.

it has asked USAGM to explain why these provisions are needed.  *Supra* Section I.  Put differently, RFE/RL *has* tried to "engage with USAGM regarding its concerns."  Opp. 16.  But it takes two to engage.  Every time RFE/RL objects to the problematic provisions, USAGM retains them without discussion or explanation.  And when RFE/RL has tried to discuss the reasons for its objections, USAGM has ignored RFE/RL.  When an agency keeps insisting on something and refuses to discuss objections, a good word for that action is "final."  *See Giuseppe Bottiglieri Shipping Co. S.P.A. v. United States*, 843 F. Supp. 2d 1241, 1247 (S.D. Ala. 2012) (finding final agency action where the agency has not shown that it "established these terms on a tentative or interlocutory basis, that it is amenable to further negotiation of them, or that it has been even slightly receptive to petitioners' recent efforts to reopen those discussions").

Defendants completely ignore the D.C. Circuit's decision in *SecurityPoint*.  *See* Mem. 23 (explaining why Defendants' actions are final under *SecurityPoint*).  In *SecurityPoint*, the agency sent contracting parties an "MOU template" making certain changes.  769 F.3d at 1186–87. SecurityPoint sent two letters opposing the changes.  *Id.* at 1187.  The agency's chief counsel responded in a letter adhering to the agency's changes to the contractual language, but "not address[ing]" SecurityPoint's key contentions.  *Id.* at 1187–88.  The D.C. Circuit found this to be not just final agency action, but arbitrary and capricious final agency action.  *Id.*  This case is no different: USAGM demanded changes to the grant agreement terms it had agreed to mere weeks earlier; RFE/RL objected and explained why; and USAGM adhered to its changes without explanation.  Under *SecurityPoint*, that is final agency action.

Defendants invite this Court to consider "the logical consequence" of the parties' positions. Opp. 20.  That is a good idea.  The logical consequence of Defendants' position is that they can indefinitely maintain a pretense of negotiating, sending insignificant revisions every week or so,

while never budging on or even being willing to discuss their most unlawful and unreasonable demands. All the while, Defendants believe, they can wait while their "negotiating partner" is starved of funds that enacted legislation mandated it receive. And they can maintain their unlawful refusal to enter into a genuine grant agreement, their unlawful withholding of congressionally appropriated funds, and ultimately their destruction of RFE/RL, without ever taking reviewable action. To put it mildly, that makes a mockery of the "flexible" and "pragmatic" standard for final agency action. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986).

### 3. Defendants' Unlawful and Unreasonable Inaction

Defendants' argument that there is no agency action unlawfully withheld is also mistaken.

RFE/RL has demonstrated that it has a clear and indisputable right to relief and that Defendants are violating a clear duty to act.[3] The statute is unambiguous: USAGM "shall" "make annual grants" to RFE/RL "in compliance with a grant agreement" which "shall establish guidelines for such grants." 22 U.S.C. § 6207(f), (g). As the agency has previously acknowledged, this language "*dictate[s]* how the CEO [of USAGM] *must* exercise his § 6204 grant-making authority when dealing with [RFE/RL]." Def.'s Opp. to Pls.' Mot. TRO at 4, *Open Tech. Fund v. Pack*, No. 20-cv-1710, ECF 7, 2020 WL 7041426 (D.D.C. filed June 26, 2020) (emphases added).

The statute thus plainly imposes on USAGM a mandatory duty to make grants available to RFE/RL in compliance with a grant agreement that establishes guidelines for such grants. That is a discrete, nondiscretionary duty.

---

[3] Contrary to Defendants' contention, in the context of claims that agency action is unlawfully withheld, "there is no precedent that supports a rule that requires a district court to apply judicially-created mandamus rules to the text of the APA.… [N]either the Supreme Court's decision in *SUWA* nor any other precedent compels such a proposition." *South Carolina v. United States*, 907 F.3d 742, 757 (4th Cir. 2018). It is only with respect to unreasonably delayed actions that "the standards for obtaining relief" under the APA and via mandamus "are essentially the same." *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). In any event, assuming that the three-element mandamus test applies here, it is readily satisfied.

