## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RFE/RL, INC.,** | |
| *Plaintiff*, | |
| **v.** | **Case No. 1:25-cv-799-RCL** |
| **KARI LAKE**, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media, *et al.*, | |
| *Defendants*. | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Plaintiff RFE/RL's Motion [ECF No. 41] for a Preliminary Injunction ("PI") seeking to enjoin the defendants, the U.S. Agency for Global Media ("USAGM") and the acting leadership of the agency, to restore disbursement of RFE/RL's congressionally appropriated funds on a monthly basis pursuant to a lawful and reasonable grant agreement pending resolution of this lawsuit.  For the reasons contained herein, the Motion will be **GRANTED IN PART** and **DENIED IN PART**.  The Court will **GRANT** RFE/RL's relief as it pertains to Fiscal Year ("FY") 2025, which ends on September 30, 2025, but will **DENY** the requested relief at this time as it pertains to the inclusion of specific provisions in future grant negotiations between the parties for subsequent fiscal years.

## I.    BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case, detailed at length in numerous opinions.  *See RFE/RL, Inc. v. Lake*, --- F. Supp. 3d ---, No. 25-cv-799-RCL, 2025 WL 1232863 (D.D.C. Apr. 29, 2025) ("April TRO") (providing an overview of the typical grantmaking process between RFE/RL and USAGM, and ordering the defendants to

1

disburse congressionally appropriated funding to RFE/RL for the month of April); *RFE/RL, Inc. v. Lake*, No. 25-cv-799-RCL, 2025 WL 156307 (D.D.C. May 30, 2025) ("May TRO") (same, for the month of May); *RFE/RL, Inc. v. Lake*, No. 25-cv-799-RCL, ECF No. 66 ("June TRO") (same, for the month of June); *Widakuswara v. Lake*, --- F. Supp. 3d ---, No. 25-cv-1015-RCL, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ("*Widakuswara* PI") (ordering the defendants to restore FY 2025 grants with two USAGM networks, Radio Free Asia and Middle East Broadcasting Networks, but denying similar relief to RFE/RL given the active nature of the parties' negotiations); *RFE/RL, Inc. v. Lake*, --- F. Supp. 3d ---, No. 25-cv-799-RCL, 2025 WL 900481 (D.D.C. Mar. 25, 2025) (enjoining the "closeout responsibilities" that the defendants imposed on RFE/RL in their grant termination letter).  The Court reproduces below only those facts as necessary to resolve the pending motion for a preliminary injunction.

### A.  Factual and Procedural History

Congress has appropriated funds for RFE/RL every year since the enactment of the International Broadcasting Act of 1987.  First Decl. of Stephen Capus, President & CEO of RFE/RL ("First Capus Decl.") ¶ 11, ECF No. 6-3.  As is relevant here, on March 15, 2025, President Trump signed into law the Full-Year Continuing Appropriations and Extensions Act, 2025, which appropriated approximately $77 million for RFE/RL to cover the period from March 15 to September 30, 2025.  *Id.* ¶ 20.[1]

Every year, to facilitate distribution of congressional appropriations, USAGM and RFE/RL negotiate and enter into a Master Grant Agreement.  *Id.* ¶¶ 13–24; *see also* International

---

[1] On July 18, 2025, Congress approved a rescission package regarding funds previously appropriated to the Corporation for Public Broadcasting for FY 2025.  *See* Rescissions Act of 2025, H.R. 4, 119th Cong. (as passed by the Senate, July 18, 2025).  That rescission package does not impact the funds that have been appropriated to RFE/RL.  However, the Court observes that it does reflect the administration's knowledge of the proper procedure for clawing back appropriated monies—a procedure which is glaringly absent in this lawsuit and the companion lawsuits before this Court regarding USAGM's other network grantees.