Defendants are not complying with that duty. Defendants have not disputed that the grant terms that they have repeatedly insisted on are unlawful, unreasonable, and unworkable. Defendants have thus not made available to RFE/RL an annual grant via a grant agreement containing guidelines for such a grant. Defendants' argument to the contrary turns the statutory scheme on its head. The issue is not whether "with no grant agreement currently in place, Plaintiff cannot establish any lawful entitlement to the lump sum payment that it seeks." Opp. 18. Rather, the point is that Plaintiff is indisputably entitled to its appropriations, and Defendants cannot withhold those funds simply by refusing to provide a *bona fide* grant agreement. That withholding cannot possibly be what Congress intended: the grant agreement is simply a mechanism by which the funds are to be disbursed, not a source of unreviewable discretionary authority by which Defendants can effectuate the withholding of funding to RFE/RL.

Defendants also claim that they have complied with any duty because, they continue to insist, they are "actively involved in contract negotiations" and "Plaintiff can earnestly negotiate the grant agreement." *Id.* Those assertions are contrary to the record. *See supra* Section I.

Defendants do get one point right: the statute does provide that grants "shall *only* be made in compliance with a grant agreement." 22 U.S.C. § 6207(g) (emphasis added). For that reason, there is "no adequate alternative remedy" other than compelling Defendants to make available a *bona fide* grant agreement to RFE/RL. This Court should compel Defendants to do so.

### C. Defendants' Unlawful, Unworkable, and Unreasonable Conditions Are Reviewable and Not Committed to Agency Discretion by Law.

"The Administrative Procedure Act embodies a basic presumption of judicial review." *Dep't of Com. v. New York*, 588 U.S. 752, 771 (2019) (cleaned up). Courts interpret the "exception for action committed to agency discretion quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against

which to judge the agency's exercise of discretion." *Id.* at 772.  Even where a statute confers "broad discretion," agency action remains reviewable unless "the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised." *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020).  The "defendants must rebut the presumption that agency action is judicially reviewable." *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007).  For several reasons, Defendants have failed to demonstrate that this narrow exception to judicial review applies here.

*First*, this is not a case where there is "no law to apply." *Dep't of Com.*, 588 U.S. at 773. To the contrary, RFE/RL's position is that the grant agreement expressly *violates* the law by imposing conditions that Congress directly rejected.  Mem. 2, 28–30.  Specifically, Congress expressly repealed USAGM's prior authority to condition grants on USAGM having the ability to determine membership of RFE/RL's board.  *Id.* at 28–29.  The Court can thus plainly review whether USAGM has the power to impose *that* condition—courts decide all the time whether agencies acted within their statutory authority, and the judicial task could hardly be easier when an agency asserts an authority *that Congress recently repealed*.  Defendants' position that this "is not the authority at issue here" is confounding, Opp. 19 n.3, when that is precisely the authority the agency seeks to claim under its grantmaking responsibility.[4]

In addition, RFE/RL has identified three statutory limitations that apply here: (1) that grants "shall be available"—not unavailable—to RFE/RL, 22 U.S.C. § 6207(f); (2) that the grant agreement "shall establish guidelines for such grants," *id.* § 6207(g); and (3) that the USAGM

---

[4] The dicta in *Open Technology Fund v. Pack*, which addressed USAGM's unilateral replacement of both the grantee's head and board, that the USAGM CEO has "broad, unilateral powers over grant-making," pre-dates Congress's removal of these authorities from the CEO.  470 F. Supp. 3d 8, 31 (D.D.C. 2020).

CEO "shall respect the professional independence and integrity of … the grantees of the agency," *id.* § 6204(b).  Defendants offer no argument disputing that these provisions provide law for the Court to apply: it may review whether a *bona fide* grant has in fact been "made available," whether the imposed conditions go beyond "guidelines," and whether the conditions "respect [RFE/RL's] professional independence and integrity."  *See Devine*, 703 F.2d at 1325–26 & n.30 (making clear that courts may review "an agency's negotiation of a contract" to determine whether it is "consistent with the governing law and not unreasonable," and rejecting the argument that "there is no law to apply").