Broadcasting Act, 22 U.S.C. § 6207 (requiring USAGM to make grants specifically to RFE/RL). The most recent annual grant agreement between the parties was the FY 2024 Master Grant Agreement.  Following the passage of the First Continuing Resolution, which extended FY 2024 appropriations through December 20, 2024, USAGM and RFE/RL executed a preliminary grant agreement that extended the terms and conditions of the FY 2024 Master Grant Agreement.  April TRO at *2.  And following the passage of the Second Continuing Resolution, USAGM executed another preliminary grant agreement under those same terms, obligating funds to RFE/RL through February 28, 2025.  *Id.* at *3.

In mid-February, before the expiration of the second preliminary grant agreement, the parties negotiated a master grant agreement to cover the balance of FY 2025 from February 28 to September 30, 2025.  The negotiations lasted for about two weeks, with USAGM requesting RFE/RL's final signature on February 27, 2025.  RFE/RL promptly signed that same day, but USAGM never countersigned and the FY 2025 agreement never took effect.  *See* April TRO at *2 (providing more detail of this recent negotiation).

On March 14, 2025, President Trump announced Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," which orders the elimination of "non-statutory components and functions" of USAGM "to the maximum extent consistent with the applicable law."  The next day, RFE/RL received a letter from USAGM terminating RFE/RL's grant, stating that RFE/RL "no longer effectuates agency priorities."  April TRO at *3.

RFE/RL filed this lawsuit on March 18.  *See* Compl., ECF 1.  The case has evolved significantly since this lawsuit was first filed.  *See* April TRO at *3–4 (detailing the evolution of the proceedings up to the filing of the instant preliminary injunction motion).  As is relevant here, on March 26, USAGM rescinded its termination of RFE/RL's grant and the parties entered into

another preliminary grant agreement to disburse the March 2025 appropriations, subject to the same conditions as the FY 2024 grant. *See* First Decl. of Joseph Lataille, Chief Financial Officer of RFE/RL ("First Lataille Decl.") ¶ 9, ECF No. 33-1. That preliminary grant agreement expired at the end of March with no FY 2025 agreement in place.

On April 9, USAGM sent a "proposed" master grant agreement to RFE/RL to cover the balance of FY 2025. This new master grant agreement contained numerous provisions that have never been in RFE/RL's previous grants, many of which RFE/RL viewed as unreasonable poison pills.[2] That same day, RFE/RL filed a renewed motion for a TRO (the "April TRO Mot."), stating that the new provisions were "flagrantly illegal" and designed to "set up RFE/RL for failure[] and give USAGM complete control over RFE/RL." April TRO Mot. at 2, ECF No. 28. RFE/RL sought immediate disbursement of its appropriated funds for April "under the same terms and conditions that were previously in effect and governed the funds disbursed in March 2025." *Id.* at 1.

The Court initially withheld ruling on the April TRO Motion. Instead, the Court held several status conferences with the parties to coordinate the filing of a preliminary injunction motion and the parallel proceedings in *Widakuswara v. Lake*, given the significant overlap in issues presented in that case. On April 22, 2025, the Court issued the *Widakuswara* PI, restoring USAGM's FY 2025 grant agreements with Radio Free Asia and Middle East Broadcast Networks

---

[2] For example, the new agreement included a provision that would allow USAGM to determine the membership of RFE/RL's Board—an authority that Congress specifically repealed. *See* National Defense Authorization Act for Fiscal Year 2023, Pub. L. 117-263, 136 Stat 2395, 3915 (2022). To date, USAGM has still refused to remove this provision or even discuss it with RFE/RL, other than insisting that its proposed terms are "reasonable."

through September 30, 2025, but denying relief to RFE/RL because of the ongoing nature of the FY 2025 grant negotiations.[3] *Widakuswara* PI at *12 n.23.