The main authority on which Defendants rely, Opp. 19 (citing *Lincoln v. Vigil*, 508 U.S. 182 (1993)), proves the point.  There, the Court found that "[t]he allocation of funds *from a lump-sum appropriation* is another administrative decision traditionally regarded as committed to agency discretion."  *Lincoln*, 508 U.S. at 192 (emphasis added).  But the Court made clear that "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes."  *Id.* at 193.  Congress did just that here.

*Shawnee Tribe v. Mnuchin*, 984 F.3d 94 (D.C. Cir. 2021), is instructive.  In that case, the D.C. Circuit held that the agency action at issue was *not* committed to agency discretion by law where the statute directed the Treasury Secretary to make payments to certain governmental entities within a specified timeframe for "necessary expenditures incurred" due to the COVID-19 pandemic.  *Id.* at 100.  The court noted that the Treasury Secretary's discretion had to be read in light of other statutory provisions, including one ensuring "all amounts available … are distributed" to the entities.  *Id.* (citation omitted).  Here, whatever discretion the agency may have in administering the grant program, it unquestionably has a duty to make grants "available" to

RFE/RL and to distribute the funds Congress said shall be allocated to it.  22 U.S.C. § 6207(f).  If an agency simply refuses to make a grant genuinely available, of course a court can review that.

USAGM's ability to "establish guidelines" for the grants does not preclude the court from reviewing the agency's withholding of RFE/RL's funds.  22 U.S.C. § 6207(g).  As already discussed, *see* Mem. 30–31, "[g]uidelines" are "more or less brief statements of policy … presumed to be for general guidance, as distinguished from detailed compliance," *Guidelines*, Mellinkoff's Dictionary of American Legal Usage (1992).  The Grant Agreement's onerous micromanagement of RFE/RL goes far beyond "guidelines," and warrants judicial review.[5]

*Second*, even if the statute lacked clear restrictions, "courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal.  If the agency action is found not to be reasonably consistent with this goal, then the courts must invalidate it." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985).  *Robbins* is dispositive here.  There, the D.C. Circuit found that statutory language authorizing the making of grants that are "related to the purposes" of the relevant statute "provides sufficient guidance" to a reviewing court such that the agency's action was reviewable.  *Id.* at 48.  Here, both the "general goal" and the specific language of the International Broadcasting Act are clear: grants "shall be available … for the purpose of carrying out" RFE/RL's functions.  22 U.S.C. § 6207(f).  So is the general goal of the recent appropriations law: a specific sum of money "shall be allocated" specifically to RFE/RL.  Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 735 (2024).  Defendants' imposition of a grant agreement with patently unreasonable terms that would

---

[5] Defendants argue that the "statute commits … establishment of grant guidelines *and terms*" to the agency, Opp. 19 (emphasis added), but point to no statutory language permitting the agency to establish "terms."

necessarily result in termination of the grant shortly after its execution is not "reasonably consistent" with these statutory goals.

*Third*, and relatedly, the Court has jurisdiction to review whether Defendants' actions amount to abandonment of the relevant statutory mandates. As another court held in the context of contract termination: "Courts have consistently distinguished between an agency's discretion in how it *implements* statutory mandates (which may, in some instances, be unreviewable) and an agency's attempt to *abandon* those mandates entirely (which is always reviewable)." *Pacito v. Trump*, 2025 WL 893530, at *6 (W.D. Wash. Mar. 24, 2025). Here, RFE/RL has demonstrated that these grant conditions, which inevitably would create a pretext for USAGM to terminate the grant and cut off all funding, amount to an abandonment of USAGM's obligation to make grants "available" to RFE/RL and to establish "guidelines" for such grants. *See* Mem. 30–31.[6]

*Finally*, contrary to Defendants' suggestion, courts do review agency decisions to impose contractual provisions under the APA to determine whether they are arbitrary or capricious. For example, the D.C. Circuit found a Transportation Security Administration decision to mandate a contractual provision requiring airports to provide certain indemnities to the agency to be arbitrary. *SecurityPoint*, 769 F.3d at 1189. And the D.C. Circuit has also held that courts can review "an agency's negotiation of a contract" to ensure that it is "not unreasonable." *Devine*, 703 F.2d at 1326. RFE/RL cited these cases in its motion. *See* Mem. 16, 23, 27, 36–37. Defendants ignore that precedent, and offer no support of their own for the notion that courts cannot possibly review the "reasonableness" of the "terms" of a contract. Opp. 20.