The same day the Court issued the *Widakuswara* PI, RFE/RL filed the instant motion for a preliminary injunction seeking an order requiring USAGM's entry into a grant agreement for the balance of 2025. Pl.'s Mot. for Prelim. Inj. ("PI Mot."), ECF No. 41. RFE/RL characterized the defendants' imposition of unreasonable grant conditions and evasive negotiating tactics as "transparent pretext to achieve their objective of shutting down RFE/RL." *Id.* at 3. Specifically, since April 9, the only change USAGM made to their version of the master grant agreement was to extend certain 24-hour deadlines to 14-day deadlines, while still refusing to budge on or even engage in discussion regarding what RFE/RL called the "most egregious" provisions. *Id.* at 9–10; *see* Emails Between USAGM and RFE/RL, PI Mot. Ex. 1 at 4, ECF No. 41-6 (USAGM representing in an April 16 email to RFE/RL that "the agency is willing to change most of the 24-hour deadlines to 14 days"). Everything else remained unchanged. Viewing the negotiations as futile, RFE/RL emphasized its urgent need for funding and referred back to the pending April TRO motion by asking the Court to "promptly enter a TRO concerning April funds while the Court considers a preliminary injunction." *Id.* at 2. The defendants soon thereafter filed an Opposition, challenging this Court's jurisdiction to enter the requested relief and insisting that negotiations were active and ongoing. Resp. to Pl.'s Mot. for Prelim. Inj. ("Opp'n"), ECF No. 44. On April 28, the Court held a hearing on RFE/RL's preliminary injunction motion and the April TRO Motion. Min Entry for Mot. Hr'g Apr. 28, 2025.

---

[3] As context, Radio Free Asia and Middle East Broadcast Networks had already executed FY 2025 grants with USAGM. USAGM terminated those grants, and USAGM never rescinded those terminations. Thus, in granting the *Widakuswara* PI, the Court reviewed USAGM's termination of those FY 2025 grants as "final agency action" reviewable under the APA. *See Widakuswara* PI at *12. RFE/RL sits in a different posture because RFE/RL and USAGM never successfully entered a FY 2025 grant.

The next day, on April 29, the Court entered the April TRO ordering the disbursement of RFE/RL's April funds "under the same terms and conditions applicable to the most recent master grant agreement between the parties, in materially identical terms to the agreement between the parties pertaining to March 2025."  April TRO at *10.  In other words, the Court ordered an "extender" or "mini-agreement" mirroring the March preliminary grant agreements.  April TRO at *10.  The Court reserved ruling on the preliminary injunction motion, however, because the Court only intended to "to throw RFE/RL a lifeline while negotiations could meaningfully take place."  April TRO at *7.

But the negotiations soon broke down even further.  By the end of May, the parties had still made no progress towards reaching an agreement.  RFE/RL filed a new TRO motion seeking access to its May funding, reporting that "[a]ll that USAGM has done since this Court's April 29, 2025 TRO is send RFE/RL different iterations of the same email—punctuated by multiple days of silence—failing to engage with RFE/RL's substantive objections."  May TRO Mot. at 1, ECF No. 56-1.  The Court, finding that "the parties [were] in virtually the exact same situation that they were in one month ago," adopted its reasoning from the April TRO and granted RFE/RL's motion.  *See* May TRO *1–2.

Thereafter, USAGM simply stopped responding to RFE/RL.  RFE/RL reached out to USAGM three times in the month of June, and all three emails went unanswered.  *See* Fourth Decl. of Joseph Lataille, Chief Financial Officer of RFE/RL ("Fourth Lataille Decl.") at ¶¶ 2–6, ECF No. 62-2.  USAGM has provided no explanation, to either RFE/RL or this Court, for its continued silence.  Near the end of June, RFE/RL filed another TRO Motion seeking access to its June funding.  The Court, left with "no choice but to conclude, based on the record before it, that USAGM has no intention of negotiating with RFE/RL or ever distributing the congressionally

appropriated funds absent court intervention," granted its third identical TRO to keep RFE/RL afloat. June TRO at 2–3.