---

[6] While it is not necessary for the Court to reach the issue, judicial review is available even where the "committed to agency discretion" exception otherwise would apply, where there are "facts adduced in support of a claim of … bad faith, fraud, or conscious wrongdoing." *Curran v. Laird*, 420 F.2d 122, 131 (D.C. Cir. 1969). Defendants' course of conduct may rise to that level.

To be clear, RFE/RL is not asking the Court to go "line by line through the grant agreement" to evaluate each and every term. *Id.* Instead, RFE/RL is asking that the Court review the grant provisions that RFE/RL contends are contrary to law or arbitrary and capricious, to determine whether Defendants have complied with the relevant statutory directives (including their legal obligation to make a grant "available" to RFE/RL), and to consider whether the agency's actions are reasonable and reasonably explained. Defendants have not complied with these requirements, and their decision not to comply is judicially reviewable.

### D.    This Court Has Authority to Order Defendants to Take All Steps Necessary to Disburse RFE/RL's Congressionally Appropriated Funding.

Defendants miss the point entirely when they say that RFE/RL "has no legal basis to seek disbursement of funds absent a grant agreement." Opp. 13. The reason there is no grant agreement in place is *because of the unlawful action RFE/RL is challenging*.

RFE/RL is asking the Court to enjoin Defendants from requiring unlawful and unreasonable grant conditions, and to enter into a lawful and reasonable grant agreement, as they are obligated by statute to do. And since Defendants are doing all of this in order to avoid their statutory obligation to allocate appropriated funds to RFE/RL through grants, RFE/RL seeks an injunction requiring Defendants to cease withholding the funds that Congress specifically allocated to RFE/RL in a law that President Trump signed. *See* Mem. 7. These requests are entirely compatible with the statutory provision that grants are to be "made in compliance with a grant agreement." *Id.* (quoting 22 U.S.C. § 6207(g)). Once USAGM enters into a lawful and reasonable grant agreement (which it clearly will not do unless ordered by this Court), the purported statutory barrier to disbursing the funds will disappear.

This Court is fully empowered to enter the order RFE/RL has requested. The new terms and conditions that Defendants have imposed are unlawful, arbitrary, and capricious, and this

Court has authority to set aside such agency action.  5 U.S.C. § 706(2).  It also has authority to "compel agency action unlawfully withheld."  *Id.* § 706(1).  The agency has a statutory obligation to make grants "available" to RFE/RL.  22 U.S.C. § 6207(f).  As Defendants do not dispute, the new conditions make the grant illusory—or in other words, unavailable.  *See* Mem. 30.  This Court can of course compel Defendants to do what the law requires, *i.e.*, enter into a grant agreement without unlawful conditions, and pursuant to that agreement disburse the funds that Congress said shall be allocated to RFE/RL.

Defendants' "specificity" objection to the requested relief, *see* Opp. 24–25, is equally baseless.  Regrettably, more specificity than RFE/RL's original request is probably necessary— not because Rule 65 demands it, but because Defendants' conduct in this litigation makes clear they will go to great lengths to avoid their obligations.  RFE/RL has accordingly spelled out its request in more detail.  Defendants should be enjoined to enter into an April "mini agreement" on the same terms as the March one, since they do not dispute that their failure to do so is both final agency action and arbitrary and capricious.  Defendants should be enjoined from imposing the conditions listed at pages 28–36 of RFE/RL's PI memorandum—relief that Defendants cannot possibly complain about, since they do not dispute the unlawfulness and unreasonableness of those conditions.  And Defendants should be enjoined to immediately enter into a master grant agreement that does not include terms materially different from the FY 2024 master agreement or the version of the FY 2025 master agreement the parties finished negotiating in February.  To be clear, it would be *better* if Defendants could be trusted to comply in good faith with a less detailed

injunction.  But because they essentially admit they will not do so, RFE/RL respectfully asks the Court to grant its modified injunction request.[7]