Rather than continue this predictable and unfortunate pattern, the Court turns to the instant preliminary injunction, which is now ripe for review.[4]

## II.    LEGAL STANDARDS

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). It is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "Where, as here, the government is a party, the latter two factors of the preliminary analysis merge into one, because the interest of the government is taken to be identical to the interest of the public." *RFE/RL*, --- F.Supp.3d at ---, 2025 WL 900481, at *2 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts in this Circuit have adopted a "sliding scale"

---

[4] For the sake of comprehensiveness, the Court briefly recounts the appellate proceedings in this case. On May 1, the defendants appealed the April TRO to the D.C. Circuit. *See* Notice of Interlocutory Appeal, ECF No. 50. On May 7, the D.C. Circuit motions panel issued a stay of the April TRO, *see* Order, *RFE/RL, Inc. v. Lake*, No. 25-5158, (D.C. Cir. May 7, 2025), Doc. #2114775, but the court sitting *en banc* subsequently issued an administrative stay of the motions panel stay, *see* Order, *RFE/RL, Inc. v. Lake*, No. 25-5158 (D.C. Cir. May 7, 2025), Doc. #2114884. With the April TRO in effect, the defendants complied and disbursed RFE/RL's April funds. On May 22, 2025, having fully complied with this Court's TRO, the defendants filed a motion to dismiss their appeal voluntarily. Mot. to Dismiss Appeal, *RFE/RL, Inc. v. Lake*, No. 25-5158, Doc. #2117062. On July 1, the D.C. Circuit granted Defendants' motion for voluntary dismissal and denied RFE/RL's request to vacate the motions panel's stay order. *See* Order, RFE/RL, Inc. v. Lake, No. 25-5158 (D.C. Cir. July 1, 2025), Doc. #2123323. The *en banc* D.C. Circuit then denied RFE/RL's motion for reconsideration and dissolved the administrative stay of the motions panel's stay order. *See* Order, *RFE/RL, Inc. v. Lake*, No. 25-5158 (D.C. Cir. July 1, 2025), Doc. #2123325. No aspect of this case remains pending before the D.C. Circuit.

approach to the preliminary relief analysis, "whereby a relatively strong showing on one of these factors may partially offset weakness in another, although some non-speculative showing of irreparable harm is essential." *Id.* (citing *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

### III.    The Tucker Act Does Not Deprive this Court of Jurisdiction

The defendants maintain their position that this Court lacks jurisdiction because the Tucker Act directs this case to the Court of Federal Claims (CFC). The Tucker Act confers on the CFC jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

The Court remains unpersuaded by the defendants' argument and reiterates its holding from the April TRO: the Tucker Act does not deprive this Court of jurisdiction because RFE/RL's asserted rights are not based in any contract, but rather, are rooted in the International Broadcasting Act and the continuing resolutions to the 2024 Consolidated Appropriations Act. *See* April TRO at *4–5. To reiterate, there is currently *no existing contract* between the parties for disbursement of FY 2025 congressional appropriations. RFE/RL has not alleged the breach of any contract with the federal government—the extended FY 2024 grant agreement between the parties expired on its scheduled end-date on March 31. The issue presented by the pending motion is that the parties are at an impasse in trying to enter a *new* grant agreement. It would be nonsensical for this Court to send this case to the CFC, as the defendants insist, when there is no "express or implied contract" between the parties for the CFC to review.

### IV.    RFE/RL is Entitled to Relief on its APA Claim

The Administrative Procedure Act ("APA") permits judicial review of "final agency action" and requires a court to "hold unlawful and set aside agency action, findings, and

conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706(2)(A).  Broadly, RFE/RL argues that USAGM's decision to impose unlawful, unreasonable, and unworkable grant conditions violates the APA.  PI Mot. at 18, 28–38.

### A.  PI Factor 1: Likelihood of Success on the Merits

#### i.    *Final Agency Action*

To constitute final agency action: (1) "the action must mark the consummation of the agency's decisionmaking process" and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).  "The finality requirement" is applied in a "'flexible and pragmatic way."  *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986) (internal quotations omitted).  The Court addresses each *Bennett* prong in turn.