### III.  The Remaining Factors Favor Granting the Preliminary Injunction.

#### A.    RFE/RL Has Demonstrated Irreparable Harm.

Defendants do not offer any meaningful argument that RFE/RL has failed to demonstrate irreparable harm.  First, they argue that RFE/RL can "engage with USAGM" to negotiate and sign a grant agreement, or alternatively bring suit in the Court of Federal Claims.  Opp. 21.  For the reasons given above, neither of those options is viable.  RFE/RL *already tried* engaging with USAGM, but USAGM would itself not engage.  And the Court of Federal Claims does not have jurisdiction when there is *no contract* and the claim is that an agency violated a statutory obligation to enter into a lawful and reasonable agreement.

Second, the Government argues that RFE/RL has only alleged economic harms.  But RFE/RL has demonstrated an imminent, undisputed threat to its very existence.  As the uncontested evidence RFE/RL has submitted demonstrates, RFE/RL is in substantially the same dire economic condition it was back in March, when the Court granted the TRO.  *See* Third Capus Decl. ¶ 2, ECF 28-5.  Accordingly, the Court's prior finding that there is irreparable harm because "RFE/RL would be forced to break lease agreements, terminate employment contracts—thus

---

[7] Defendants also suggest that RFE/RL faces a "heightened burden" to obtain a mandatory injunction.  Opp. 7–8, 24.  But "[i]n this circuit, … no case seems to squarely require a heightened showing." *Friends for All Child., Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n.31 (D.C. Cir. 1984); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 159 F.3d 636 (D.C. Cir. 1998) (unpublished) ("We need not reach the question whether the district court erred in holding that the standard applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction…."); *see also Minney v. United States Off. of Pers. Mgmt.*, 130 F. Supp. 3d 225, 231 n.6 (D.D.C. 2015) ("The D.C. Circuit, however, has yet to address whether plaintiff carries a heightened burden and this Court, as such, declines to impose a heightened standard of persuasion.").  In any event, "assuming its applicability, the higher standard is fully met here" given the showing RFE/RL has made on each preliminary injunction factor.  *Friends*, 746 F.2d at 834 n.31.

destroying the credibility RFE/RL has built over decades—and cease all other operations," Order

Granting TRO 7, ECF 14, remains just as true today.

### B.    The Balance of the Equities and the Public Interest Favor RFE/RL

Defendants simply ignore the Court's prior, well-reasoned analysis as to why the final two

factors favor RFE/RL. *Id.* at 8–9.  Those same reasons continue to favor RFE/RL today.

## IV.    A Bond Should Not Be Required.

For the reasons this Court has previously given, a bond should not be required here.

*See Widakuswara*, 2025 WL 1166400, at *17.

**CONCLUSION**

For the reasons set forth herein, the Court should grant the motion for a preliminary

injunction.


April 27, 2025                                    Respectfully submitted,


                                                 /s/ Marney L. Cheek
                                                 Marney L. Cheek (D.C. Bar No. 470596)
                                                 David M. Zionts (D.C. Bar No. 1013523)
                                                 Thomas Brugato (D.C. Bar No. 995170)
                                                 COVINGTON & BURLING LLP
                                                 850 Tenth Street NW
                                                 Washington, DC 20001-4956
                                                 (202) 662-6000
                                                 mcheek@cov.com
                                                 dzionts@cov.com
                                                 tbrugato@cov.com

                                                 *Attorneys for Plaintiff RFE/RL, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2025, I filed the foregoing document and all attachments with the Clerk of Court for the United States District Court for the District of Columbia using the court's CM/ECF filing system, which will send notification of such filing via e-mail to all counsel of record.

Respectfully submitted,

/s/ Marney L. Cheek
Marney L. Cheek (D.C. Bar No. 470596)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
mcheek@cov.com

*Attorney for Plaintiff RFE/RL, Inc.*

19