To recap, the record shows that USAGM transmitted a "proposed" grant agreement to RFE/RL on April 9, 2025.  The only change from this proposal that USAGM has even considered is extending the deadline for language deletion services from 24-hours to 14-days, which USAGM expressed a willingness to do in an email to RFE/RL on April 16.  But USAGM has stonewalled RFE/RL on every other issue, including provisions that would fundamentally change the decades-old working relationship between RFE/RL and USAGM—including increased oversight, expedited deletion of entire language departments, stringent reporting and audit requirements, and removal of professional independence.

When the defendants filed their PI opposition at the end of April, they represented that "USAGM is in active negotiations with [RFE/RL]" and insisted that, rather than obtaining preliminary relief from the Court, RFE/RL could instead "engage with USAGM regarding its

9

concerns about the grant terms." PI Opp'n at 16. As explained *supra*, the Court took USAGM at its word and granted only modest relief to keep RFE/RL operational while negotiations progressed. But now, over three months later, continuing to accept such a characterization would irresponsibly ignore the on-the-ground reality. USAGM has refused to engage with RFE/RL on the FY 2025 Master Grant Agreement for approximately seven weeks as of the date of this Opinion. Notice, ECF No. 68. And USAGM's total abdication of communication is taking place over a period in which monthly disbursements of congressional allocations would typically be occurring at the *beginning* of each month. In short, "the record does not show" that the agency "established these terms on a tentative or interlocutory basis, that it is amenable to further negotiation of them, or that it has been even slightly receptive to [RFE/RL's] recent efforts to reopen those discussions." *Giuseppe Bottiglieri Shipping Co. S.P.A. v. United States*, 843 F. Supp. 2d 1241, 1247 (S.D. Ala. 2012). At this point, the record supports only one conclusion—that USAGM has made a final decision to cease negotiations and instead present the FY 2025 grant agreement as a "take it or leave it" ultimatum to RFE/RL. Imposition of these grant conditions in the "proposed" FY 2025 grant agreement, which USAGM has not altered or changed in any way since April 16, constitutes "the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178.

The second prong of the *Bennett* test asks whether the agency action "determine[s]" "rights or obligations" or is an action from which "legal consequences will flow." *Bennett*, 520 U.S. at 178. Again, the Court resolves this question in the affirmative. Here, "legal consequences clearly flow from the imposition" of a grant condition, because "[r]eceipt of the grant[] is conditioned" on accepting it. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018). USAGM has presented the new conditions as a fait accompli, giving RFE/RL no option but to either close shop or accept the new terms in order to access the congressionally appropriated

funds—which will define RFE/RL's legal relationship with USAGM and its ability to operate as a federally funded news organization.

The Court therefore concludes that USAGM's imposition of new grant terms on RFE/RL for FY 2025 is a final agency action. The question then becomes whether USAGM's decision to present a radically altered grant agreement in contravention of decades of grantmaking practice, refuse to defend the substance of any said changes, and then cease responding to the recipient is a violation of the APA—all this, when federal broadcasting statutes mandate the formation of grant agreements with that specific recipient and federal appropriations law designates a line-item dollar amount of funding to that recipient. For reasons explained *infra*, the Court concludes that it is.

ii.    *"Committed to Agency Discretion by Law,"* 5 U.S.C. § 701(a)(2)

Under § 701(a)(2) of the APA, "agency action is not subject to judicial review to the extent that such action is committed to agency discretion by law." *Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993) (internal citations and quotations omitted). Specifically, judicial review is barred when "a court would have no meaningful standard against which to judge the agency's exercise of discretion," *id.* at 191, including situations where the agency decision "involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Id.* (quoting *Heckler*, 470 U.S. at 830). This is a "a very narrow exception" to the presumption of reviewability of agency action under the APA, and it only applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Here, there are several sources of "law to apply" permitting meaningful judicial review of RFE/RL's substantive APA claim.  USAGM does not have boundless discretion in deciding whether or not to make grants available to RFE/RL—most obviously, congressional appropriations dictate exactly how much money USAGM must distribute to RFE/RL, via grant agreements, in a given fiscal year.  If USAGM had no limits on its discretion in making grants to RFE/RL, then the appropriations statute would be devoid of any force.  Furthermore, the International Broadcasting Act provides guardrails for the grantmaking relationship between USAGM and RFE/RL: the grants for RFE/RL "*shall* be available . . . for the purposes of carrying out" RFE/RL's historic functions, the grant agreement "*shall* establish guidelines for such grants," and the USAGM CEO "*shall* respect the professional independence and integrity of . . . the grantees of the agency." 22 U.S.C. §§ 6207(f), (g), § 6204(b) (emphasis added).  As RFE/RL rightly points out, even where a statute confers "broad discretion," final agency action remains reviewable unless "the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised."  Pl.'s Reply at 10–11, ECF No. 45 (quoting *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020)).  For these reasons, the Court concludes that the International Broadcasting Act and relevant congressional appropriations statutes provide sufficient guidance for judicial review of USAGM's imposition of a grant agreement.

      *iii.*      *"Arbitrary and Capricious,"* 5 U.S.C. § 706(2)(A)

The APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  An agency has acted arbitrarily and capriciously if it has "relied on factors which Congress has not intended it to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The scope of judicial review under the arbitrary-and-capricious standard 'is narrow and a court is not to substitute its judgment for that of the agency,' but the court must confirm that the agency has fulfilled its duty to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *State Farm*, 463 U.S. at 43).

As far as this Court is aware, it is unprecedented for an agency to demand that entirely new terms govern its decades-old working relationship with a grantee entity and then stop responding, particularly when the agency is statutorily obligated to grant yearly congressional appropriations to that specific entity by name. Clearly, USAGM has fallen short of its duty to "articulate a satisfactory explanation" for its final grant agreement because it has offered no explanation at all. And without any explanation from USAGM to justify its new grant agreement, the Court cannot discern any reasonable basis to explain USAGM's drastic change in course.

To be sure, Congress has passed legislation defining the contours of USAGM's grantmaking relationship with RFE/RL. For example, the International Broadcasting Act lists provisions that the grant agreement with RFE/RL "shall include," such as "that a grant be used only for activities which the Agency determines are consistent with the purposes" of the statute, and that RFE/RL "justify in detail each proposed expenditure of grant funds." 22 U.S.C. § 6207(g)(1), (5). The Act also provides an avenue for cancelation of the grant and redirection

of the grant funds to another entity. *See id.* § 6207(d) ("If the Chief Executive Officer [of USAGM] determines at any time that RFE/RL, Incorporated is not carrying out the functions described in this section in an effective and economical manner, the Agency may award the grant to carry out such functions to another entity."); 2024 Appropriations Act, div. F, tit. I, 138 Stat. 735; 170 Cong. Rec. at H2087 (giving USAGM limited discretion to "reprogram" up to five percent of funds among different programs, but only if it gives the House and Senate Appropriations Committees fifteen days' advance notice). But when USAGM changed course with the presentation of the FY 2025 agreement, it never once referred to any of these federal statutes. Failure to invoke any of the governing statutes in taking such drastic action to alter the parties longstanding grantmaking relationship further confirms that the defendants' action was arbitrary and capricious and must be "set aside." 5 U.S.C. § 706(2)(A).

Furthermore, "when an agency changes course . . . it must 'be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016)). RFE/RL has been funded by the U.S. government since its inception seventy-five years ago, and USAGM has always reliably distributed those funds via grant agreement. Up until now, the parties' annual grant negotiations for each fiscal year were routine, *pro forma* affairs: the parties would only "discuss and implement 'minor' changes" over the course of a couple weeks. April TRO at *1. To now introduce terms that have never been in any prior grant agreement with RFE/RL, fail to engage with RFE/RL on the substance, and then ultimately go dark—presumably as an attempt to strong arm RFE/RL into accepting the proposed agreement as their pool of money runs dry— makes a mockery of the APA's requirement to consider reliance interests, let alone the "decades

of . . . reliance" interests at play here. *Ass'n of Am. Univs. v. Dep't of Energy*, --- F. Supp. 3d ---, No. 25-cv-10912-ADB, 2025 WL 1414135 (D. Mass.2025) (quoting *Encino Motorcars*, 579 U.S. at 222).

It should go without saying that "government officials must have some freedom to raise issues and questions, to express preliminary views, and to bargain and debate, without risking that their actions will transform the matter from negotiations into litigation about the negotiations." *Robishaw Eng'g Inc. v. United States*, 891 F. Supp. 1134, 1153 (E.D. Va. 1995). If any of these typical negotiating strategies had occurred, the Court would likely not be intervening in the same way. And indeed, the defendants represented to the Court that such negotiations were taking place between the parties throughout April and May. But the last several weeks have made clear that the government has not engaged with RFE/RL on any issues and has not bargained or debated over any of the radically different terms. Based on this truly extraordinary record, the Court finds that USAGM's abrupt imposition of an unprecedented FY 2025 grant agreement with no justification is final, arbitrary and capricious agency action. The first preliminary injunction factor is satisfied.

### B. PI Factor 2: Irreparable Harm

In opposing RFE/RL's showing of irreparable harm, the defendants state that RFE/RL can forestall any impending irreparable harm to its business by "engag[ing] with USAGM to try to address the terms it contends are unworkable." PI Opp'n at 21. But this avenue, as explained *supra*, is foreclosed as a product of the defendants' own obstruction.

Otherwise, the defendants make familiar attempts to undermine RFE/RL's showing of irreparable harm: that monetary harm is generally not irreparable, and that the purported harm to RFE/RL of losing its congressional funding does not "threaten its very existence" to justify

preliminary relief. PI Opp'n at 20 (citing *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1025 (D.D.C. 1981)). But the facts here paint a much more dire picture. RFE/RL receives 99% of its funding from congressional appropriations. Over the last several months, in the face of USAGM's flagrant disregard for its funding responsibilities, RFE/RL has had to repeatedly brace for the worst. That means gearing up for mass furloughs, cancelation of programming, and inevitable damage to the global influence that RFE/RL has built over decades. At the end of each month, given RFE/RL's consistently compelling case for temporary relief, the Court has granted interim relief to keep RFE/RL afloat. The reasoning that informed each of this Court's prior grants of preliminary relief to RFE/RL applies equally now. Therefore, the second preliminary injunction factor is satisfied.

### C. PI Factors 3 and 4: Balance of the Equities and Public Interest

As was the case when this Court granted the April, May, and June TROs, the balance of the equities and the public interest continue to favor RFE/RL.

These factors "merge when the government is the opposing party." *Am. Ass'n of Pol. Consultants v. U.S. Small Bus. Admin.*, 613 F. Supp. 3d 360, 365 (D.D.C. 2020) (quoting *Nken*, 556 U.S. at 435). "There is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Newby*, 838 F.3d at 12 (citation omitted). As explained *supra*, RFE/RL is likely to succeed on the merits of its APA claim, and "[t]here is generally no public interest in the perpetuation of unlawful agency action"—here, the agency's unexplained 180-degree turn on its proposed grant agreement, and the subsequent abandonment of negotiations, with a statutorily-designated grantee organization. *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (quoting *Newby*, 838 F.3d at 12).

### V.     Scope of Relief

The Court will grant relief to RFE/RL to the extent that it pertains to the FY 2025 grant agreement. However, the Court construes RFE/RL's request for relief as asking for a determination on the substantive legality on a host of grant terms for any future grant agreement with USAGM.[5] But at this juncture, the Court is not equipped to go through each challenged term of the FY 2025 agreement and determine the legality of each one moving forward, particularly when the defendants have not substantively responded to RFE/RL's challenges to the new terms (other than to offer conclusory assertions that the terms are "reasonable" and that RFE/RL is simply "unhappy" with them). Opp'n at 11–12. Perhaps USAGM could conjure up legitimate reasoning to explain its drastic departure from years of grantmaking experience with RFE/RL. The Court takes no position on that matter here. The problem as it stands is that *there is no reasoning* from USAGM to explain its new negotiating position. USAGM's final action in presenting a non-negotiable FY 2025 grant agreement in the middle of the fiscal year, upending decades of prior relations between the parties, came with no justification. The record is too sparse for the Court to make a forward-looking determination of the legality of challenged provisions when USAGM has refused to offer any reasoned explanation for its action.[6]

Therefore, the Court cabins the scope of its relief to remedy USAGM's illegal action regarding the FY 2025 grant agreement by "set[ting] aside" the agency's presented version of the FY 2025 grant agreement as arbitrary and capricious. 5 U.S.C. § 706(2)(A). Furthermore, the

---

[5] For example, in RFE/RL's proposed order, RFE/RL asks for the Court to enjoin USAGM from imposing: "[a]ny condition making a default or late payment on any real property or real estate a material breach of the agreement"; "[a]ny condition requiring the deletion or a similar winding down of language services in 14 days"; "[a]ny condition requiring RFE/RL to inform the USAGM CEO of communications or meetings, whether formal or informal, by any of its directors, employees, officers, contractors, staffers, affiliates, and board members, or any other related persons, with House and Senate staff and Members and any other entity within the Executive Branch and to provide an accounting of those meetings from the prior year or to provide an accounting of such communications or meetings moving forward"; to name a few. *See* Notice Regarding Filing of Proposed Order, ECF No. 46.

[6] This is not to say that courts are never able to review the legality of individual grant provisions—conceivably, at some future juncture, such granular intervention may be warranted.

Court's preliminary relief here will mirror the relief that it has ordered for the last three months—that USAGM and RFE/RL enter into a grant agreement for FY 2025 that is materially identical to their prior master grant agreement and the extender agreements that have governed the parties' relationship for the last several months. The Court believes this interim relief is properly tailored to ensure that USAGM and RFE/RL are engaged in an agreement that follows the statutory mandates of the operative congressional appropriations acts and the International Broadcasting Act.

**VI.    The Court Will Not Impose Bond**

For the reasons already given by this Court at every similar juncture in this case and related ones, the Court will not impose bond. Because of the fragile and desperate financial position of RFE/RL, the imposition of bond would defeat the very purpose of the preliminary relief ordered here. *See* Widakuswara PI at *17; April TRO at *8; May TRO at *2; June TRO at 3.

**VII.    CONCLUSION**

For the foregoing reasons, upon consideration of the plaintiff's Motion [ECF No. 41] for a Preliminary Injunction, the defendants' Opposition thereto, the plaintiff's Reply, and the entire record herein, RFE/RL's Motion for a Preliminary Injunction [ECF No. 41] will be **GRANTED IN PART**. The defendants must immediately enter into a master grant agreement with Plaintiff for Fiscal Year 2025 under the same terms and conditions applicable to the most recent master grant agreement between the parties, in materially identical terms to the prior extender grant agreements between the parties for March, April, May, and June. The defendants must also (i) restore disbursement of RFE/RL's congressionally appropriated funds to RFE/RL on a monthly basis pending final resolution of this lawsuit, and (ii) file monthly status reports on the first day of each month apprising the Court of the status of their compliance with the accompanying Order.

Given that this Motion is being resolved halfway through July, and RFE/RL has still not received its July funding, the defendants must also file a status report within 72 hours of the issuance of this order apprising the Court of the status of their compliance, including documentation sufficient to show the disbursement to Plaintiff of the funds Congress appropriated through July 31, 2025.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: July 18, 2025

Royce C. Lamberth
United States District Judge